UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MAXWELL SHOE COMPANY INC.,     )
                               )
            Plaintiff,         )
                               )    Civil Action No.
        v.                     )    04 CV 10635 RGS
                               )
JONES APPAREL GROUP, INC.; and )
MSC ACQUISITION CORP.,         )
                               )
            Defendants.        )
                               )

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED SCHEDULING AND DISCOVERY**

OF COUNSEL:

Adam H. Offenhartz, Esq.
Jennifer H. Rearden, Esq.
Robert E. Malchman, Esq.
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, N.Y. 10166-0193
Telephone (212) 351-4000
Facsimile (212) 351-4035

TESTA, HURWITZ & THIBEAULT, LLP

Jordan D. Hershman, Esq. (BBO #553709)
Roger A. Lane, Esq. (BBO #551368)
Kenneth I. Weissman, Esq. (BBO #653834)
TESTA, HURWITZ & THIBEAULT, LLP
125 High Street
Boston, Massachusetts 02110
Telephone (617) 248-7000
Facsimile (617) 248-7100

Attorneys for Plaintiff,
Maxwell Shoe Company, Inc.

April 7, 2004

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 5

ARGUMENT ....................................................................................................................... 8

I.  MAXWELL SHOE IS ENTITLED TO EXPEDITED
    SCHEDULING AND DISCOVERY IN CONNECTION
    WITH ITS MOTION FOR A PRELIMINARY INJUNCTION. .................................... 8

II. MAXWELL SHOE WILL SUFFER IRREPARABLE HARM IN
    THE ABSENCE OF EXPEDITED SCHEDULING AND DISCOVERY. ..................... 12

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Am. Insured Mortgage Investors v. CRI, Inc.,
    990 WL 192561 (S.D.N.Y. Nov. 26, 1990) ................................................................9

Consolidated Gold Fields PLC v. Minorco, S.A.,
    871 F.2d 252 (2d Cir. 1989) ..................................................................................13

Educ. Comm'n for Foreign School Med. Graduates v. Repik,
    1999 WL 317052 (E.D. Pa. May 17, 1999) ...........................................................10

Edudata Corp. v. Scientific Computers, Inc.,
    599 F. Supp. 1084 (D. Minn. 1984) .........................................................................9

Ellsworth Assocs., Inc. v. United States,
    917 F. Supp. 841 (D.D.C. 1996) .............................................................................9

General Aircraft Corp. v. Lampert,
    556 F.2d 90 (1st Cir. 1977) ...................................................................................13

In re General Motors Corp. Litig.,
    Civ. A. No. 20269-NC (Del. Ch. Oct. 2, 2003) .....................................................9

Gillette Co. v. RB Partners,
    693 F. Supp. 1266 (D. Mass. 1988) .........................................................................8

Koppers Co. v. Am. Express Co.,
    689 F. Supp. 1371 (W.D. Pa. 1988) ......................................................................13

Lebhar Friedman, Inc. v. Movielab, Inc.,
    1987 WL 5793, (S.D.N.Y. Jan. 13, 1987) .............................................................13

Lone Star Steakhouse & Saloon, Inc. v. Adams,
    147 F.Supp. 2d 1141 (D. Kan. 2001) ...............................................................10, 13

MAI Basic Four, Inc. v. Prime Computer, Inc.,
    871 F.2d 212 (1st Cir. 1989) ............................................................................13, 14

Moscony v. Quaker Farms,
    2000 WL 1801853 (E.D. Pa. Dec. 8, 2000) ..........................................................10

Spencer Cos. v. Agency Rent-A-Car, Inc.,
    542 F. Supp 237 (D. Mass. 1982) .........................................................................13

TSC Indus., Inc. v. Northway, Inc.,
    426 U.S. 438 (1976) ..............................................................................................10

Maxwell Shoe respectfully urges the Court to order an expedited schedule (the "Schedule") of briefing and discovery in preparation for a hearing on Maxwell Shoe's motion for a preliminary injunction. The proposed Schedule is included with Plaintiff's Motion for Expedited Scheduling and Discovery, dated April 6, 2004, and requests a preliminary injunction hearing date of May 6, 2004, one month from today. In Plaintiff's Motion for a Preliminary Injunction, Maxwell Shoe requests that the Court enjoin Defendants from disseminating the Consent Statement to Maxwell Shoe's shareholders and from proceeding with the Tender Offer while this action is pending. The preliminary injunction would preserve the status quo until this Court could hold a trial on the merits of Maxwell Shoe's claims pursuant to Sections 14(a) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 14a-9. See 15 U.S.C. § 78n(a), (e); 17 C.F.R. § 240.14a-9.

