# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MAXWELL SHOE COMPANY INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 04 CV 10635 RGS |
| | ) | |
| JONES APPAREL GROUP, INC.; and | ) | |
| MSC ACQUISITION CORP., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

OF COUNSEL:

Adam H. Offenhartz, Esq,
Jennifer H. Rearden, Esq.
Robert E. Malchman, Esq.
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, N.Y. 10166-0193
Telephone (212) 351-4000
Facsimile (212) 351-4035

TESTA, HURWITZ & THIBEAULT, LLP

Jordan D. Hershman, Esq. (BBO #553709)
Roger A. Lane, Esq. (BBO #551368)
Kenneth I. Weissman, Esq. (BBO #653834)
TESTA, HURWITZ & THIBEAULT, LLP
125 High Street
Boston, Massachusetts 02110
Telephone (617) 248-7000
Facsimile (617) 248-7100

Attorneys for Plaintiff,
Maxwell Shoe Company, Inc.

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................4

      A.    Defendants' Undisclosed Motive for Acquiring Maxwell Shoe.................4

      B.    Defendants' Material Omissions Regarding Defendants' Nominees ..........5

      C.    Defendants' Disparagement of the Board...................................................6

      D.    The Harm to the Company and Its Stockholders.......................................6

ARGUMENT.......................................................................................................6

  I.    PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION TO
      PRESERVE THE STATUS QUO WHILE THE COURT CONSIDERS
      THE MERITS OF PLAINTIFF'S CLAIMS THAT DEFENDANTS
      HAVE MADE MATERIALLY FALSE AND MISLEADING
      STATEMENTS AND OMISSIONS. ........................................................6

      A.    Maxwell Shoe Will Suffer Irreparable Harm If The Court Fails To
          GrantInjunctive Relief ...........................................................................8

      B.    Maxwell Shoe Can Demonstrate A Likelihood Of Success On The
          Merits.................................................................................................10

          1.    Defendants Fail to Disclose Their True Motivation for
               Their Proposed Takeover of Maxwell Shoe ..................................11

          2.    Defendants Falsely State that the Tender Offer Represents
               "an Attractive Premium" to Maxwell Shoe's Shareholders ..........13

          3.    Defendants Fail to Disclose Material Business
               Relationships between Defendants' Nominees and Jones.............14

          4.    Defendants Omit Material Information Regarding the
               Qualifications and Competence of Defendants' Nominees...........15

          5.    Defendants Made Materially Misleading Statements and
               Omissions Regarding the Process for Providing Consents............17

          6.    Defendants Have Disparaged Maxwell Shoe's Board..................17

## TABLE OF CONTENTS
## [Continued]

Page

C.    The Balance Of The Hardships Favors Maxwell Shoe.............................19

D.    The Public Will Not Be Harmed By The Grant Of Preliminary
Injunctive Relief.......................................................................................19

CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Am. Insured Mortgage Investors v. CRI, Inc.
  1990 WL 192561 (S.D.N.Y. Nov. 26, 1990) ....................................................10

Burlington Indus., Inc. v. Edelman
  666 F. Supp. 799 (M.D.N.C. 1987) ..............................................................18

Chambers v. Briggs & Stratton Corp.
  863 F. Supp. 900 (E.D. Wis. 1994)................................................................19

CNW Corp. v. Japonica Partners, L.P.
  874 F.2d 193 (3d Cir. 1989).....................................................................7, 8

Consol. Gold Fields PLC v. Minorco, S.A.
  871 F.2d 252 (2d Cir. 1989)......................................................................8

Edudata Corp. v. Scientific Computers, Inc.
  599 F. Supp. 1084 (D. Minn. 1984)..........................................................7, 22

General Aircraft Corp. v. Lampert
  556 F.2d 90 (1st Cir. 1977)...............................................................6, 8, 9, 10

In re General Motors Corp. Litig.
  Civ. A. No. 20269 (Del. Ch. Oct. 2, 2003) .....................................................8

Gillette Co. v. RB Partners
  693 F. Supp. 1266 (D. Mass. 1988) ...........................................................10

Howing Co. v. Nationwide Corp.
  927 F.2d 263 (6th Cir.), 502 U.S. 801 (1991)...............................................15

Koppers Co. v. Am. Express Co.
  689 F. Supp. 1371 (W.D. Pa. 1988)........................................................8, 18

Lebhar Friedman, Inc. v. Movielab, Inc.
  1987 WL 5793 (S.D.N.Y. Jan. 13, 1987) .....................................................7, 9

Lewis v. Gen. Employment Enters., Inc.
  1991 WL 11383 (N.D. Ill. Jan. 21, 1991).......................................................19

Lone Star Steakhouse & Saloon, Inc. v. Adams
  148 F. Supp. 2d 1141 (D. Kan. 2001).........................................................7, 9

## TABLE OF AUTHORITIES
## [Continued]

Page(s)

MAI Basic Four, Inc. v. Prime Computer, Inc.
    871 F.2d 212 (1st Cir. 1989)..................................................................6, 8, 9,18

Maldonado v. Flynn
    597 F.2d 789 (2d Cir. 1979).........................................................................15

Mendell v. Greenberg
    927 F.2d 667 (2d Cir. 1991)..........................................................................11

Monheit v. Carter
    376 F. Supp. 334 (S.D.N.Y. 1974)............................................................13, 14

In re Omission of Shareholder Proposal of John Jennings Crapa,
    SEC No-Action Letter, 1999 WL 231196 (Apr. 20, 1999) ...............................17

Oracle Corp. Derivative Litig.
    824 A.2d 917 (Del. Ch. 2003).......................................................................14

Phoenix Gold Int'l, Inc.
    SEC No-Action Letter, 2000 WL 1726981 (Nov. 21, 2000)...............................17

Polaroid Corp. v. Disney
    862 F.2d 987 (3d Cir. 1988)...........................................................................9

San Francisco Real Estate Investors v. Real Estate Inv. Trust of Am.
    701 F.2d 1000 (1st Cir. 1983)......................................................................3, 7

Sonesta Int'l Hotels Corp. v. Wellington Assocs.
    483 F.2d 247 (2d Cir. 1973)..........................................................................18

