## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN 'S OFFICE

2004 APR 12 P 4: 39

U.S. DISTRICT COURT
DISTRICT OF MASS

| | |
|---|---|
| MAXWELL SHOE COMPANY INC., ) | |
| Plaintiff, ) | Civil Action No. |
| v. ) | 04 CV 10635 RGS |
| JONES APPAREL GROUP, INC.; and ) MSC ACQUISITION CORP., ) | |
| Defendants. ) | |

## PLAINTIFF'S MOTION FOR A
## FED. R. CIV. P. 16 SCHEDULING CONFERENCE

Pursuant to Fed. R. Civ. P. 16, plaintiff Maxwell Shoe Company Inc. ("Maxwell Shoe" or

the "Company"), hereby respectfully requests that the Court order a scheduling conference for

the purpose of establishing a schedule relating to Maxwell Shoe's Motion for a Preliminary

Injunction, expediting resolution of this action, and addressing matters raised by this Court's

April 9, 2004 Order (the "Order").[1]

---

[1]  In addition to Plaintiff's Motion for a Preliminary Injunction, also pending before the Court
is Plaintiff's Motion for Expedited Scheduling and Discovery.  Both Plaintiff and Defendants
have requested an opportunity to be heard with respect to the Motion for Expedited
Scheduling and Discovery.  Attached hereto for the Court's convenience are (1) Plaintiff's
Motion for Expedited Scheduling and Discovery (attached hereto as Exhibit 1); (2)
Defendants' Opposition to Plaintiff's Motion for Expedited Discovery, with a cover letter to
the Court dated April 9, 2004 (attached hereto as Exhibit 2); and (3) Plaintiff's Reply
Memorandum of Law In Support of Plaintiff's Motion for Expedited Scheduling and
Discovery (attached hereto as Exhibit 3).

This action is one for corporate control and is not a garden-variety stockholder strike suit organized by plaintiffs' contingency lawyers looking for a quick dollar. The only parties are the plaintiff target corporation and the defendant hostile acquirors. The parties sharply dispute the factual questions, including whether Defendants' public statements contain omissions and misrepresentations, whether such omissions and misrepresentations are material, and whether Defendants have acted with scienter (in connection with the Section 14(e) claims only). Accordingly, an evidentiary hearing on Plaintiff's Motion for a Preliminary Injunction will be necessary to enable the Court to make credibility determinations and resolve the factual disputes. See Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 224 (1st Cir. 2003) (vacating denial of preliminary injunction as abuse of discretion where there "are fact-intensive questions and the record is, for all practical purposes, bare as a new-born baby" and remanding for an evidentiary hearing).[2] The Order was silent as to the hearing date, and Plaintiff therefore respectfully requests a conference to schedule matters relating to the preliminary injunction hearing.

---

[2] Accord 13 James Wm. Moore et al., Moore's Federal Practice § 65.21 (3d ed. 2004) ("Since a preliminary injunction hearing requires an adequate presentation of the facts, the courts should be reluctant to decide disputed factual issues without a hearing on the basis of affidavits alone."); 11A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (2d ed. 1995) ("[I]f there is a factual controversy, oral testimony is preferable to affidavits because of the opportunity it provides to observe the demeanor of the witnesses."); see also Davis v. New York City Hous. Auth., 166 F.3d 432, 437-38 (2d Cir. 1999) ("motions for preliminary injunction should not be resolved on the basis of affidavits that evince disputed issues of fact"); Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 170 (11th Cir. 1988) (reversing denial of motion for preliminary injunction where court did not hold evidentiary hearing); Swiderek v. Medeco Sec. Locks, Inc., 680 F.2d 37, 38 (7th Cir. 1981) (where "affidavits [are] conflicting: '[s]uch conflicts must be resolved by oral testimony since only by hearing the witnesses and observing their demeanor on the stand can the trier of fact determine the veracity of the allegations made by the respective parties'") (quoting Sims v. Greene, 161 F.2d 87, 88 (3d Cir. 1947)).

The Order also makes three points, and Maxwell Shoe respectfully requests the opportunity to address each one. <u>First</u>, the Order refers to Plaintiff "having delayed filing of the motion [for a short order of notice] until the day prior to the shareholders' meeting." Plaintiff regrets any confusion on this point and wishes to make clear that the Company's April 8, 2004 annual shareholders' meeting is not relevant to any issue in this litigation. Nothing happened or might have happened at that meeting for which Maxwell Shoe is seeking relief; rather, the focus is on events <u>following</u> that meeting. Indeed, Defendants have stated that they will only begin obtaining written consents from stockholders <u>after</u> the April 8 meeting and <u>after</u> the SEC clears their Schedule 14A (the "Consent Statement").[3]

<u>Second</u>, while the Tender Offer price is currently below the market price for the Company's stock, Defendants have the ability to change their offer at any time, the market price could drop and, in any case, the Company is being irreparably harmed by Defendants' materially false and misleading statements, which are affecting the total mix of information available to the stockholders. Just as political campaigns do not begin on Election Day, neither do contests for corporate control begin when the SEC clears a consent statement. The campaigning for Maxwell Shoe's stockholders' "votes" has already begun. Defendants are permitted to solicit stockholders

---

[3] Moreover, Maxwell Shoe has responded promptly to Defendants' consent solicitation (the "Consent Solicitation") and tender offer (the "Tender Offer"). Defendants filed the Consent Statement and SEC Schedule TO (the "Tender Offer Statement") on March 23, 2004. After careful consideration and with the advice of financial and legal consultants, the Company rejected the offer on March 29. Maxwell Shoe filed this action three days later. Six days after that (and while Maxwell Shoe was preparing expedited briefing in response to <u>two</u> actions seeking expedited proceedings brought by Defendants in Delaware Chancery Court, of which Defendants have dismissed one, dismissed three of the four counts in the other, and withdrawn their request for expedited discovery), Maxwell Shoe moved this Court for expedited scheduling and discovery. Maxwell Shoe is not seeking a temporary restraining
[Footnote continued on next page]

even before SEC clearance. See 17 C.F.R. § 240.14a-3, § 240.14a-12. Defendants have said they will seek to obtain written consents immediately upon SEC clearance.[4] Written consents are immediately effective under Delaware law. See Del. Code Ann. tit. 8, § 228. The Consent Solicitation may take place and succeed independent of the price of the stock or of the Tender Offer. Therefore, a preliminary injunction is appropriate to prevent a violation of Section 14(a).

