UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

MAXWELL SHOE COMPANY INC., )
)
Plaintiff, )
)
v. ) Civil Action No.
) 04 CV 10635 RGS
JONES APPAREL GROUP, INC.; and )
MSC ACQUISITION CORP., )
)
Defendants. )
)
)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR EXPEDITED SCHEDULING AND DISCOVERY**

OF COUNSEL:

Adam H. Offenhartz
Jennifer H. Rearden
Robert E. Malchman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, N.Y. 10166-0193
Telephone (212) 351-4000
Facsimile (212) 351-4035

TESTA, HURWITZ & THIBEAULT, LLP

Jordan D. Hershman (BBO #553709)
Roger A. Lane (BBO #551368)
Kenneth I. Weissman (BBO #653834)
TESTA, HURWITZ & THIBEAULT, LLP
125 High Street
Boston, Massachusetts 02110
Telephone (617) 248-7000
Facsimile (617) 248-7100

Attorneys for Plaintiff,
Maxwell Shoe Company, Inc.

April 12, 2004

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

I. PLAINTIFF'S RISK OF IRREPARABLE HARM SATISFIES THE PSLRA TEST FOR ALLOWING DISCOVERY ........................................................................ 3

II. ANY MOTION TO DISMISS WILL BE WITHOUT MERIT BECAUSE "MATERIALITY" IS A QUESTION OF FACT, NOT OF LAW ................................... 5

III. THE DISCOVERY SOUGHT IS "PARTICULARIZED" TO ALLOW PLAINTIFFS TO PROVE THE ALLEGED MISSTATEMENTS AND OMISSIONS AND TO SHOW THE DEFENDANTS' STATE OF MIND. ................ 6

IV. PLAINTIFF'S CLAIMS REGARDING DEFENDANTS' CONSENT SOLICITATION ARE RIPE FOR CONSIDERATION ................................................ 8

V. SEC CLEARANCE FOR THE CONSENT STATEMENT WILL NOT MOOT MAXWELL SHOE'S RULE 14a-9 CLAIM ........................................................ 10

VI. THAT CERTAIN DOCUMENTS MAY BE SUBJECT TO A PRIVILEGE DOES NOT RELIEVE DEFENDANTS FROM HAVING TO RESPOND TO DOCUMENT REQUESTS .................................................................................... 11

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Ameribanc Investors Group v. Zwart, 706 F. Supp. 1248 (E.D. Va. 1989) .......... 2, 10

Baker v. Buckeye Cellulose Corp., 856 F.2d 167 (11th Cir. 1988) .......... 7

Capital Real Estate Inv. Tax Exempt Fund Ltd. Partner v. Schwartzberg, 917 F. Supp. 1050 (S.D.N.Y. 1996) .......... 8

CNW Corp. v. Japonica Partners, L.P., 874 F.2d 193 (3d Cir. 1989) .......... 4

Data Probe Acquisition Corp v. Data Tab, Inc., 568 F. Supp. 1538 (S.D.N.Y. 1983) .......... 9

Davis v. New York City Hous. Auth., 166 F.3d 432 (2d Cir. 1999) .......... 7

Dowling v. Narragansett Capital Corp., 735 F. Supp. 1105 (D. R.I. 1990) .......... 5

Fazio v. Lehman Brothers, Inc., No. 1:02CV157, 1:02CV370, 1:02CV382, 2002 WL 32121836 (N.D. Ohio May 16, 2002) .......... 3

Florida Comm. Banks v. Culverhouse, 772 F.2d 1513 (11th Cir. 1985) .......... 10

Gen. Aircraft Corp. v. Lampert, 556 F.2d 90 (1st Cir. 1977) .......... 1, 4

Giarraputo v. UnumProvident Corp., No. Civ. 99-301-PC, 2000 WL 1701294 (D. Me. Nov. 8, 2000) .......... 5

In re Cabletron Sys., Inc., 311 F.3d 11 (1st Cir. 2002) .......... 2, 5

In re Gen. Motors Corp. Litig., Civil Action No. 20269-NC (Del. Ch. Oct. 2, 2003) .......... 10