The expedited discovery Maxwell Shoe seeks is limited and will further develop the record for the Court's consideration of Maxwell Shoe's motion for preliminary injunction. In Plaintiff's First Combined Discovery Requests ("Plaintiff's First Requests" (see Lane Decl. Ex. 30)), Maxwell Shoe propounds Requests for Admissions, Interrogatories and Document Requests that relate directly to Defendants' motives, conduct and knowledge in connection with their filing of the Tender Offer Statement and the Consent Statement with the SEC. In addition, Maxwell Shoe requests that it be allowed to take a limited number of depositions on an expedited basis relating to the same topics:

First, Maxwell Shoe seeks discovery regarding Defendants' undisclosed motivations for undertaking the Tender Offer and Consent Solicitation: to obtain the lucrative benefits to Maxwell Shoe as exclusive licensee of the AK Anne Klein brand name for which JIC is the licensor.

Second, Maxwell Shoe seeks discovery from and regarding Defendants' Nominees. It is already clear that certain of the Defendants' Nominees have undisclosed business relationships with

Jones and undisclosed histories as directors and/or managers of failed businesses. These relationships and histories are material to Maxwell Shoe's shareholders contemplating whether to turn their Company over to Defendants' Nominees.

Third, Maxwell Shoe has identified additional misstatements and omissions relating to (i) Defendants' mischaracterization of its lowball offer as providing an "attractive premium" to Maxwell Shoe's shareholders, (ii) the process and consequences to Maxwell Shoe's shareholders of providing consents in response to the Consent Statement, and (iii) the Maxwell Shoe Board's consideration of Defendants' offer. Discovery is appropriate on these issues as well, all of which are material to Maxwell Shoe's shareholders' ability to evaluate Defendants' offer and proposals.

Fourth, Maxwell Shoe seeks discovery to demonstrate Defendants' culpable state of mind when making these materially false and misleading statements and omissions.

## STATEMENT OF FACTS

Maxwell Shoe is in the business of designing, developing and marketing casual and dress footwear for women and children. (See Declaration of James J. Tinagero in Support of Plaintiff's Motions for a Preliminary Injunction and Expedited Discovery, executed April 6, 2004 ("Tinagero Decl.") ¶ 2.) It has been based in Massachusetts for 55 years and employs over 135 men and women in the Commonwealth. (Id. ¶ 2.)

Defendants, based in Pennsylvania, are engaged in a hostile Tender Offer and Consent Solicitation in an attempt to acquire Maxwell Shoe. The Tender Offer Statement has already been mailed to the Company's stockholders, and the Consent Statement is available through a series of links on the Jones website. (Lane Decl. ¶¶ 4, 5; Exs. 2, 3.)

The underlying, undisclosed purpose of the takeover attempt is a July 9, 1999 license to use the AK Anne Klein brand name (the "License"), under which Maxwell Shoe is the licensee and Kasper A.S.L., Ltd. ("Kasper"), was the original licensor. (See Tinagero Decl. ¶ 3 & Ex. 1.) In

5

August 2003, Jones won a bankruptcy auction for the assets of Kasper, including the License. (See id. ¶ 4.) In December 2003, Jones closed on the Kasper transaction, and JIC, a Jones subsidiary, became the licensor. (Id.)

The License is very lucrative for Maxwell Shoe and accounted for approximately $74.3 million in net sales in 2003, representing approximately 33% of the Company's total for the year. (Id. ¶ 5.) The difference between Maxwell Shoe's revenues as licensee and the royalties it must pay to JIC is very favorable to Maxwell Shoe. (Id.) The Company believes that Jones's primary motivation for attempting to acquire Maxwell Shoe is to obtain the benefits under the License for themselves and their affiliates, including possibly relicensing the brand name on much more favorable terms for themselves. (Id. ¶ 6.)

The Tender Offer and Consent Solicitation is simply the latest step in Jones's eight-month campaign to stand on both sides of the License. In September 2003, the month after Jones won the auction for Kasper, Jones approached Maxwell Shoe to discuss a potential acquisition of the Company by Jones. (Id. ¶ 7.) On February 18, 2004, Jones's financial advisor approached the Company and expressed an interest in a transaction pursuant to which Jones would acquire all of the outstanding shares of Maxwell Shoe's common stock. (Id. ¶ 8.) On February 25, 2004, Jones publicly announced its interest in acquiring all of Maxwell Shoe's outstanding shares at a price of $20 per share. (Id. ¶ 9; Lane Decl. Ex. 4.)