Spencer Cos. v. Agency Rent-A-Car, Inc.
    542 F. Supp 237 (D. Mass. 1982) ..............................................................6, 8, 9

TSC Indus., Inc. v. Northway, Inc.
    426 U.S. 438 (1976).....................................................................................10

United States v. Matthews
    787 F.2d 38 (2d Cir. 1986).............................................................................17

UV Indus., Inc. v. Posner
    466 F. Supp. 1251 (D. Me. 1979) ...................................................................19

## TABLE OF AUTHORITIES
### [Continued]

Page(s)

**Statutes**

Del. Code Ann. tit. 8, § 228 ...........................................................................................................8

Section 14(e) of the Exchange Act ........................................................................................ passim

Section 14(a) of the Exchange Act ...................................................................................1, 2, 7

**Rules**

F.R.C.P. 65.........................................................................................................................................1

SEC Rule 14a-12.............................................................................................................................7

SEC Rule 14a-3(a) ..........................................................................................................................7

SEC Rule 14a-9........................................................................................................................ passim

**Regulations**

Item 401(e) of Regulation S-K ...................................................................................................15

## PRELIMINARY STATEMENT

Plaintiff Maxwell Shoe Company Inc. ("Maxwell Shoe," or the "Company") respectfully submits this memorandum of law in support of its motion pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction against defendants, Jones Apparel Group, Inc. ("Jones "), and MSC Acquisition Corp. ("MSCAC"), to preserve the status quo while the Court considers the merits of Maxwell Shoe's claims that Defendants have violated Sections 14(a) and (e) of the Securities and Exchange Act of 1934 (the "Exchange Act") and SEC Rule 14a-9 in connection with their attempted takeover of the Company.[1]

Change-of-control transactions are the prototypical example of a bell that cannot be unrung. Preliminary injunctive relief is necessary in this case to prevent Defendants from usurping the Company's board of directors (the "Board") and completing a hostile acquisition of Maxwell Shoe by means of materially misleading statements and omissions. Defendants have been conducting a tender offer (the "Tender Offer") for all of the Company's stock and have been publicizing their proposed consent solicitation (the "Consent Solicitation") of the Company's stockholders to replace the Board with Defendants' hand-picked nominees. On March 23, 2004, Defendants filed a Schedule TO (the "Tender Offer Statement") and a preliminary Schedule 14A (the "Consent Statement")[2] with the SEC. The Tender Offer Statement already has been mailed to Maxwell Shoe's shareholders, and the Consent Statement is publicly available through the Jones website. (Lane Decl. ¶¶ 4, 5.)

---

[1] Contemporaneously with the filing of this motion, Maxwell Shoe is separately moving for expedited scheduling and discovery. That discovery is expected to supplement the record supporting Maxwell Shoe's motion for a preliminary injunction.

[2] The Tender Offer Statement and the Consent Statement are attached, respectively, as Exhibits 2 and 3 to the Declaration of Roger A. Lane in Support of Plaintiff's Motions for a Preliminary Injunction and Expedited Discovery, executed April 6, 2004 ("Lane Decl.").

The Tender Offer Statement and Consent Statement contain materially false and misleading statements and omissions. Specifically, they violate Sections 14(a) and (e) of the Exchange Act and SEC Rule 14a-9, including but not limited to the following:

- Defendants fail to disclose their principal motivation for attempting their takeover of Maxwell Shoe: The Company, as licensee, and a Jones subsidiary, as licensor, stand on opposites sides of a license agreement (the "License"[3]) for the AK Anne Klein brand name. The License is lucrative for Maxwell Shoe, which must pay but a fraction of its earnings from the License in royalties to Jones's subsidiary. Jones won the bankruptcy auction for the License in August 2003, just a month before it began approaching Maxwell Shoe about acquiring the Company. Jones wants to acquire Maxwell Shoe either to obtain the income for itself or to relicense the AK Anne Klein brand name on much more favorable terms, and has been pursuing this strategy for at least eight months. Defendants should disclose this motivation and the enormous value of the License to Jones and Maxwell Shoe so that the Company's stockholders may properly value the Defendants' Tender Offer.

- Defendants fail to disclose their significant business relationships with certain of their nominees to the Board ("Defendants' Nominees"). These undisclosed relationships call into question Defendants' claim that Defendants' Nominees are "independent" of Defendants, and Maxwell Shoe shareholders should be informed of them while considering whether to consent to these nominees becoming directors of their Company.

- Defendants fail to disclose that certain of Defendants' Nominees were directors and/or managers of companies that went bankrupt or delisted during or shortly after the Defendants' Nominees' affiliations with those companies. These undisclosed failures call into question Defendants' claim that Defendants' Nominees are "highly qualified." This information is material to Maxwell Shoe shareholders because if the Consent Solicitation succeeds, but the Tender Offer fails, Defendants' Nominees, with their histories of business failures, will nevertheless be left in charge of Maxwell Shoe.

- Defendants falsely and illegally disparage the Board by implying its members have violated their fiduciary duty to Maxwell Shoe's shareholders by rejecting Defendants' financially inadequate offer of $20 per share, notwithstanding that the Company's stock has traded at or above $22 per share every day since Jones publicly announced its offer more than a month ago. Apparently according to Defendants, it is a breach of the Board's fiduciary duty to recommend stockholders not tender their shares for $20 each when they can sell them on the open market for $22 each.

---

[3]  A redacted copy of the License, dated July 9, 1999, and an amendment, dated March 19, 2002, as filed with the SEC, are attached, respectively, as Exhibits 1 and 2 to the Declaration of James J. Tinagero in Support of Plaintiff's Motions for a Preliminary Injunction and Expedited Discovery, executed April 6, 2004 ("Tinagero Decl.").

Defendants say they will begin soliciting consents as soon after the Company's April 8, 2004 shareholders meeting as the SEC gives final clearance to Defendants' Consent Statement. Because SEC rules permit acquirors to communicate with a target's shareholders before their consent statements are cleared, Defendants could take over the Board immediately upon SEC clearance by lining up consents now from Maxwell Shoe stockholders holding a majority of the shares. If Defendants were permitted to replace the Board with their hand-picked nominees based on the materially misleading Consent Statement and Tender Offer Statement, Maxwell Shoe and its stockholders will be irreparably harmed by the loss of control of their Company.