Moreover, in connection with the Section 14(e) claims, Maxwell Shoe controls neither the price of the stock (which could drop), nor the price of the Tender Offer (which Defendants may raise at any time). Again, just because Maxwell Shoe does not seek a TRO today does not mean it will not in the future, nor does it mean preliminary injunctive relief is inappropriate.

Defendants likely are already communicating -- using their misleading Consent Statement and Tender Offer Statement -- with the Company's major stockholders in an effort to gain written consents to put Defendants' handpicked nominees on the Company's board of directors, who then will take the steps necessary to effect the acquisition. As soon as Defendants (i) have those stockholders lined up (perhaps by raising their bid); and (ii) obtain clearance from the SEC for the Consent Statement, they will strike at once and seek to take over the Company immediately while still in violation of both Sections 14(a) and (e). For this reason, a preliminary injunction hearing is necessary to protect Maxwell Shoe and its stockholders, and Maxwell Shoe may be required to seek a TRO if this threat becomes immediate before a preliminary injunction hearing can be held.

---

[Footnote continued from previous page]
order ("TRO"), as the risk of irreparable harm is not immediate, though may need to do so if circumstances change.

[4] See Declaration of Roger A. Lane in Support of Plaintiff's Motions for a Preliminary Injunction and Expedited Discovery, executed April 6, 2004 ("Lane Decl."), Ex. 27, ¶ 5.

Third, while shareholders may be compensated with damages in the ordinary shareholder strike suit situation, the First Circuit has held that, in the loss of corporate control context, money damages (or even post-transaction injunctive relief) are not adequate remedies.[5]

For these reasons, Maxwell Shoe respectfully requests the Court to order a scheduling conference at the Court's earliest convenience to discuss matters relating to the preliminary injunction hearing and to establish a schedule for the preliminary injunction phase of this case.

---

[5] See MAI Basic Four, Inc. v. Prime Computer, Inc., 871 F.2d 212, 218 (1st Cir. 1989) (affirming preliminary injunction for target company and noting that "to the extent target shareholders may be deprived of material information required to be disclosed under the Williams Act before irrevocably tendering their shares, they will be irreparably harmed"); Gen. Aircraft Corp. v. Lampert, 556 F.2d 90, 96-98 (1st Cir. 1977) (affirming preliminary injunction barring defendant from acquiring stock, soliciting proxies or consents, and from voting stock obtained pursuant to materially misleading Schedule 13D); accord Spencer Cos., Inc. v. Agency Rent-A-Car, Inc., 542 F. Supp. 237, 238 (D. Mass. 1982) (granting preliminary injunction against tenders made prior to issuance of corrective disclosure because companies and their stockholders "are likely to suffer irreparable damage if the [acquiror] is permitted to complete the tender offer and achieve control of the" target based on materially misleading disclosures); see also CNW Corp. v. Japonica Partners, L.P., 874 F.2d 193, 200-01 (3d Cir. 1989) (granting injunction because defendant was actively acquiring stock in, or attempting to take over, the target corporation at the time the injunction issued); Lone Star Steakhouse & Saloon, Inc. v. Adams, 148 F. Supp. 2d 1141, 1150 (D. Kan. 2001) (holding that to allow an election to proceed notwithstanding material misstatements and omissions would be to "forfeit" the "free and intelligent voting rights of [issuer's] shareholders"); Lebhar Friedman, Inc. v. Movielab, Inc., 1987 WL 5793, at *5 (S.D.N.Y. Jan. 13, 1987) (granting preliminary injunction because of irreparable harm that shareholders would suffer by electing board of directors based on materially misleading proxy statement).

Dated: Boston, Massachusetts

      April 12, 2004

                                                                Respectfully submitted,

                                                               Maxwell Shoe Company Inc.
                                                               By Its Attorneys

                                                               Jordan D. Hershman (BBO # 553709)
                                                               Roger A. Lane (BBO #551368)
                                                               Kenneth I. Weissman (BBO #653834)
                                                               TESTA, HURWITZ & THIBEAULT, LLP
                                                               125 High Street
                                                               Boston, Massachusetts 02110
                                                               Telephone (617) 248-7000
                                                               Facsimile (617) 248-7100

Of counsel:

Adam H. Offenhartz
Jennifer H. Rearden
Robert E. Malchman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, N.Y. 10166-0193
Telephone (212) 351-4000
Facsimile (212) 351-4035

## CERTIFICATE OF COMPLIANCE WITH LR 7.1

I hereby certify that counsel for Plaintiff sought to confer with counsel for Defendants in a good faith effort to resolve the issues set forth herein, and that counsel for Defendants did not return my telephone calls or email messages seeking to confer.

Roger A. Lane

## CERTIFICATE OF SERVICE PURSUANT TO L.R. 5.2(b)(2)

I hereby certify that on April 12, 2004, a true copy of the above document was served by hand upon counsel of record for each Defendant.

Roger A. Lane

7