In re Grand Jury Subpoena, 274 F.3d 563 (1st Cir. 2001) .......... 11

In re Tyco Int'l, Ltd. Sec. Litig., No. 00MD1335, 2000 WL 33654141 (D. N.H. July 27, 2000) .......... 3

In re Websecure, Inc., Securities Litigation, Civ. A. No. 97-10662, 1997 WL 770414 (D. Mass. Nov. 26, 1997) .......... 1, 4

Int'l Jenson Inc. v. Emerson Radio Corp., 1997 WL 43229 (N.D. Ill. 1997) .......... 2, 10

J.I. Case Co. v. Borak, 377 U.S. 426 (1964) .......... 2, 12

# TABLE OF AUTHORITIES
[Continued]

Page(s)

Lebhar Friedman, Inc. v. Movielab, Inc., 1987 WL 5793 (S.D.N.Y. Jan. 13, 1987) ..... 4

Lessler v. Little, 857 F.2d 866 (1st Cir. 1988) ..... 5

Lone Star Steakhouse & Saloon, Inc. v. Adams, 148 F. Supp. 2d 1141 (D. Kan. 2001) ..... 4

MAI Basic Four, Inc. v. Prime Computer, Inc., 871 F.2d 212 (1st Cir. 1989) ..... 1, 4

Med. Imaging Ctrs. of Am. v. Lichtenstein, 917 F. Supp. 717 (S.D. Cal. 1996) ..... 1, 3

Medeco Sec. Locks, Inc. v. Swiderek, 680 F.2d 37 (7th Cir. 1981) ..... 7

Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219 (1st Cir. 2003) ..... 6, 7

Save on Surplus Pension Plan v. United Saver's Bancorp, Inc., 760 F. Supp. 971 (D. N.H. 1990) ..... 5

Sims v. Greene, 161 F.2d 87 (3d Cir. 1947) ..... 7

TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438 (1976) ..... 2

Vacold LLC v. Cerami, No. 00 CIV. 4024 (AGS), 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) ..... 3

**Statutes**

15 U.S.C. § 78n(a) ..... passim

15 U.S.C. § 78n(e) ..... 2, 4, 6, 10

15 U.S.C. § 78u ..... 3, 4, 6

17 C.F.R. § 240.14.a-9 ..... 2

Del. Code Ann. tit. 8, § 228 ..... 9

**Rules**

Fed. R. Civ. P. 26 ..... 1, 4, 11

Fed. R. Civ. P. 30 ..... 1, 4

Fed. R. Civ. P. 33 ..... 1, 4, 11

# TABLE OF AUTHORITIES
[Continued]

Page(s)

Fed. R. Civ. P. 34 .................................................................................................... 1, 4

Fed. R. Civ. P. 36 .................................................................................................... 1, 4

Fed. R. Civ. P. 6 ........................................................................................................... 1

Local Rule 34.1(E) ................................................................................................. 11, 12

## PRELIMINARY STATEMENT

Plaintiff Maxwell Shoe Company Inc. ("Maxwell Shoe," or the "Company") respectfully submits this reply memorandum of law in support of its motion, (i) pursuant to Rules 6(d) of the Federal Rules of Civil Procedure for expedited scheduling, and (ii) pursuant to Rules 26(d), 30(a)(2)(C), 33(a), Fed. R. Civ. P. 34(b) and 36(a) of the Federal Rules of Civil Procedure, for expedited discovery in preparation for a hearing on its contemporaneously filed motion for a preliminary injunction against defendants, Jones Apparel Group, Inc. ("Jones"), and MSC Acquisition Corp.

Defendants' opposition papers are most striking for what they omit and elide rather than for what they actually say.

- Defendants fail to mention that the "undue prejudice" standard for lifting the discovery stay under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 (b) (the "PSLRA"), is lower than the standard for showing irreparable harm, as the principal case on which Defendants rely holds. See Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein, 917 F. Supp. 717, 720 (S.D. Cal. 1996) ("This 'undue prejudice' standard is . . . something less than 'irreparable harm.'"). Because the First Circuit holds that loss of control of a company constitutes "irreparable harm,"[1] Maxwell Shoe satisfies the PSLRA requirements for permitting discovery to avoid this risk.