On March 11, 2004, Maxwell Shoe's Board, which is comprised of three independent directors and two management directors, met in person and telephonically with the Company's legal and financial advisors to further discuss Jones's unsolicited proposal. (Tinagero Decl. ¶ 11.) After careful consideration, and following a thorough review of Jones's proposal with its legal and financial advisors, Maxwell Shoe's Board determined by unanimous vote that Jones's proposal was financially inadequate and not in the best interests of the Company. (Id.)

On March 23, 2004, Defendants filed their Tender Offer Statement and Consent Statement with the SEC, commencing a hostile takeover attempt. (Id. ¶ 13; Lane Decl. Exs. 2, 3.) Jones's SEC filings again reflected an offer price of $20 per share -- more than two dollars per share less than the closing price of Maxwell Shoe's stock on the previous day. Later on March, 23, 2004, Maxwell Shoe issued a press release advising its stockholders to defer taking any action in response to Jones's unsolicited tender offer until Maxwell Shoe's Board made a recommendation to stockholders on whether to accept or reject Jones's offer. (Tinagero Decl. ¶ 14; Ex. 3.)

On March 29, 2004, after having carefully considered Defendants' SEC filings with the assistance of its financial advisor, Lehman Brothers Inc. ("Lehman Brothers"), and its legal advisors, Maxwell Shoe announced that its Board had decided to reject the Tender Offer. (Id. ¶ 15; Ex. 4.)

Maxwell Shoe has already learned the following information about certain of the Defendants' Nominees:

- Defendants' Nominee Harold Leppo is a consultant for Financo, Inc. ("Financo"). Jones is reportedly a client of Financo's. (See Lane Decl. Exs. 6, 7.) Defendants do not disclose this relationship. Moreover, three of the companies for whom Leppo served as a director filed for bankruptcy between 1999 and 2001. (Id. Exs. 8 at Item 5; 9 at 2; 10 at 7.)

- Defendants' Nominee Robert D. Martin served as a Senior Vice President and Chief Financial Officer, International for Sunbeam Corporation ("Sunbeam"). Defendants fail to disclose that while Martin was at Sunbeam, Jones director Howard Gittes was a Sunbeam director and chairman of its compensation committee. (Id. Ex. 11 at 3, 13.) Defendants further fail to disclose that less than a year after Martin left Sunbeam, the company filed for bankruptcy. (Id. Ex. 12 at Item 3.)

- Defendants' Nominee Michael Koeneke is a former co-head and chairman of Global Mergers and Acquisitions at Merrill Lynch & Co. ("Merrill Lynch"). Defendants fail to disclose that Merrill Lynch underwrote two public offerings of Jones stock, one of 3.1 million shares in 1994 (offered in part by Jones director Sidney Kimmel), and another of 4.5 million shares in 1997, while Koeneke was at Merrill Lynch. (Id. Exs. 13, 14, 15.)

- Defendants' Nominee Allan H. Corn served as the Chief Financial Officer of Michael Anthony Jewelers, Inc. ("Michael Anthony"), and remains a director of that company. Defendants fail to disclose that at the time Corn left as CFO, Michael Anthony had

posted operating losses in six consecutive quarters as of December 2003 and had been delisted by the American Stock Exchange in February 2004.[3] (Id. Exs. 19 at 10; 20 at 11; 21 at 12; 22 at 15; 23 at 16; 24 at 15; 26.)

Defendants have indicated that they plan to commence the Consent Solicitation shortly after the Company's April 8, 2004 stockholders meeting and upon clearance from the SEC for the Consent Statement. (Id. Ex. 27 at ¶ 5.) Because SEC rules permit Defendants to communicate with stockholders now, as soon as Defendants' receive clearance from the SEC, they could take over the Board and replace it with Defendants' Nominees based on the misinformed consent of these the Company's stockholders.

## ARGUMENT

### I.

### MAXWELL SHOE IS ENTITLED TO EXPEDITED SCHEDULING AND DISCOVERY IN CONNECTION WITH ITS MOTION FOR A PRELIMINARY INJUNCTION.