Maxwell Shoe thus meets the First Circuit's criteria for granting preliminary injunctive relief.  See San Francisco Real Estate Investors v. Real Estate Inv. Trust of Am., 701 F.2d 1000, 1002 (1st Cir. 1983).  First, preliminary injunctive relief is necessary in this case to prevent the irreparable harm Maxwell Shoe and its shareholders will suffer if Defendants are allowed to take over the Company based on materially misleading public filings and public statements.  Second, Maxwell Shoe is likely to prevail on the merits because of the materially false and misleading statements and omissions Defendants have already disseminated to the public.  Third, the harm to Maxwell Shoe and its shareholders if this Court denies preliminary injunctive relief -- the loss of control of their Company -- far outweighs the harm to Defendants if this Court grants that relief: a short delay in their desired acquisition until the Court can hold a trial on the merits.  Fourth, not only will the public not be harmed by entry of a preliminary injunction, but those persons who are investors or employees of the Company will be protected from losing their investments and jobs at least until this Court makes a determination on the merits.

## STATEMENT OF FACTS

### A.    Defendants' Undisclosed Motive for Acquiring Maxwell Shoe

Defendants' motive in acquiring Maxwell Shoe is to obtain the unique benefits associated with standing on both sides of the License. Jones has been pursuing this strategy for eight months now (see Tinagero Decl. ¶ 7), but nowhere do Defendants disclose that motive.

Maxwell Shoe has operated in Massachusetts for 55 years and currently employs over 135 people here. It is in the business of designing, developing, and marketing casual footwear for women and children. (Id. ¶ 2.) The License is extremely lucrative for Maxwell Shoe, which has been the exclusive licensee since 1999. (Id. ¶¶ 3, 5.) Sales under the Anne Klein brand name provided Maxwell Shoe with approximately $74.3 million in net sales in fiscal 2003, or approximately one third of the Company's approximately $225 million in net sales in that period. (Id.) However, as the licensor, Jones Investment Co., Inc. ("JIC") sees only a fraction of the amounts that Maxwell Shoe earns pursuant to the License. (Id.) If Defendants could acquire Maxwell Shoe, they would be able to stand on both sides of the License and either relicense the AK Anne Klein brand name for substantially greater royalties, or keep the lucrative income stream for themselves. (Id. ¶ 6.)

Jones's acquisition strategy emanates from its winning the August 2003 bankruptcy auction for the assets of Kasper A.S.L., Ltd. ("Kasper"), including the rights as licensor of the AK Anne Klein brand name pursuant to the License. (Id. ¶ 4.) In December 2003, JIC, a subsidiary of Jones, acquired all right, title and interest in and to the AK Anne Klein brand name and became the licensor under the License. (Id.)

Beginning in September 2003, after Jones won the bankruptcy auction for Kasper the previous month, Jones approached Maxwell Shoe to begin discussing a potential acquisition of the Company by Jones. (Id. ¶ 6, 7.) The discussions culminated on February 25, 2004, with Jones publicly announcing its unsolicited proposal to buy Maxwell Shoe for $20 per share. (Id.) After the Company informed Jones that it had rejected the proposal as inadequate, Defendants launched their unsolicited Tender Offer, again for $20 per share, and Consent Solicitation. (Id. ¶¶ 11-13; Lane Decl. Exs. 2, 3) Although not reflected in the Tender Offer Statement, Jones's offering price of $20.00 is substantially lower than the trading price of the Company's stock since February 24, 2004, before Defendants announced their proposal. (Id. Ex. 29.) Maxwell Shoe's stock has closed below $22 per share only one day since then. (Id.)

On the same day, Defendants also filed the Consent Statement with the SEC. It seeks, among other things, to obtain written consents from Maxwell Shoe's stockholders to remove

4

Maxwell Shoe's Board and replace its members with Jones's handpicked nominees. (Tinagero Decl. ¶ 13; Lane Decl. Ex. 3.) Neither the Tender Offer Statement nor the Consent Statement discloses the timing of Jones's acquisition of the License nor Jones's motivation in engineering the attempted takeover of Maxwell Shoe to obtain the benefits under the License.

On March 29, 2004, after having carefully considered Defendants' SEC filings with the assistance of its financial advisor, Lehman Brothers, and its legal advisors, Maxwell Shoe announced that its Board had decided to reject the Tender Offer. (Tinagero Decl. ¶ 15, Ex. 4.) Maxwell Shoe filed the Complaint in this action on April 1, 2004. (See Lane Decl. Ex. 1.)

### B.    Defendants' Material Omissions Regarding Defendants' Nominees

The Consent Statement describes Defendants' Nominees as "independent" of Jones and "highly qualified" to serve as directors of Maxwell Shoe. (Id. Ex. 3 at 3.) As discussed above in the Preliminary Statement and below in Sections B(3) and B(4), Defendants fail to disclose business relationships between Jones and certain of the Defendants' Nominees. Likewise, Defendants fail to disclose certain Defendants' Nominees' histories as directors and/or officers of companies that filed for bankruptcy or delisted from a stock exchange. (See id. Exs. 6-26.) Moreover, Defendants fail to disclose that in the event the Consent Solicitation succeeds and the Tender Offer fails (which is likely -- the Tender Offer price has always been $2 or more per share below the market price of the stock), Defendants' Nominees will be left in control of the Company.

### C.    Defendants' Disparagement of the Board

The Consent Statement states in two separate parts that Defendants "believe that the current directors of Maxwell [Shoe] are not acting, and will not act, in your best interests," and that Defendants "believe that the current members of [the Company's] Board of Directors are not acting in your best interests with respect to the offer." (Id. Ex. 3 at Proposed Letter to Maxwell Stockholders, 2.) Moreover, in a teleconference with analysts on March 31, 2004, Boneparth, referring to Maxwell Shoe's Board, stated: "[I]n the age we're living in today with corporate

governance and board accountability it seems to us that there has been a series of fairly irresponsible acts." (Id. Ex. 5 at 3.)