- While relying on a case from a California federal district court, Defendants ignore the leading case from this District: In re Websecure, Inc., Securities Litigation, Civ. A. No. 97-10662, 1997 WL 770414 (D. Mass. Nov. 26, 1997) (O'Toole, J.). Websecure lifted the PSLRA stay because the discovery sought was "an important factor in determining whether, or when, injunctive relief might be appropriate . . . ." Id. at *4.

- Defendants fail to address -- and therefore concede -- that Maxwell Shoe has met the standards for expedited discovery under Fed. R. Civ. P. 26(d), 30(a)(2)(C), 33(a), 34(b) and Fed. R. Civ. P. 36(a).

- Defendants, in touting their unfiled motion to dismiss, focus on "materiality," but fail to note that the Supreme Court holds, "The determination [of materiality] requires delicate assessments of the inferences a "reasonable shareholder" would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." TSC Indus., Inc. v. Northway, Inc., 426 U.S.

---

[1] See MAI Basic Four, Inc. v. Prime Computer, Inc., 871 F.2d 212, 218 (1st Cir. 1989); Gen. Aircraft Corp. v. Lampert, 556 F.2d 90, 96-98 (1st Cir. 1977).

438, 450 (1976); accord In re Cabletron Sys., Inc., 311 F.3d 11, 34 (1st Cir. 2002) ("In general, the materiality of a statement or omission is a question of fact that should normally be left to a jury rather than resolved by the court on a motion to dismiss.") Thus, if Defendants move to dismiss on materiality grounds, the motion should be denied.

- Defendants overlook the fact that, at the preliminary injunction hearing, discovery will supplement the existing record that Defendants acted with the requisite state of mind to trigger violations of Sections 14(a) and (e). Moreover, discovery will supplement the existing record demonstrating the falsity of Defendants' statements and the existence of their omissions. Finally, none of Defendants' nominees to the Company's board of directors ("Defendants' Nominees") are within the subpoena power of the Court; therefore, their depositions are the only way in which their evidence may be obtained for the preliminary injunction hearing.[2]

Moreover, much of what Defendants actually do say is simply wrong.

- Plaintiff's discovery requests are "particularized" to prove the factual allegations of the Complaint and to prove Defendants' culpable states of mind. Defendants complain that the requests are 18 pages long, but fail to mention that half of those pages are instructions, not discovery requests.

- Plaintiff's SEC Rule 14a-9 claims relating to Defendants' proposed consent statement (the "Consent Statement") are ripe for adjudication. Notwithstanding the SEC review process, target companies have a private right of action under Rule 14a-9.[3] Indeed, because SEC rules permit Defendants to solicit consents before the SEC clears the Consent Statement, Defendants could take over the Company immediately upon SEC clearance, rendering injunctive relief moot.

---

[2] An evidentiary hearing is required because of the sharp factual disputes between the parties. See Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 224 (1st Cir. 2003).

[3] See J.I. Case Co. v. Borak, 377 U.S. 426, 432 (1964) ("Private enforcement of the proxy rules provides a necessary supplement to Commission action . . . [T]he possibility of civil damages or injunctive relief serves as a most effective weapon in the enforcement of the proxy requirements."); see also Ameribanc Investors Group v. Zwart, 706 F. Supp. 1248, 1251-54 (E.D. Va. 1989) (target company, being "in the best position to police proxy solicitations and seek prompt corrective disclosure," is well equipped to bring private action under Section 14(a)); Int'l Jenson Inc. v. Emerson Radio Corp., 1997 WL 43229, at *5 (N.D. Ill. 1997) ("Allowing the corporation to pursue the violator under § 14(a) helps to protect the rights of the shareholders, who benefit from the corporation's diligence.").