Maxwell Shoe should have the opportunity to obtain additional documentary and testimonial evidence to provide the Court an even fuller factual record when Maxwell Shoe presents evidence of its likelihood of success on its Section 14(a), Section 14(e) and Rule 14a-9 claims in connection with the hearing on its preliminary injunction motion.[4] The information described in Plaintiff's

---

[3] Information regarding the qualifications of Jones's proposed nominees has been particularly difficult to come by in the absence of court-ordered discovery because Jones, in violation of Item 7 of Schedule 14A and Item 401(e) of Regulation S-K, failed to include any description of the business of the companies with whom Jones's nominees have been employed or associated over the last five years.

[4] In considering whether Jones has violated Section 14(a) and Rule 14a-9, the court must determine whether (1) the Consent Statement or other Schedule 14A filing contains a false or misleading statement of material fact or omits to state a material fact necessary to make the statement not false or misleading; and (2) the misstatement or omission was the result of the Defendants' knowing, reckless or negligent conduct. See, e.g., Gillette Co. v. RB Partners, 693 F. Supp. 1266, 1269 (D. Mass. 1988). Similarly, in determining whether Defendants have violated Section 14(e), the Court must assess whether (1) the Defendants made an untrue statement of material fact or omitted to state a material fact necessary to make statements not
[Footnote continued on next page]

Preliminary Injunction Brief already indicates that Defendants' Tender Offer Statement, Consent Statement and other public pronouncements have been materially misleading. Maxwell Shoe is entitled to explore that information more fully. The expedited discovery Maxwell Shoe seeks is reasonable, narrowly tailored and central to Maxwell Shoe's claims and its motion for a preliminary injunction. See In re Websecure, Inc., 1997 WL 770414, at *4 (D. Mass. Nov. 26, 1997) (granting expedited discovery regarding use of proceeds from an initial public offering where the request was "reasonable . . . particularized . . . and necessary . . . to prevent undue prejudice to the plaintiffs") (internal quotations omitted).

A party may not wait until the issuance of a definitive consent statement to move for an injunction or to request expedited discovery because the process at that point is too far along, as the requested shareholder action could occur any day. See, e.g., In re General Motors Corp. Litig., Civil Action No. 20269-NC (Del. Ch. Oct. 2, 2003) (denying motion for expedited discovery because plaintiff moved only after issuance of definitive consent statement).[5]

Expedited discovery before the preliminary injunction hearing will enable the Court to assess more effectively the parties' respective interests and Maxwell Shoe's likelihood of prevailing on the merits. Courts routinely allow for expedited discovery in advance of preliminary injunction hearings for exactly this reason. See, e.g., Ellsworth Assocs., Inc. v. United States, 917 F. Supp. 841, 844 (D.D.C. 1996) ("Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings"); Edudata Corp. v.

---

[Footnote continued from previous page]
misleading in connection with a tender offer; (2) the misstatement or omission was material; and (3) the Defendants acted with either knowledge of falsity or reckless disregard for the truth. See, e.g., Am. Insured Mortgage Investors v. CRI, Inc., 1990 WL 192561, at *6 (S.D.N.Y. Nov. 26, 1990).

[5] A copy of General Motors is attached for the Court's convenience as Lane Decl. Ex. 31.

Scientific Computers, Inc., 599 F. Supp. 1088-89 (D. Minn. 1984) (issuing TRO suspending tender offer and granting expedited discovery); see also Moscony v. Quaker Farms, 2000 WL 1801853, at *4 (E.D. Pa. Dec. 8, 2000) (granting expedited discovery in advance of preliminary injunction hearing regarding construction dispute); Educ. Comm'n for Foreign School Med. Graduates v. Repik, 1999 WL 317052, at *3 (E.D. Pa. May 17, 1999) (allowing expedited discovery in connection with motion to preliminarily enjoin trade secret misappropriation and copyright infringement).

Although additional discovery is necessary, the limited information available to Maxwell Shoe suggests that Jones has failed to disclose, among other things, material facts relating to the alleged independence and competence of its hand-picked nominees to serve on Maxwell Shoe's board. In addition, circumstantial facts suggest that Jones has failed to disclose its true motivation in pursuing the acquisition of Maxwell Shoe.

As discussed in the Facts section above, at least three of the Defendants' hand-picked nominees have had or continue to have undisclosed outside business relationships with Jones. Furthermore, Defendants also fail to disclose that at least three of Defendants' Nominees have been either officers or directors of companies that have filed for bankruptcy or have been delisted from a stock exchange within the last several years. Although all of these facts are material to Maxwell Shoe shareholders contemplating whether to consent to a new board of directors that would favor Jones's acquisition of Maxwell Shoe, none of these facts is disclosed in the Tender Offer Statement, the Consent Statement or Defendants' other public statements regarding the proposed acquisition.