### D.    The Harm to the Company and Its Stockholders

If Defendants succeed in their Tender Offer based on materially misleading statements and omissions, Maxwell Shoe's stockholders will be harmed by not receiving fair value for their shares and by losing control of their Company. If Defendants succeed in their Consent Solicitation based on materially misleading statements and omissions, either the Tender Offer will succeed, with the harms previously described, or it will fail, leaving the Company's and its stockholders' fate in the hands of Defendants' Nominees, who will have been installed by the stockholders' mistaken reliance on the completeness and veracity of Defendants' disclosures.

### ARGUMENT

I.    **PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION TO PRESERVE THE STATUS QUO WHILE THE COURT CONSIDERS THE MERITS OF PLAINTIFF'S CLAIMS THAT DEFENDANTS HAVE MADE MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS.**

Maxwell Shoe is entitled to a preliminary injunction to prevent Defendants, during the pendency of this action, from conducting their Tender Offer and Consent Solicitation based on materially false and misleading public statements and omissions. If Defendants are not enjoined to preserve the status quo, there is a substantial risk of irreparable harm to Maxwell Shoe and its stockholders if Defendants are able to trick the stockholders into turning over control of the Company to Defendants and their hand-picked nominees to the Company's Board.

Preliminary injunctive relief is appropriate in cases such as this one to prevent irreparable harm based on violations of Section 14(a) and (e) of the Exchange Act, and SEC Rule 14a-9. See MAI Basic Four, Inc. v. Prime Computer, Inc., 871 F.2d 212, 218 (1st Cir. 1989) (affirming preliminary injunction for target company and noting that "to the extent target shareholders may be deprived of material information required to be disclosed under the Williams Act before irrevocably tendering their shares, they will be irreparably harmed"); Spencer Cos. v. Agency Rent-A-Car, Inc.,

542 F. Supp 237, 238 (D. Mass. 1982) (granting preliminary injunction against tenders made prior to issuance of corrective disclosure because companies and their stockholders "are likely to suffer irreparable damage if the [acquiror] is permitted to complete the tender offer and achieve control of the" target based on materially misleading disclosures); cf. General Aircraft Corp. v. Lampert, 556 F.2d 90, 96-98 (1st Cir. 1977) (affirming preliminary injunction barring defendant from acquiring stock, or soliciting proxies or consents obtained pursuant to materially misleading Schedule 13D).[4]

Courts within the First Circuit evaluate requests for preliminary injunctive relief according to four criteria: (i) the irreparability of the harm to the plaintiff if relief is not granted, (ii) the plaintiff's likelihood of success on the merits, (iii) balancing of the harm to the plaintiff against the harm to the defendants if relief is granted, and (iv) consideration of any adverse effect on the public interest if relief is granted. See San Francisco, 701 F.2d at 1002. All four factors counsel strongly in favor of granting preliminary injunctive relief in this action.

### A.    Maxwell Shoe Will Suffer Irreparable Harm If The Court Fails To Grant Injunctive Relief.

Maxwell Shoe and its stockholders will suffer irreparable harm if this Court declines to grant a preliminary injunction. SEC rules permit Defendants to communicate with the Company's stockholders even before the SEC clears the Consent Statement. See SEC Rules 14a-3(a), 14a-12. The Consent Statement is available to the public through the Jones website. Defendants say they plan to solicit consents as soon after Maxwell Shoe's April 8, 2004 shareholders meeting as the

---

[4] See also CNW Corp. v. Japonica Partners, L.P., 874 F.2d 193, 200-01 (3d Cir. 1989) (granting injunction because defendant was actively acquiring stock in, or attempting to take over, the target corporation at the time the injunction issued); Lone Star Steakhouse & Saloon, Inc. v. Adams, 148 F. Supp. 2d 1141, 1150 (D. Kan. 2001) (holding that to allow an election to proceed notwithstanding material misstatements and omissions would be to "forfeit" the "free and intelligent voting rights of [the issuer's] shareholders"); Lebhar Friedman, Inc. v. Movielab, Inc., 1987 WL 5793, at *5 (S.D.N.Y. Jan. 13, 1987) (granting preliminary injunction because of the irreparable harm that shareholders would suffer if they elected a board of directors based on materially misleading proxy statement); Edudata Corp. v. Scientific Computers, Inc., 599 F. Supp. 1084, 1088 (D. Minn. 1984) (granting TRO in order to prevent target shareholders from being irreparably harmed by false and misleading disclosures).

SEC clears the Consent Statement. (See Lane Decl. Ex. 27, ¶ 5.) Under Delaware law, written consents become effective immediately. See Del. Code Ann. tit. 8, § 228. Thus, Defendants could replace Maxwell Shoe's Board -- assuming it obtains the consents of a majority of the Company's shares -- as soon as it receives those consents.

A party may not wait until the issuance of a definitive consent statement to move for an injunction or expedited discovery because the process at that point is too far along, as the requested shareholder action could occur any day. See, e.g., In re General Motors Corp. Litig., Civil Action No. 20269-NC (Del. Ch. Oct. 2, 2003) (denying motion for expedited discovery because plaintiff moved only after issuance of definitive consent statement).[5] If Defendants' scheme succeeds based on their material misstatements and omissions, Maxwell Shoe and its stockholders will be irreparably harmed through the loss of control of their Company.

Preliminary injunctive relief is particularly appropriate in cases such as this where "it becomes difficult, and sometimes virtually impossible, to 'unscramble the eggs'" if a transaction is consummated based on misleading information. See MAI, 871 F.2d at 218 (internal quotation omitted); accord CNW Corp., 874 F.2d at 200-01; Consol. Gold Fields PLC v. Minorco, S.A., 871 F.2d 252, 261 (2d Cir. 1989); Koppers Co. v. Am. Express Co., 689 F. Supp. 1371, 1382 (W.D. Pa. 1988) (cited by MAI). Companies and their stockholders "are likely to suffer irreparable damage if the [acquiror] is permitted to complete the tender offer and achieve control of the" target based on materially misleading disclosures. Spencer, 542 F. Supp at 238 (granting preliminary injunction against tenders made prior to issuance of corrective disclosure). As the First Circuit noted in the context of a Section 13(d) violation:

> [W]e discover no error in the decision that irreparable injury would occur to shareholders and the investing public if [defendants] were allowed to continue their activities without correcting and amplifying their Schedule 13D. We therefore affirm the order granting the preliminary injunction insofar as it enjoined [defendants] from further violations of Section 13(d), from failing to amend their inaccurate Schedule 13D, and from acquiring further shares of [plaintiff's] common

---

[5] A copy of General Motors is attached for the Court's convenience as Lane Decl. Ex. 31.

stock or soliciting proxies or consents from [plaintiff's] stockholders until the
Schedule 13D is amended to reflect accurately their intentions.