2

Therefore, this Court should grant Maxwell Shoe the expedited discovery it seeks. See Declaration of Roger A. Lane in Support of Plaintiff's Motions for Expedited Scheduling and Discovery, and for a Preliminary Injunction, executed April 7, 2004 ("Lane Decl."), Ex. 30.[4]

## ARGUMENT

### I.

### PLAINTIFF'S RISK OF IRREPARABLE HARM SATISFIES THE PSLRA TEST FOR ALLOWING DISCOVERY.

Defendants disingenuously claim that Maxwell Shoe does not meet the PSLRA's "undue burden" requirement for allowing discovery before a defendant's motion to dismiss is denied.[5] But Defendants attempt to hide from the Court that the very case on which they principally rely holds that the "'undue prejudice' standard is . . . something less than 'irreparable harm.'" Med. Imaging, 917 F. Supp. at 720. Numerous courts considering this question have applied the same rule.[6]

---

[4] Defendants' arguments that Maxwell Shoe "delayed" in seeking this relief are preposterous. Defendants filed their Consent Statement and Tender Offer Statement on March 23, 2004. (See Declaration of James J. Tinagero in Support of Plaintiff's Motions for a Preliminary Injunction and for Expedited Discovery, executed April 6, 2004, ¶ 13.) After conducting a careful review, with the advice of financial and legal consultants, the Company rejected the offer on March 29. (Id. ¶ 15.) Maxwell Shoe filed the Complaint three days later. Six days after that (and while Maxwell Shoe was preparing expedited briefing in response to two actions seeking expedited proceedings brought by Defendants in Delaware Chancery Court, of which Defendants have dismissed one, and withdrawn three of the four counts in the other, and withdrawn their request for expedited discovery), Maxwell Shoe moved this Court for expedited scheduling and discovery. Maxwell Shoe has not yet needed to seek a TRO, though it reserves the right to do so if the situation changes, and remains very mindful and respectful of the Court's time.

[5] It is worth noting that the stay does not yet apply because Defendants have not filed a motion to dismiss. See 15 U.S.C. § 78u-4(b)(3)(B) (discovery stay applies only "during the pendency of any motion to dismiss") (emphasis supplied). There is no motion to dismiss pending, nor was there any when Maxwell Shoe filed its Motion for Expedited Scheduling and Discovery.

[6] See, e.g., Fazio v. Lehman Brothers, Inc., No. 1:02CV157, 1:02CV370, 1:02CV382, 2002 WL 32121836, at *3 (N.D. Ohio May 16, 2002); Vacold LLC v. Cerami, No. 00 CIV. 4024 (AGS), 2001 WL 167704, at *6-7 (S.D.N.Y. Feb. 16, 2001); In re Tyco Int'l, Ltd. Sec. Litig., No. 00MD1335, 2000 WL 33654141, at *4 (D. N.H. July 27, 2000).

The First Circuit repeatedly has found irreparable harm from losing control of a company through false and misleading statements made in connection with proxy or consent solicitations, and in tender offers. See MAI, 871 F.2d at 218 (affirming preliminary injunction for target company and noting that "to the extent target shareholders may be deprived of material information required to be disclosed under the Williams Act before irrevocably tendering their shares, they will be irreparably harmed"); Gen. Aircraft, 556 F.2d at 97 (affirming preliminary injunction in part because there is "no error in the decision that irreparable injury would occur to shareholders and the investing public if [defendants] were allowed to continue their activities without correcting and amplifying their Schedule 13D"). The same irreparable, loss-of-control harm accrues in the Section 14(a) context, too. See, e.g., CNW Corp. v. Japonica Partners, L.P., 874 F.2d 193, 194, 201 (3d Cir. 1989); Lone Star Steakhouse & Saloon, Inc. v. Adams, 148 F. Supp. 2d 1141, 1150 (D. Kan. 2001); Lebhar Friedman, Inc. v. Movielab, Inc., 1987 WL 5793, at *5 (S.D.N.Y. Jan. 13, 1987).