Because a reasonable Maxwell Shoe investor would view the disclosure of the facts omitted by Jones as "having altered significantly the 'total mix' of information made available," Jones's misleading statements and omissions are material. TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976); see also Lone Star Steakhouse & Saloon, Inc. v. Adams, 148 F. Supp. 2d 1141,

1151 (D. Kan. 2001) (deeming material defendant's misstatements regarding shareholder support for defendant's proxy campaign and plaintiff's employment contracts with its directors). This Court, therefore, should permit Maxwell Shoe expedited discovery relating to these facts, which are critical to its claims and motion for a preliminary injunction.

Maxwell Shoe also is entitled to discovery as to Defendants' state of mind regarding these omissions and the underlying motivation for the attempted takeover. Regarding the latter, the Complaint alleges that Jones's true motivation for acquiring Maxwell Shoe is to acquire the Company's lucrative benefits under the License and either keep the income for itself or relicense the AK Anne Klein brand name for much greater royalties. Defendants have not disclosed that Jones's subsidiary JIC became the licensor pursuant to a bankruptcy auction in August 2003, and that the next month, Jones began contacting Maxwell Shoe about acquiring the Company. (See Tinagero Decl. ¶¶ 4, 7.) The timing of these two events supports an inference that Jones's primary interest in Maxwell Shoe relates to the License, but additional discovery will allow for a fuller record. Shareholders of Maxwell Shoe would consider the unique importance of the License to Jones to be highly material in deciding how to value the Tender Offer and respond to the Consent Solicitation.

To these ends, Maxwell Shoe has propounded narrowly tailored written discovery requests designed to elicit additional information regarding the Defendants' Nominees' business relationships with Jones and histories as directors and/or officers of failed companies, Defendants' motivations relating to the License, and state of mind regarding the numerous misstatements and omissions in the Tender Offer Statement and Consent Statement. These documents and information are entirely within Defendants' control.

Maxwell Shoe also seeks to take the deposition of Defendants' Nominees: Messrs. Leppo, Martin, Koeneke and Corn.[6] In addition, Maxwell Shoe is asking for limited deposition discovery from Jones President and Chief Executive Officer, Peter Boneparth, and Jones Chief Operating and Financial Officer, Wesley Card, to determine what Defendants' knew about Defendants' Nominees' backgrounds.

Maxwell Shoe also seeks to depose Messrs. Boneparth and Card as the persons primarily responsible for the misstatements and omissions in the Tender Offer Statement and the Consent Statement, and with the most knowledge of Jones's motivations relating to the License. Mr. Card signed the Tender Offer Statement that Maxwell Shoe's stockholders have already received, and Mr. Boneparth signed the Consent Statement that Defendants propose to send to the stockholders. Moreover, the Consent Statement and Mr. Boneparth himself have issued disparaging statements in violation of SEC Rule 14a-9 that imply that Maxwell Shoe's Board is breaching its fiduciary duties.

The proposed discovery (see Lane Decl. Ex. 30) is narrowly tailored to uncover information on these topics necessary for Maxwell Shoe to prepare of the hearing on its motion for a preliminary injunction.

## II.

## MAXWELL SHOE WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF EXPEDITED SCHEDULING AND DISCOVERY.

Expedited discovery is particularly appropriate in this case because Maxwell Shoe and its stockholders are exposed to the irreparable harm of losing control of the Company as a result of Defendants' materially false and misleading statements and omissions. False and misleading statements in tender offer materials and consent/proxy materials are likely to result in irreparable

---

6  Additional deposition discovery -- either from additional proposed Nominees to the Maxwell Shoe Board, other Jones employees or a limited number of additional non-parties -- may be
[Footnote continued on next page]

harm to target companies and their shareholders. See MAI Basic Four, Inc. v. Prime Computer, Inc., 871 F.2d 212, 218 (1st Cir. 1989) (affirming preliminary injunction for target company and noting that "to the extent target shareholders may be deprived of material information required to be disclosed under the Williams Act before irrevocably tendering their shares, they will be irreparably harmed"); Spencer Cos. v. Agency Rent-A-Car, Inc., 542 F. Supp. 237, 238 (D. Mass. 1982) (granting preliminary injunction against tenders made prior to issuance of corrective disclosure because companies and their stockholders "are likely to suffer irreparable damage if the [acquiror] is permitted to complete the tender offer and achieve control of the" target based on materially misleading disclosures); cf. General Aircraft Corp. v. Lampert, 556 F.2d 90, 96-98 (1st Cir. 1977) (affirming preliminary injunction barring defendant from acquiring stock, or soliciting proxies or consents obtained pursuant to materially misleading Schedule 13D).[7]