General Aircraft, 556 F.2d at 97.

Absent such an injunction, Maxwell Shoe's "shareholders could elect a Board of Directors based on misleading information which has been presented to them in violation of the securities laws." Lebhar Friedman, Inc., 1987 WL 5793, at *5 (granting preliminary injunction preventing defendant's solicitation of shareholders by means of an allegedly misleading proxy statement). The potential termination of Maxwell Shoe's management could create chaos for the Company and devastate its plans for the future. Courts have recognized that "the wrongful positioning of corporate heads wreaks irreparable harm on a corporation and its shareholders." Id.; see also Lone Star, 148 F. Supp. 2d at 1150.

Monetary damages will not remedy the inability of Maxwell Shoe's shareholders to effectively exercise their corporate suffrage rights, nor could it compensate Maxwell Shoe for being forced into a merger with Jones. See Polaroid Corp. v. Disney, 862 F.2d 987, 1006 (3d Cir. 1988) (in a Section 14(e) action, irreparable harm arises in part because of the difficulty in proving money damages in a suit based upon material misrepresentation by a tender offeror).

Moreover, even if the Consent Solicitation were allowed to proceed and Jones lost the consent battle, Maxwell Shoe would be irreparably harmed because its shareholders would be left with negative impressions of the Board based upon Jones's disparaging statements. See Lone Star, 148 F. Supp. 2d at 1150. This type of damage "to the Board's reputation and concomitant decrease in the level of shareholder trust cannot be quantified and cannot be compensated in a post-vote exercise of the court's equitable power." Id.

Accordingly, absent preliminary injunctive relief, Maxwell Shoe and its stockholders will sustain irreparable harm from the uncorrected, materially false and misleading public statements by Defendants. See MAI, 871 F.2d at 218; Spencer, 542 F. Supp. at 238; cf. General Aircraft, 556 F.2d at 97 (affirming injunction for Section 13(d) violation).

9

**B.    Maxwell Shoe Can Demonstrate
A Likelihood Of Success On The Merits.**

Maxwell Shoe is likely to prevail on both its SEC Rule 14a-9 claim and on its Exchange Act Section 14(e) claim.  To prevail on a Rule 14a-9 claim, a plaintiff must show: (1) that the proxy or consent statement contains a false or misleading statement of material fact or omits to state a material fact necessary to make the statement not false or misleading; and (2) that the misstatement or omission was the result of knowing, reckless or negligent conduct.  See, e.g., Gillette Co. v. RB Partners, 693 F. Supp. 1266, 1269 (D. Mass. 1988).

To establish a Section 14(e) violation, a plaintiff likewise must show:  (1) The defendant made an untrue statement of material fact or omitted to state a material fact necessary to make statements not misleading in connection with a tender offer; (2) that the misstatement or omission was material; and (3) that the defendant acted with either knowledge of falsity or reckless disregard for the truth.  See, e.g., Am. Insured Mortgage Investors v. CRI, Inc., 1990 WL 192561, at *6 (S.D.N.Y. Nov. 26, 1990).

A "material" fact is one that a reasonable shareholder would consider important to know in deciding how to vote.  TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976) (construing "materiality" under Rule 14a-9); MAI, 871 F.2d at 221-22 & n.10 (quoting TSC and applying it to "materiality" under Section 14(d)).  "The purpose of the Williams Act is to insure that public shareholders who are confronted with a cash tender offer for their stock will not be required to respond without adequate information regarding the qualifications and intentions of the offering party."  General Aircraft, 556 F.2d at 94-95 (internal quotation omitted).  As discussed below, Maxwell Shoe can demonstrate that the Consent Statement and Tender Offer Statement violate the Exchange Act, the Williams Act and SEC rules by making material misstatements and omissions.

1.    **Defendants Fail to Disclose Their True
Motivation for Their Proposed Takeover of Maxwell Shoe.**

Defendants' failure to disclose their motive for going to the effort and expense of trying to

take over Maxwell Shoe -- acquiring the Company's rights under the License for the AK Anne

Klein brand name -- renders the Tender Offer and Consent Statement materially misleading:

- Nowhere do Defendants reveal that Jones won the bankruptcy auction in August 2003 to
  become the licensor under the License, then turned around a month later to begin trying to
  acquire Maxwell Shoe. (See Tinagero Decl. ¶¶ 4, 7.)

- Nowhere do Defendants disclose how and why the License would be uniquely valuable to
  Jones because if it acquires Maxwell Shoe, it could relicense the AK Anne Klein brand
  name for substantially greater royalties, or keep the lucrative income stream ($74.3 million
  in fiscal 2003 net sales) for itself. (Id. at ¶ 6)

- Nowhere do Defendants disclose that JIC became the licensor only in December 2003. (Id.
  at ¶ 4)

Jones's entire, undisclosed strategy from the time it won the bankruptcy auction of Kasper

has been to stand on both sides of the License. Jones is now in the eighth month of this quest, and

the February proposal to acquire Maxwell Shoe, followed by the March Tender Offer and Consent

Solicitation, are simply the latest forms that quest is taking.

The only statement in either the Tender Offer Statement or the Consent Statement regarding

Defendants' purpose in pursuing the acquisition of Maxwell Shoe is the self-evident assertion:

"The purpose of the Offer is to enable Jones to acquire control of, and ultimately, the entire equity

interest in Maxwell." (Lane Decl. Ex. 3 at 5.)

Unedifying disclosures of this sort are patently inadequate, particularly in cases such as this

one where the acquiror has an undisclosed agenda for pursuing a transaction. See Mendell v.