In this District, discovery of matters that are "important factor[s] in determining whether, or when, injunctive relief might be appropriate" is permitted both under the PSLRA and on an expedited basis. Websecure, 1997 WL 770414, at *4. Defendants' papers do not rebut, distinguish or even mention Judge O'Toole's holding in Websecure. Moreover, Defendants do not contest that Maxwell Shoe has met the standards for expedited discovery under Fed. R. Civ. P. 26(d), 30(a)(2)(C), 33(a), 34(b) and 36(a).

Maxwell Shoe has met the standard for obtaining expedited discovery and lifting the PSLRA discovery stay because (i) it can demonstrate irreparable harm if Defendants are able to take over the Company, and (ii) the discovery sought is an "important factor" in determining whether injunctive relief is warranted. See Websecure, 1997 WL 770414, at *4.

4

## II.

## ANY MOTION TO DISMISS WILL BE WITHOUT MERIT BECAUSE "MATERIALITY" IS A QUESTION OF FACT, NOT OF LAW.

Defendants tout their planned motion to dismiss based on the purported immateriality of their misstatements and omissions, but fail to draw the Court's attention to Supreme Court authority holding that such determinations are "peculiarly ones for the trier of fact." TSC Indus., 426 U.S. at 450. The Court goes on to note, "In an analogous context, the jury's unique competence in applying the "reasonable man" standard is thought ordinarily to preclude summary judgment in negligence cases." Id. at 450 n.12. A "fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." Id. at 459.

The First Circuit has held that "[i]n general, the materiality of a statement or omission is a question of fact that should normally be left to a jury rather than resolved by the Court on a motion to dismiss." In re Cabletron Sys., Inc., 311 F.3d 11, 34 (1st Cir. 2002) (reversing dismissal of complaint on materiality grounds and affirming only as to allegations not pleaded with specificity).[7] Likewise, district courts within the First Circuit routinely deny motions to dismiss directed at the materiality of a misstatement or omission of fact. See, e.g., Giarraputo v. UnumProvident Corp., No. Civ. 99-301-PC, 2000 WL 1701294, at *11-*15 (D. Me. Nov. 8, 2000); Save on Surplus Pension Plan v. United Saver's Bancorp, Inc., 760 F. Supp. 971, 974 (D. N.H. 1990); Dowling v. Narragansett Capital Corp., 735 F. Supp. 1105, 1119-20 (D. R.I. 1990).

---

[7] The present action differs from Lessler v. Little, 857 F.2d 866 (1st Cir. 1988), because there, plaintiff was complaining that defendants did not insert characterizations of their transactions as a "sham" or a "guise." Here, Maxwell Shoe is complaining about affirmative misrepresentations based on Defendants' terminology and omissions of material facts, not omissions of immaterial characterizations.

5

Therefore, Defendants' motion to dismiss, if ever filed, will be meritless and designed simply to delay resolution of this action so that Defendants can seize control of Maxwell Shoe before this Court can act. Expedited discovery should not await its resolution, particularly given the undue prejudice -- indeed, irreparable harm -- that Maxwell Shoe and its stockholders will suffer if Defendants can take over the Company by employing false and misleading statements and omissions.

### III.

### THE DISCOVERY SOUGHT IS "PARTICULARIZED" TO ALLOW PLAINTIFFS TO PROVE THE ALLEGED MISSTATEMENTS AND OMISSIONS AND TO SHOW THE DEFENDANTS' STATE OF MIND.

The discovery Maxwell Shoe seeks is "particularized" under the PSLRA to provide admissible evidence for the preliminary injunction hearing on the Complaint's allegations of misstatements and omissions, and on the Complaint's allegations regarding Defendants' culpable state of mind.[8] None of Defendants' Nominees are within the subpoena power of this Court.[9] Therefore, their depositions are necessary to preserve their testimony for use at the preliminary injunction hearing.

---

[8] Defendants misleadingly claim Maxwell Shoe is seeking 18 pages worth of discovery requests. They neglect to mention that half of those pages are instructions and definitions, not requests.

[9] Based on public database records, Plaintiff believes that Robert Martin lives in Georgia; Allan Corn and Jeffrey Haas live in New York; Michael Koeneke lives in New York or New Jersey; and Harold Leppo lives in Stamford, Connecticut.