Irreparable harm is inevitable in many instances because of the virtual impossibility of "unscrambling the eggs" after a change of corporate control. MAI, 871 F.2d at 218; Consolidated Gold Fields PLC v. Minorco, S.A., 871 F.2d 252, 261 (2d Cir. 1989); Koppers Co. v. Am. Express Co., 689 F. Supp. 1371, 1382 (W.D. Pa. 1988) (cited by MAI).

Moreover, in the wake of Enron, MCI and countless other cases of massive financial fraud, there is a renewed focus on ensuring that stockholders receive complete and accurate information. A particular sense of urgency exists in this case because the Tender Offer Statement already had been mailed to Maxwell Shoe's shareholders. The Consent Statement likewise has been made

---

[Footnote continued from previous page]
necessary depending on what Defendants' responses to written discovery reveal.

[7] See also Lone Star, 148 F. Supp. 2d at 1150 (finding that shareholders would suffer irreparable harm if forced to vote based on proxy material that contained false and misleading information); Lebhar Friedman, Inc. v. Movielab, Inc., 1987 WL 5793, at *5 (S.D.N.Y. Jan. 13, 1987)
[Footnote continued on next page]

available to the public through Jones's website. Moreover, under SEC rules, Defendants are able to communicate with Maxwell Shoe stockholders now, even before obtaining clearance from the SEC. Thus, it is possible that, as soon as the SEC clears the Consent Statement after the April 8, 2004 stockholders meeting, Defendants could usurp the Board and take over the Company. (See Lane Decl. Ex. 27 ¶ 5.)

Expedited discovery is a critical step in ensuring that Maxwell Shoe's shareholders receive accurate information. Moreover, it will allow the Court the best opportunity to evaluate the merits of Maxwell Shoe's claims under Sections 14(a), Rule 14a-9 and Section 14(e), and the likely irreparable harm to Maxwell Shoe if injunctive relief is not granted. Maxwell Shoe has come forward with strong, initial evidence suggesting that Defendants' Tender Offer Statement and Consent Statement contain numerous false and misleading statements and omissions. Maxwell Shoe expects that expedited discovery will further support the conclusion that Defendants' public filings and public statements relating to the proposed acquisition of Maxwell Shoe are materially misleading. If Defendants are allowed to go forward, Maxwell Shoe's shareholders may lose control of the Company based on Defendants misrepresentations and omissions, which is precisely the harm that Sections 14(a) and 14(e) of the Exchange Act are intended to forestall.

---

[Footnote continued from previous page]
    (granting preliminary injunction because of the irreparable harm that shareholders would suffer if they elected a board of directors based on materially misleading proxy statement).

## CONCLUSION

For the foregoing reasons, Maxwell Shoe respectfully requests that the Court grant its motion for expedited scheduling and discovery prior to a hearing on its motion for a preliminary injunction, and grant Maxwell Shoe such other and further relief as this Court deems just and proper.

Dated:  Boston, Massachusetts
        April 7, 2004

Respectfully submitted,

Maxwell Shoe Company Inc.,
By Its Attorneys

_/s/ Roger A. Lane_
Jordan D. Hershman, Esq. (BBO # 553709)
Roger A. Lane, Esq. (BBO #551368)
Kenneth I. Weissman, Esq. (BBO #653834)
TESTA, HURWITZ & THIBEAULT, LLP
125 High Street
Boston, Massachusetts 02110
Telephone (617) 248-7000
Facsimile (617) 248-7100

Of counsel:
Adam H. Offenhartz, Esq.
Jennifer H. Rearden, Esq.
Robert E. Malchman, Esq.
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, N.Y. 10166-0193
Tel.:  (212) 351-4000
Fax.:  (212) 351-4035

### CERTIFICATE OF SERVICE PURSUANT TO L.R. 5.2(b)(2)

I hereby certify that on April 7, 2004, a true copy of the above document was served by hand upon Defendants, Jones Apparel Group, Inc., 250 Rittenhouse Circle, Keystone Park, Bristol, PA 19007 and MSC Acquisition Corp., 250 Rittenhouse Circle, Keystone Park, Bristol, PA 19007.

_/s/ Roger A. Lane_
Roger A. Lane

3049609v1