Greenberg, 927 F.2d 667, 670 (2d Cir. 1991) ("A proxy statement should honestly, openly and

candidly state all the material facts, making no concealment of the purposes for the proposals it

advocates. Unlike poker where a player must conceal his unexposed cards, the object of a [consent]

statement is to put all one's cards on the table face-up."). Disclosure of motivation is required in

situations such as this one where the acquiror's true agenda is hidden and disclosure would have a

11

"significant bearing on a reasonable shareholder's assessment of the recommended course of action." Id. at 675.

Maxwell Shoe's shareholders are entitled to know Defendants' true motivation for their unsolicited takeover proposal. Maxwell Shoe has an asset that is uniquely valuable to Jones. Without understanding the unique value of the License to Jones and the lengths to which Jones will go to obtain control of the Company's rights as licensee, the stockholders will not be able to evaluate whether the Tender Offer price is fair or whether to install Defendants' Nominees through the Consent Solicitation, who presumably will ensure the Tender Offer can succeed.

Defendants' failure to disclose their motivation in the Tender Offer Statement and the Consent Statement constitutes a material violation of Section 14(e) and Rule 14a-9. Jones should not be allowed to misleadingly suggest that its interests are aligned with Maxwell Shoe's other shareholders when, in fact, Maxwell Shoe's rights under the License Agreement are uniquely valuable to Jones.

### 2.    Defendants Falsely State that the Tender Offer Represents "an Attractive Premium" to Maxwell Shoe's Shareholders.

Defendants' assertion that the Tender Offer price of $20 per share is "an attractive premium" for Maxwell Shoe's stockholders is false and misleading for two reasons. First, as discussed above, Defendants do not disclose their hidden motivation for the Tender Offer: to obtain the unique value associated with standing on both sides of the License. Without that information, Maxwell Shoe stockholders cannot evaluate whether the "premium" is "attractive" or not.

Second, Maxwell's Shoe's stock closed at $22.09 on March 22, 2003 -- the day before Defendants filed the Tender Offer Statement and began their Tender Offer at $20 per share. (Lane Decl. Ex. 29.) The stock has remained at approximately $22 per share every day since, as it did for nearly a month previously, since the day after Jones announced its proposal to buy the Company. (Id.) Defendants fail to explain why Maxwell Shoe's shareholders should tender their shares for more than $2 per share less than what they could receive immediately on the open market, or why

12

Defendants' Nominees would "consider" the Tender Offer under such circumstances, as the Consent Statement promises they will do.

Defendants justify their characterization of the Tender Offer as an "attractive premium" by comparing their offer of $20 per share to the $17.59 closing price of Maxwell Shoe stock on February 18, 2004 -- the date that Jones made a confidential offer to acquire Maxwell Shoe at $20 per share. (Id.) The date of Jones's confidential offer to acquire Maxwell Shoe's stock is arbitrary and irrelevant for the purposes of calculating the purported "premium" represented by Jones's tender offer. A more relevant disclosure would be that Maxwell Shoe's stock closed at $18.40 on February 24, 2004, the day before Jones publicly announced its intention to acquire Maxwell Shoe. (Id.) Measured against that date, Defendants' "attractive premium" is really only a lowball 8.7% increase over the market price of the stock. Defendants' selection of a random day against which they urge the Company's stockholders to evaluate the "premium" connected to their Tender Offer makes the Tender Offer Statement materially misleading in violation of Section 14(e).

> **3.    Defendants Fail to Disclose Material Business Relationships between Defendants' Nominees and Jones.**

Defendants' Nominees appear to have undisclosed business relationships with Jones. A failure to disclose business relationships between an acquiror and its nominees to a target's board of directors violates Rule 14a-9. See Monheit v. Carter, 376 F. Supp. 334, 340 (S.D.N.Y. 1974); SEC Rule 14a-101. The Consent Statement falsely asserts that all of Defendants' Nominees are "independent" of Defendants. Instead, the Consent Statement fails to disclose:

- Jones is a client of Financo, for whom Defendants' Nominee Harold Leppo performs consulting work. (See Lane Decl. Exs. 6, 7.)

- Current Jones director Howard Gittes was a director and chairman of Sunbeam's compensation committee during the same time period that Defendants' Nominee Robert D. Martin served as Senior Vice President and Chief Financial Officer, International, at Sunbeam. (Id. Ex. 11 at 3, 13; 12 at Item 3.)

- Merrill Lynch underwrote two public offerings of Jones Apparel stock -- one offering of 3.1 million share in 1994 (offered in part by Jones director Sidney Kimmel) and another offering of 4.5 million shares in 1997. At these times, Defendants' Nominee Michael

Koeneke, served as co-head of Merrill Lynch's Global Mergers and Acquisitions department. (Id. Exs. 13, 14, 15.)

- The Consent Statement likewise fails to disclose that this is at least the third instance in which Koeneke has been nominated by a hostile acquiror to serve on the board of a target company. (Id. Exs. 16, 17.) As a result of one such nomination, Koeneke is now a director of CPI Corp., which Defendants also fail to disclose. (Id. Ex. 17.) Another of the hostile acquirors, Simon Property Group ("Simon"), does significant business with Jones and/or its subsidiaries in connection with retail stores operated by Jones and its subsidiaries (such as Easy Spirit and Nine West) in malls owned by Simon. (Id. Ex. 18.)

These business relationships raise potentially serious questions regarding the purported "independence" of Jones's nominees to the Maxwell Shoe Board.[6] Moreover, Jones's confident assertion in the Consent Statement that its handpicked nominees "subject to their fiduciary duties . . . are expected to support the [tender offer] and the [proposed transaction]" suggests that Jones's proposed nominees are anything but independent. Independence issues arise if a director is beholden financially or compromised as a result of "personal or other relationships" with an interested party. See In re Oracle Corp. Derivative Litig., 824 A.2d 917, 938-39 (Del. Ch. 2003). Maxwell Shoe's shareholders deserve to receive full disclosure regarding the Defendants' Nominees' past and present business relationships with Jones and its affiliates, and Defendants' culpable failure to provide these disclosures violates Rule 14a-9 and Section 14(e). See Monheit, 376 F. Supp. at 340; SEC Rule 14a-101.