Because the parties will sharply dispute the facts -- including those relating to "falsity," "materiality," and "scienter" (for the Section 14(e) claims) -- and because the Court will have to make credibility determinations, an evidentiary hearing with live witnesses is necessary. See Rosario-Urdaz, 350 F.3d at 224.[10] In that case, the First Circuit vacated the denial of a preliminary injunction as an abuse of discretion where there was no evidentiary hearing and there were "fact-intensive questions and the record is, for all practical purposes, bare as a new-born baby." Id.

Specifically, the discovery requests (see Lane Decl. Ex. 30) can be allocated among the following particularized categories:

A. <u>Discovery of the Business Relationships between Jones and the Defendants' Nominees</u>

   Interrogatories Nos. 3, 5, 6,
   Requests to Admit Nos. 4, 5, 6, 8, 9, 10, 11, 12

B. <u>Discovery of the Defendants' Nominees' Histories of Running Failed Businesses</u>

   Interrogatories Nos. 3, 5
   Requests to Admit Nos. 2, 3, 7,

C. <u>Discovery Relating to the Unique Value of the AK Anne Klein License</u>

   Requests for Production Nos. 3, 4

---

[10] Accord 11A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (2d ed. 1995) ("[I]f there is a factual controversy, oral testimony is preferable to affidavits because of the opportunity it provides to observe the demeanor of the witnesses."); 13 James Wm. Moore et al., Moore's Federal Practice § 65.21 (3d ed. 2004) ("Since a preliminary injunction hearing requires an adequate presentation of the facts, the courts should be reluctant to decide disputed factual issues without a hearing on the basis of affidavits alone."); see also Davis v. New York City Hous. Auth., 166 F.3d 432, 437-38 (2d Cir. 1999) ("while affidavits may be considered on a preliminary injunction motion, motions for preliminary injunction should not be resolved on the basis of affidavits that evince disputed issues of fact"); Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 170 (11th Cir. 1988) (reversing district court's denial of plaintiff's motion for preliminary injunction where it did not hold evidentiary hearing); Swiderek v. Medeco Sec. Locks, Inc., 680 F.2d 37, 38 (7th Cir. 1981) (where "affidavits [are] conflicting: '[s]uch conflicts must be resolved by oral testimony since only by hearing the witnesses and observing their demeanor on the stand can the trier of fact determine the veracity of the allegations made by the respective parties'") (quoting Sims v. Greene, 161 F.2d 87, 88 (3d Cir. 1947)).

D. <u>Discovery Relating to Defendants' Disparagement of Maxwell Shoe's Board</u>

Interrogatories No. 8
Requests for Production No. 10

E. <u>Discovery Showing Defendants' Culpable States of Mind</u>

Interrogatories Nos. 3, 8
Requests for Production Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10

F. <u>Discovery Showing Harm to Maxwell Shoe</u>

Interrogatories Nos. 9, 10
Request for Production No. 11

G. <u>Discovery to Identify Persons with Knowledge Relevant for the Preliminary Injunction Hearing</u>

Interrogatories Nos. 1, 2, 4, 9, 10
Request for Production Nos. 8, 11

H. <u>Discovery to Make Documents Admissible at the Preliminary Injunction Hearing</u>

Request to Admit No. 1

Therefore the discovery Maxwell Shoe is seeking is particularized to adduce admissible evidence for the preliminary injunction hearing.

## IV.

### PLAINTIFF'S CLAIMS REGARDING DEFENDANTS' CONSENT SOLICITATION ARE RIPE FOR CONSIDERATION.

Defendants speciously contend -- without citation to any authority -- that Maxwell Shoe's Section 14(a) claims regarding the Defendants' consent solicitation (the "Consent Solicitation") are "baseless" because Defendants have not commenced the Consent Solicitation. This contention is wrong as a matter of law. It is well settled that a 'solicitation" under Section 14(a) comprehends not only direct requests to furnish, revoke or withhold proxies, but also "communications which may indirectly accomplish such a result or constitute a step in the chain of communications ultimately designed to accomplish such a result." <u>Capital Real Estate Inv. Tax Exempt Fund Ltd. Partner v. Schwartzberg</u>, 917 F. Supp. 1050, 1059 (S.D.N.Y. 1996) (holding that press releases criticizing

8

proposed merger, as part of broader campaign to supplant management, were "proxy solicitations" under Section 14(a)); see also SEC Rule 14a-1(1)(1)(iii); 17 C.F.R. § 240.14.a-1(1)(1)(iii)) (2003) (solicitation includes any "communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy").