### 4. Defendants Omit Material Information Regarding the Qualifications and Competence of Defendants' Nominees.

Both the Consent Statement and the Tender Offer Statement misleadingly tout Defendants' Nominees as "highly qualified." Instead, the evidence already available suggests otherwise. Several of Defendants' Nominees have left a string of failed companies in their wake. Defendants disclose none of this information. For example:

---

[6] This is not a case where Jones has disclosed conflicts of interest but failed to characterize those conflicts of interest in a negative light. Jones has not disclosed any information regarding the conflicts listed above.

- The Consent Statement states that Jones's nominee, Allan H. Corn, has been a director of Michael Anthony Jewelers, Inc. since 1989. (Lane Decl., Ex. 3 at 6.) The Consent Statement also notes that Corn served as Michael Anthony's Chief Financial Officer for a period of time until December 2003. (Id.) Defendants fail to reveal, however, that as of December 2003, Michael Anthony had reported losses for six straight quarters and had seen an operating profit of $4.2 million turn into operating loss of $4.5 million for 2003. (Id., Exs. 19 at 10; 20 at 11; 21 at 12; 22 at 15; 23 at 16; 24 at 15; 25.) Defendants' further fail to reveal that Michael Anthony was delisted from the American Stock Exchange on February 20, 2004. (Id., Ex. 26.)

- Defendants fail to disclose that Sunbeam filed for bankruptcy in 2001, less than a year after Defendants' Nominee Robert D. Martin relinquished his position at Sunbeam as Senior Vice President and Chief Financial Officer, International. (Id., Ex. 12.)

- Defendants fail to disclose that Defendants' Nominee Harold Leppo served as a director of at least three companies that filed for bankruptcy between 1999 and 2001. (Id., Exs. 8 at Item 5; 9 at 2; 10 at 7.)

More generally, the Consent Statement fails to include any description of the business conducted by companies with whom Defendants' Nominees associated over the last five years.[7]

Defendants' Nominees' histories as directors and/or managers of failed businesses is material to Maxwell Shoe stockholders, and Defendants' failure to disclose them violates Rule 14a-9 and Section 14(e). It is possible that Defendants' Consent Solicitation will succeed, but their Tender Offer will fail -- especially as the Tender Offer price has been approximately $2 per share lower than the stock's trading price every day since Defendants filed the Tender Offer Statement. Thus, Maxwell Shoe's stockholders could find themselves with a new board of directors who, unbeknown to the stockholders, have questionable abilities given their responsibilities for companies that declared bankruptcy or were delisted. Before tendering their shares or providing

---

[7] Jones's failure to disclose this information is a violation of Item 7 of Schedule 14A and Item 401(e) of Regulation S-K. This omission is only one of a number of instances in which Jones has failed to satisfy explicit SEC disclosure requirements. Information that must be disclosed pursuant to SEC disclosure requirements is presumptively material. See Howing Co. v. Nationwide Corp., 927 F.2d 263, 265 (6th Cir.), vacated on other grounds, 502 U.S. 801 (1991). It is worth noting, moreover, that violation of SEC disclosure rules is a sufficient but not necessary condition for a court to find the omission material. See Maldonado v. Flynn, 597 F.2d 789, 796 n.9 (2d Cir. 1979) (noting that Schedule 14A sets only "minimum disclosure standards . . . [and] does not necessarily guarantee that a proxy statement satisfies Rule 14a-9").

consents, Maxwell Shoe's shareholders are entitled to receive adequate information to allow them to assess whether Defendants' Nominees have the necessary qualifications to serve as directors of the Company.

### 5.    Defendants Made Materially Misleading Statements and Omissions Regarding the Process for Providing Consents.

Defendants make numerous misstatements and omissions concerning the process and consequences of giving written consents that are likely to mislead Maxwell Shoe's shareholders:

- Defendants fail to disclose that if Jones's Consent Solicitation is successful, Jones's handpicked nominees will assume control of Maxwell Shoe, even if Jones's tender offer fails.

- Defendants fail to disclose that if Defendants' Nominees take control of Maxwell Shoe, and if a majority of Maxwell Shoe's stockholders tender their shares, then the remaining minority shareholders will be forced to surrender their shares as part of the "second-step" merger, possibly at a price that they consider too low.

- Jones President and CEO Peter Boneparth stated on a March 31, 2004 conference call with analysts that Jones is "not [a] shareholder[]" of Maxwell Shoe. This is simply false. Jones is a holder of 50 shares of Maxwell Shoe stock. (Id. Ex. 5 at 3.)

- Defendants fail to comply with Item 14 of Schedule 14A. If the Consent Solicitation succeeds, Maxwell Shoe's new Board likely will approve the Tender Offer, and Maxwell Shoe's shareholders will not have the opportunity to vote upon the proposed acquisition. In situations where a matter to be voted upon also involves other matters that stockholders will not subsequently be permitted to vote upon, information with respect to those matters must also be provided in accordance with the standards under Item 14 of Schedule 14A.

Defendants' failure to disclose the information required by Item 14 of Schedule 14A, or to disclose the consequences of a stockholder's submission of a written consent, constitute material omissions in violation of Rule 14a-9.

### 6.    Defendants Have Disparaged Maxwell Shoe's Board.

Defendants' statements that Maxwell Shoe's directors are not acting in the best interests of the Company's stockholders disparage the Board in violation of Rule 14a-9. Note (b) to the Rule declares a statement may be misleading if it "directly or indirectly impugns character, integrity or

personal reputation, or directly or indirectly makes charges concerning improper, illegal or immoral conduct or associations, without factual foundation." SEC Rule 14a-9.

The Consent Statement states Defendants "believe that the current directors of Maxwell [Shoe] are not acting, and will not act, in your best interests." (Lane Decl. Ex. 3.) It also states that Defendants "believe that the current members of [the Company's] Board of Directors are not acting in your best interests with respect to the [Tender] [O]ffer." (Id.) These statements imply that the Board is breaching its fiduciary duty to the Company's stockholders. Subsequently, in a March 31, 2004 teleconference with analysts, Jones President and CEO Peter Boneparth again implied the Board was violating its fiduciary duties: "[I]n the age we're living in today with corporate governance and board accountability it seems to us that there has been a series of fairly irresponsible acts." (Id. Ex. 5 at 3.)