Here, Defendants are already engaged in the Consent Solicitation, even though the SEC has not cleared the Consent Statement. For example, Defendants have filed with the SEC at least four press releases touting the Consent Solicitation pursuant to SEC Rule 14a-12. Each one contains the following phrase: "Jones, MSC and, in each case, certain of its officers, directors and nominees for the directorships of Maxwell, among others, may be deemed to be participants in the solicitation of Maxwell's stockholders." If a consent solicitation were not in progress, Defendants would not be filing under Rule 14a-12. The Consent Statement and the press releases filed under Rule 14a-12 are all widely disseminated and publicly available through Jones's website and the SEC's website.

Defendants thus have publicized — and continue to publicize — materially false and misleading statements in support of the Consent Solicitation, such that stockholders will be induced to reach their decisions based on such misinformation prior to receiving a definitive Consent Statement and immediately submit their tainted consents on receipt. Defendants should not be allowed to skirt Section 14(a)'s disclosure requirements by flooding stockholders with false and misleading statements in support of its proposals while waiting for SEC clearance. See Data Probe Acquisition Corp. v. Datatab, Inc., 568 F. Supp. 1538, 1556 n.7 (S.D.N.Y. 1983) (letter that does not request proxy authorization remains subject to Section 14(a) if it is part of continuous plan intended to end in solicitation and to prepare way for success), rev'd on other grounds, 722 F.2d 1 (2d Cir. 1983).

Defendants say they now plan to obtain written consents as soon as the SEC clears the Consent Statement. (See Lane Decl. Ex. 27, ¶ 5.) Under Delaware law, written consents become

9

effective immediately. See Del. Code Ann. tit. 8, § 228. Thus, Defendants could replace Maxwell Shoe's Board -- assuming it obtains the consents of a majority of the Company's shares -- as soon as it receives those consents.

Indeed, waiting until after the issuance of a definitive consent statement to move for an injunction or expedited discovery is too late because the requested shareholder action could occur any day and moot the efficacy of injunctive relief. See, e.g., In re Gen. Motors Corp. Litig., Civil Action No. 20269-NC (Del. Ch. Oct. 2, 2003) (denying motion for expedited discovery because plaintiff moved only after issuance of definitive consent statement).[11] Therefore, Maxwell Shoe's Rule 14a-9 claims are ripe for adjudication.

V.

### SEC CLEARANCE FOR THE CONSENT STATEMENT WILL NOT MOOT MAXWELL SHOE'S RULE 14a-9 CLAIM.

Defendants may not stave off a judicial mandate of corrective disclosure by invoking the SEC's review process. SEC clearance does not constitute a substantive determination that a consent statement or tender offer is free of false or misleading statements. Indeed, Defendants' position -- that SEC clearance renders judicial action unnecessary -- would obviate the well established private rights of actions under Sections 14(a) and (e). This suggestion, for which Defendants offer no legal support, has no merit. Such a result would run counter to unambiguous authority holding that a target corporation is particularly well equipped to seek remedies under Section 14.[12] Moreover,

---

[11] A copy of General Motors is attached for the Court's convenience as Lane Decl. Ex. 33.