The SEC regularly finds that statements such as these, suggesting directors are breaching their fiduciary duties, violate Rule 14a-9.[8] Defendants fail to provide any factual support for these allegations.[9] The purported "attractive premium" Defendants are offering is only 8.7% over the stock price before they announced their proposal, and more than $2 per share less than the stock has been trading ever since. Apparently, Defendants believe it is a breach of the Board's duty to fail to recommend that the Company's stockholders tender their stock to MSCAC for $20 a share, rather

---

[8] See, e.g., Phoenix Gold Int'l, Inc., SEC No-Action Letter, 2000 WL 1726981, at *9 (Nov. 21, 2000) (statement referring to an "opportunity to elect a truly independent director" violates Rule 14a-9; Omission of Shareholder Proposal of John Jennings Crapo (CCBT Bancorp, Inc.)), SEC No-Action Letter, 1999 WL 231196, at *2 (Apr. 20, 1999) (statement that "Board . . . [was] not serving our interests but . . . put the interests of the Board and its members individually ahead of ours and ahead of their fiduciary duty to us" violates Rule 14a-9)); cf. United States v. Matthews, 787 F.2d 38, 46 (2d Cir. 1986) (noting that "[t]he SEC disapproves of attacks on character without complete and adequate supporting data, the Commission's position being that such attacks are contrary to the standards of fair disclosure unless they are in fact true").

[9] Far from breaching its fiduciary duties, the Board has retained financial and legal advisors, each of whom has assisted the Board in its careful evaluation of Defendants' proposal, and determined with their assistance that Defendants' offer is financially inadequate. The market evidently agrees because the Company's stock has been trading more that $2 per share above the Tender Offer price.

than sell it on the open market for over $22 per share. Defendants' disparaging, unsupported invective against the Board constitutes a material violation of Rule 14a-9.

### C.    The Balance Of The Hardships Favors Maxwell Shoe.

The balance of harms weighs in favor of Maxwell Shoe. As described above, Maxwell Shoe will suffer irreparable harm if the Consent Solicitation and Tender Offer are allowed to proceed predicated on Defendants' materially false and misleading statements and omissions. Conversely, the First Circuit has found that the potential harm to the acquiror resulting from delay does not outweigh the harm to shareholders if they are deprived of material information. See MAI, 871 F.2d at 218 (affirming preliminary injunction in target company's favor). Courts have not hesitated to enjoin tender offers where the harm to the target outweighs the harm to the offeror. See, e.g., Koppers Co. 689 F. Supp. at 1407 (injury to offeror resulting from delay is "certainly less" than the injury to shareholders stemming from a tender offer that likely violates Section 14(e)) (cited by MAI, 871 F.2d at 218-19). The specter of any harm to Defendants -- let alone greater irreparable harm than what Maxwell Shoe and its shareholders would suffer -- is particularly remote in this case because Jones has been pursuing a business combination with Maxwell Shoe since September 2003.

Defendants may renew their Tender Offer and Consent Solicitation in the event that they prevail at trial. See Sonesta Int'l Hotels Corp. v. Wellington Assocs., 483 F.2d 247, 250 (2d Cir. 1973); Burlington Indus., Inc. v. Edelman, 666 F. Supp. 799, 819 (M.D.N.C. 1987) (granting injunction in part because relief would not prevent offeror from acquiring the target). Therefore, the balance of harms tips strongly in favor of granting Maxwell Shoe preliminary injunctive relief.

**D.    The Public Will Not Be Harmed By The Grant Of A Preliminary Injunction.**

A preliminary injunction here will have no adverse effect on the public interest.  To the contrary, numerous courts have noted the overriding public interest of ensuring that stockholders receive full and accurate disclosures in connection with consent solicitations and tender offers.[10]

## CONCLUSION

For the reasons set forth above, Maxwell Shoe respectfully requests that the Court grant a preliminary injunction to preserve the status quo and to prevent Defendants from conducting the Consent Solicitation or the Tender Offer until trial on the merits, and grant Maxwell Shoe such other and further relief as this Court deems just and proper.

Dated:  Boston, Massachusetts
April  7, 2004

Respectfully submitted,

Maxwell Shoe Company Inc.,
By Its Attorneys

Jordan D. Hershman, Esq. (BBO # 553709)
Roger A. Lane, Esq. (BBO #551368)
Kenneth I. Weissman, Esq. (BBO #653834)
TESTA, HURWITZ & THIBEAULT, LLP
125 High Street
Boston, Massachusetts 02110
Telephone (617) 248-7000
Facsimile (617) 248-7100

---

[10]   See Chambers v. Briggs & Stratton Corp., 863 F. Supp. 900, 906 (E.D. Wis. 1994) (granting preliminary injunction in part due to "overriding public interest in the full and accurate disclosure of information to shareholders of public corporations to ensure that a shareholder's vote is based upon accurate and complete information . . . [a]llowing a shareholder vote based on incomplete and inaccurate information undermines the purpose underlying Rule 14a-9"); Lewis v. Gen. Employment Enters., Inc., 1991 WL 11383, at *4 (N.D. Ill. Jan. 21, 1991) (granting TRO delaying shareholders' meeting because "[d]efendants cannot dispute that the public interest favors absolute and full disclosure to ensure that a shareholder vote be based upon complete, accurate, and comprehensible information"); UV Indus., Inc. v. Posner, 466 F. Supp. 1251, 1256-59 (D. Me. 1979) (granting preliminary injunction to prevent defendant from purchasing plaintiff's stock under Maine statute "designed to protect the public interest in full disclosure to stockholders . . .").

Of counsel:
Adam H. Offenhartz, Esq.
Jennifer H. Rearden, Esq.
Robert E. Malchman, Esq.
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, N.Y. 10166-0193
Tel.:    (212) 351-4000
Fax.:    (212) 351-4035

## CERTIFICATE OF SERVICE PURSUANT TO L.R. 5.2(b)(2)

I hereby certify that on April 7, 2004, a true copy of the above document was served by hand upon Defendants, Jones Apparel Group, Inc., 250 Rittenhouse Circle, Keystone Park, Bristol, PA 19007 and MSC Acquisition Corp., 250 Rittenhouse Circle, Keystone Park, Bristol, PA 19007.

_____
Roger A. Lane