[12] See, e.g., J.I. Case Co. v. Borak, 377 U.S. 426, 432 (1964) ("Private enforcement of the proxy rules provides a necessary supplement to Commission action . . . [T]he possibility of civil damages or injunctive relief serves as a most effective weapon in the enforcement of the proxy requirements."); Florida Comm. Banks v. Culverhouse, 772 F.2d 1513, 1518-19 (11th Cir. 1985) (issuer has private right of action to seek remedy of corrective disclosures for Section 14(e) claims, and noting that the SEC "cannot police every tender offer or major

10

SEC review is based only on materials available to the SEC. Here, the false and misleading nature of many of Defendants' statements will be demonstrated by material beyond the scope of the SEC's review, such as Defendants' internal documents and deposition testimony from their officers and nominees to the Company's Board.

In short, now is the time for this Court to ensure that Defendants correct the myriad misrepresentations and omissions of material fact that pervade its statements in support of their Consent Solicitation and tender offer (the "Tender Offer"). Just as political campaigns do not begin on election day, for nearly three weeks Defendants have inundated stockholders with false and misleading statements in an effort to win approval for their proposals even before the "ballots" have been distributed. Sections 14(a) and (e) empower this Court to require Defendants to candidly and clearly correct their prior misstatements and omissions, and to allow sufficient time for Maxwell Shoe shareholders to consider the complete and honest disclosure before taking action.

## VI.

### THAT CERTAIN DOCUMENTS MAY BE SUBJECT TO A PRIVILEGE DOES NOT RELIEVE DEFENDANTS FROM HAVING TO RESPOND TO DOCUMENT REQUESTS.

Defendants may not avoid discovery by making a blanket assertion that some of the documents requested by Maxwell Shoe may be subject to some privilege or another. Defendants cite no case where a court has denied expedited discovery because some portion of the documents sought were privileged. Here, as with any discovery request, Defendants must produce responsive, non-privileged documents and provide the information required by Fed. R. Civ. P. 26(b)(5) to "enable [Plaintiff] to assess the applicability of the privilege or protection." Id. Specifically,

---

acquisition subject to the Williams Act."); Ameribanc Investors Group, 706 F. Supp. at 1251-54 (target company, being "in the best position to police proxy solicitations and seek prompt corrective disclosure," is well equipped to bring private action under Section 14(a)); Int'l Jenson Inc., 1997 WL 43229, at *5 ("Allowing the corporation to pursue the violator under § 14(a) helps to protect the rights of the shareholders, who benefit from the corporation's diligence.").

11

Defendants will have to provide a privilege log containing the information required by D. Mass. L.R. 34.1(E). Failure to provide that information results in waiver of the privilege. See, e.g., In re Grand Jury Subpoena, 274 F.3d 563, 576 (1st Cir. 2001). Moreover, the volume of privileged documents is likely to be small, as nearly all of the considerations regarding the Consent Solicitation and Tender Offer are business, not legal; and because Defendants have publicly announced their proposals, few of the documents are likely to implicate the business-strategy privilege. Therefore, Defendants may not avoid discovery simply by asserting, without complying with Local Rule 34.1(E), that some of the documents Maxwell Shoe seeks are privileged.

## CONCLUSION

For the foregoing reasons, Maxwell Shoe respectfully requests that the Court grant its motion for expedited scheduling and discovery prior to a hearing on its motion for a preliminary injunction, and grant Maxwell Shoe such other and further relief as this Court deems just and proper.

Dated: Boston, Massachusetts

    April 12, 2004

Respectfully submitted,

Maxwell Shoe Company Inc.
By Its Attorneys

*/s/ Roger A. Lane*

Jordan D. Hershman (BBO # 553709)
Roger A. Lane (BBO #551368)
Kenneth I. Weissman (BBO #653834)
TESTA, HURWITZ & THIBEAULT, LLP
125 High Street
Boston, Massachusetts 02110
Telephone (617) 248-7000
Facsimile (617) 248-7100

Of counsel:

Adam H. Offenhartz
Jennifer H. Rearden
Robert E. Malchman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, N.Y. 10166-0193
Telephone (212) 351-4000
Facsimile (212) 351-4035

## CERTIFICATE OF SERVICE PURSUANT TO L.R. 5.2(b)(2)

I hereby certify that on April 12, 2004, a true copy of the above document was served by hand upon counsel of record for each Defendant.

                                                    _____
                                                    Roger A. Lane

3052303_1