UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ) | | |
| ) | | |
| ) | | |
| MAXWELL SHOE COMPANY, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JONES APPAREL GROUP, INC., AND | ) | Case No. 04 CV 10635 - RGS |
| MSC ACQUISITION CORP., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

On March 23, 2004, the defendants Jones Apparel Group, Inc. and MSC Acquisition Corp. (collectively "Jones Apparel") initiated a cash tender offer ("Tender Offer") for all of the outstanding stock of Maxwell Shoe Company, Inc. ("Maxwell"). On April 1, 2004, Maxwell filed this action seeking to prevent its shareholders from considering Jones Apparel's Tender Offer. The Complaint alleges that Jones Apparel omitted material information or otherwise misrepresented facts in its Tender Offer Statement and Preliminary Consent Solicitation Statement.[1] Although the allegations are voluminous, they are utterly without substance. The sum of Maxwell's complaint reduces to three allegations of inadequate disclosure:

---

[1] The Tender Offer Statement is attached as Exhibit 2 and the Preliminary Consent Solicitation Statement is attached as Exhibit 3 to the Declaration of Roger A. Lane.

*First*, Maxwell claims that Jones Apparel failed to characterize its $20 Tender Offer in derogatory terms. The plaintiff asserts that Jones Apparel's use of the modifier "attractive" in describing the offer's premium to Maxwell's historical trading price is misleading because Maxwell would characterize it differently. Self-evidently, and as voluminous case law confirms, a bidder is under no legal compulsion to describe its own offer using the target's adjectives.

*Second*, Maxwell avers that Jones Apparel did not disclose its "secret, ulterior motive" for acquiring Maxwell—namely to secure for itself the "lucrative" benefits of Maxwell's license *from* Jones Apparel on Anne Klein footwear. However, the Offer to Purchase does disclose the existence of the license, its terms, the fact that the license would be acquired as part of the transaction, and the specific revenue that the license now affords to Maxwell. The license agreement itself is even an exhibit to Jones Apparel's Schedule TO.

*Third*, Maxwell asserts that Jones Apparel has not sufficiently disclosed the roles of its proposed board nominees at other companies or their purported ties to Jones Apparel. Plaintiffs' allegations are meritless. The "disclosure" that Maxwell complains about is a Preliminary Consent Solicitation Statement relating to a possible future consent solicitation that has not yet been commenced. As Maxwell knows, the Preliminary Consent Solicitation Statement is still awaiting clearance from the SEC, has not been sent to stockholders, and is subject to further revision.[2] Because no consents have yet been solicited pursuant to those materials, it is impossible, as a matter of law, for any stockholder to have been misled by their contents. Plaintiffs' allegations are not only defective, but premature.

These meager allegations have no substance. And because they have no substance—and thus will be the subject of a motion to dismiss by Jones Apparel—they do not justify discovery, much less expedited discovery.

Indeed, discovery in this matter is precluded as a matter of law by the Private Securities Litigation Reform Act ("PSLRA"), Section 21D of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4, during the pendency of any motion by

---

[2] Jones Apparel has received comments from the SEC concerning its Preliminary Consent Solicitation Statement and will, in due course, file an Amended Preliminary Consent Solicitation Statement. The consent solicitation will not be commenced—and consent solicitation materials will not be sent to stockholders—until Jones Apparel receives clearance from the SEC.

Jones Apparel to dismiss Maxwell's complaint. Pursuant to the PSLRA, discovery and all other proceedings in this case are *automatically* stayed, *as a matter of law*, from the moment that a defendant signals an intention to seek dismissal on the pleadings—as Jones Apparel has now done—until that motion to dismiss has been fully briefed and decided by the Court. Notably, Maxwell's brief fails to mention, or address, the operation of the automatic stay under the PSLRA in this context.

Moreover—although the operation of the PSLRA alone mandates denial of plaintiff's motion for expedited discovery—discovery of any kind is not warranted here as a factual matter. Plaintiff's allegations of inadequate or wrongful disclosure simply will not be established by the discovery sought. If the allegedly "misleading" or "omitted" information truly is important to a stockholder deciding whether to tender or not, that information will not be established by inquiry into the materials that Maxwell seeks. Indeed, what Maxwell is *really* seeking is information about Jones Apparel's plans, motivations, and strategies in the takeover effort. But Jones Apparel is entitled to withhold that information under the "strategic" privilege doctrine.

Finally, even if expedited discovery were permitted to proceed, the documents the plaintiff claims to seek are hardly "limited," and tailored to the injunction requested. To the contrary, Maxwell seeks responses to eighteen pages of written requests (including interrogatories, requests for admission, and document requests) within four days, as well as the depositions of six persons by April 23, 2004. The requested discovery is hardly particularized, is extremely burdensome, and thus further contravenes the standards imposed by the PLSRA.

For all those reasons, and as set forth below, plaintiff's motion should be denied.

## BACKGROUND FACTS

### The Parties

The plaintiff Maxwell is a Delaware corporation with its principal place of business in Massachusetts. Maxwell is in the business of designing, developing, and marketing casual and dress footwear for women and children. Maxwell's stock trades on the NASDAQ National Market.

The defendant Jones Apparel Group, Inc. is a Pennsylvania corporation with its principal place of business in Bristol, Pennsylvania. For thirty years, Jones Apparel has been a leading designer and marketer of branded apparel, footwear, and accessories. Jones Apparel's nationally recognized brands include Jones New York, Evan-Picone, Norton McNaugton, Gloria Vanderbilt, Erika, l.e.i., Energie, Nine West, Easy Spirit, Enzo Angiolini, Bandolino, Napier, Judith Jack, Kasper, Anne Klein, Albert Nipon, and LeSuit. Jones Apparel Group's stock trades on the New York Stock Exchange.

MSC Acquisition Corp. is an indirect wholly-owned subsidiary of Jones Apparel Group, Inc. organized under the laws of the State of New York in order to make the Offer, the proposed merger with Maxwell, and any possible future consent solicitation.

### The Tender Offer

On February 25, 2004, Jones Apparel announced that it had delivered a proposal to Maxwell to acquire all of the outstanding shares of Maxwell at a price of $20.00 per share in cash. On March, 12, Maxwell issued a press release indicating that its board of directors had rejected Jones Apparel's proposal and refused to meet with Jones Apparel to discuss the proposal.

On March 23, 2004, Jones Apparel initiated a cash tender offer for all of the outstanding Class A Common Stock of Maxwell at a price of $20.00 ("Tender Offer"). The Tender Offer currently expires on April 19, 2004. The full terms of the Tender Offer are found in the Tender Offer Statement filed with the United States Securities and Exchange Commission ("SEC") and attached as Exhibit 2 to the affidavit of Richard A. Lane.

On March 23, 2004, Jones Apparel filed a preliminary consent solicitation statement with the SEC ("Preliminary Consent Solicitation Statement"). The Preliminary Consent Solicitation Statement filed is attached as Exhibit 3 to the affidavit of Richard A. Lane. The Preliminary Consent Solicitation Statement indicates that Jones Apparel is considering proposing the removal of the members of Maxwell's board of directors elected at Maxwell's annual stockholders' meeting on April 8, 2004. Jones Apparel has not yet made such a proposal, however, or commenced any such solicitation. That will not happen, if at all, until after Maxwell's new directors are elected on April 8 and after Jones Apparel receives the SEC's clearance to distribute the consent solicitation materials to Maxwell's shareholders. To date, Jones Apparel has not received clearance from the SEC to disseminate the consent solicitation materials to stockholders, and it has not done so.

### The Lawsuit

On April 1, Maxwell initiated this litigation. Plaintiff's action is brought pursuant to Sections 14(a)[3] and 14(e)[4] of the Exchange Act and SEC Rule 14a-9. Plaintiffs allege

---

[3] Section 14(a) and Rule 14a-9 make it unlawful for a corporation to issue a proxy statement "containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . .."

that the Tender Offer Statement and the Preliminary Consent Solicitation Statement contain misrepresentations and omissions by Jones Apparel, in connection with Jones Apparel's Tender Offer and consent solicitation—despite the fact that no consent solicitation has yet been commenced by Jones Apparel.

Maxwell's complaint—weak as it is—turns on legal issues. Accordingly, Jones Apparel is preparing a motion to dismiss, and will ask this Court to dismiss this complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Even putting the operation of the PSLRA automatic stay to one side, in light of the fact that plaintiff's complaint fails to plead a cognizable claim, there is no need to open the gates to discovery either now or later, as the allegations, even if proven, would not justify the requested relief.

On the afternoon of April 7, 2004, Maxwell delivered to counsel for Jones Apparel this motion for expedited discovery, along with its motion for preliminary injunction and accompanying briefs, affidavits, and exhibits. Maxwell's papers are silent as to why it waited until April 7 to make its request for expedited discovery—some of which it seeks responses within four days—even though Jones Apparel initiated the Tender Offer over two weeks ago on March 23, 2004. Although plaintiff has fully briefed its motion for preliminary injunction, it asserts that it needs "limited" expedited

---

The Supreme Court has held that "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

[4] Section 14(e) provides: "It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation."

-6-

discovery to "further develop the record" regarding the above allegations. Simply put, such discovery is not permitted at this time by the PSLRA. Even if it were, no amount of discovery will convert immaterial allegations into material facts.

**I.     DISCOVERY IN THIS LITIGATION IS AUTOMATICALLY STAYED PURSUANT TO THE PRIVATE SECURITIES LITIGATION REFORM ACT.**

Section 21D(b)(3)(B) of the Exchange Act provides: "In *any* private action arising under this chapter, *all* discovery and other proceedings *shall be stayed* during the pendency of any motion to dismiss, unless the Court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party" (emphasis added). Jones Apparel intends promptly to file a motion to dismiss Maxwell's complaint. Accordingly, discovery is automatically stayed as a matter of law until the court has determined the legal sufficiency of plaintiff's pleading. *See Cape Ann Investors LLC* v. *Lepone*, 296 F. Supp. 2d 4, 10-11 (D. Mass. 2003) (*quoting Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 293 F.3d 1334, 1340-41 (11th Cir. 2002) (The PSLRA "provided for a mandatory stay of discovery to allow district courts, prior to discovery, to determine the legal sufficiency of claims brought in securities class actions"); *In re Carnegie Int'l Corp. Sec. Litigation.*, 107 F.Supp.2d 676, 681 (D. Md. 2000) (upholding discovery stay prior to actual filing of motion to dismiss: "Until the opportunity to test the sufficiency of the complaint has passed, the congressional intent is clear—no discovery should commence."); *In re CFS-Related Securities Fraud Litigation*, 213 F.R.D. (N.D. Okla. 2003); *In re Digital Island Securities Litigation*, 357 F. 3d 322, 328-29 (3d Cir. 2004) (PSLRA applies to actions under Section 14(e)).

Given the paucity of its allegations, Maxwell undoubtedly has foreseen such a motion, yet, its papers are inexplicably silent about the automatic discovery stay. Because Maxwell has utterly failed to address the PSLRA and has not moved this Court to relieve it from the PSLRA's automatic stay, the Court should deny Maxwell's motion for expedited discovery, and confirm that all discovery is stayed, until after Jones Apparel's motion to dismiss has been fully briefed and decided.[5]

## II.     MAXWELL HAS NOT MET, AND CANNOT MEET, ITS HEAVY BURDEN IN SEEKING ANY LIFTING OF THE PSLRA'S AUTOMATIC STAY

In order to lift the automatic stay, Maxwell must meet the heavy burden of establishing that certain narrow, "particularized discovery" is "necessary" to preserve evidence, or prevent "undue prejudice" to Maxwell. Given that Maxwell has not even addressed the operation of the PSLRA here, it has, *a fortiori*, not addressed whether its present situation could fall within those narrow exceptions to the mandatory stay imposed by the statute. It cannot. Maxwell's motions for expedited discovery and preliminary injunction demonstrate that Maxwell could not conceivably meet the heavy burden need to even partially lift the automatic stay. There are no allegations that discovery is necessary to preserve evidence—for that is not the case—and although Maxwell claims

---

[5] Maxwell's claims are susceptible to further challenge from the PSLRA, which, along with Rule 9(b) of the Federal Rules of Civil Procedure, requires heightened specificity in pleadings alleging securities fraud pursuant to the provisions of the Securities Exchange Act. *See* 15 U.S.C. § 78u-4(b)(1) (1997); Fed. R. Civ. P. 9(b). Pursuant to the PSLRA and Rule 9(b), plaintiffs asserting claims for securities fraud must specify the time, place and content of all allegedly false representations. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999) ("Our previous strict pleading requirements under Rule 9(b) are . . . consistent with the PSLRA."). In addition, plaintiffs must plead facts regarding Jones Apparel's state of mind with particularity, and these facts must give rise to a strong inference of a knowing or reckless misstatement. *See In re Digital Island Securities Litigation*, 357 F. 3d 322, 328-29 (3d Cir. 2004). Maxwell's complaint falls far short of this heightened standard.

that it needs discovery on an expedited schedule, its purported justifications cannot, as a matter of law, constitute "undue prejudice" under the statute.

A.    *Maxwell Is Not "Unduly Prejudiced" By The Automatic Stay Merely Because It Delays Discovery That Might Be Useful To Its Motion For A Preliminary Injunction.*

The fact that Maxwell will be delayed in obtaining information it believes will prove useful to its case is of no consequence. "Prejudice caused by the delay inherent in the PSLRA's discovery stay cannot be 'undue' prejudice because it is prejudice which is neither improper nor unfair. Rather, it is prejudice which has been mandated by Congress after a balancing of the various policy interests at stake in securities litigation, including a plaintiff's need to collect and preserve evidence." *In re CFS-Related Securities Fraud Litigation v. Bartmann,* 179 F. Supp. 2d 1260, 1265 (N.D. Ill. 2001); *In re Lernout & Hauspie Securities Litigation,* 214 F.Supp.2d 100, 107 (D. Mass. 2002) (Saris, J.) ("Undue prejudice requires a showing of improper or unfair detriment") (internal citation omitted). Indeed, it does not matter that Maxwell's request for accelerated discovery arises in the context of a motion for a preliminary injunction, as Section 21D(b)(3)(B) also stays all "other proceedings" until the Court has tested the sufficiency of its pleadings. 15 U.S.C. 78u-4(b)(3)(B).

In short, the purported exigency of the tender offer does not justify lifting the discovery ban. In a similar context, the United States District Court for the Southern District of California upheld a magistrate's finding that a target company was not entitled to expedited discovery of a potential acquirer. In *Medical Imaging Centers of America v. Lichtenstein,* the target company argued that without a lift of the stay there would be no opportunity for it to take discovery in support of its motion for preliminary injunction:

> Finally, Appellant has repeatedly noted the short time frame surrounding this contest for corporate control, and has argued that it will be unduly prejudiced because it will be unable to complete discovery prior to the February 26th vote. While there is certainly time pressure, this is true in a majority of cases involving contests for corporate control, and thus does not constitute an "undue" burden which is unique. The Court can expedite discovery if it appears appropriate. In addition, the Court notes that Appellant would also be able to seek post-election remedies which, although potentially cumbersome and not as effective as pre-election remedies, would ferret out violations of the securities laws on the part of the Appellees.

917 F. Supp. 717, 722 (S.D. Cal. Feb. 14, 1996). Maxwell cannot escape Congress'

mandate that district courts "determine the legal sufficiency of claims" that fall under the

PSLRA "prior to discovery." *Cape Ann Investors LLC v. Lepone*, 296 F. Supp. 2d 4, 10

(D. Mass. 2003) (quoting *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.3d

1334, 1340-41 (11th Cir. 2002)).

B.    ***Maxwell Is Not "Unduly Prejudiced" By The Automatic Stay, As This Dispute Turns On Legal, Not Fact Issues***

Maxwell argues that it should be allowed expedited discovery to "obtain

additional documentary and testimonial evidence to provide the Court an even fuller

factual record" for its motion for a preliminary injunction. Maxwell does not claim that it

would be prejudiced by not having such discovery, only that it is "entitled" to such

discovery under the Federal Rules of Civil Procedure and that such discovery would

provide the Court with a "fuller" record to evaluate Maxwell's preliminary injunction

motion. (Memo at 8-10.) But that is not the standard under the PSLRA, which requires

a showing that particularized discovery is "necessary" and that without such discovery

plaintiff will be "unduly prejudiced." The information is clearly not *necessary* because

Maxwell was able to file its preliminary injunction motion, including its thirty one

exhibits, without resort to discovery. Moreover, a cursory review of the requests shows that nothing the plaintiff seeks in discovery will assist it in advancing its claims. Plaintiff's requested discovery will not make material, allegations that are on their face immaterial.

        1.       Nothing In Maxwell's Proposed Discovery Will Reveal Whether Jones Apparel's Offer Is "Attractive."

Maxwell asserts that Jones Apparel's use of the modifier "attractive" in describing the offer's premium to Maxwell's historical trading price is misleading because Maxwell would characterize it differently. But all of the required information regarding the terms of the Tender Offer is disclosed for the shareholders to reach their own conclusions. Item 1004(a)(1) of Regulation M-A outlines the "material terms" of a tender offer. Item 1004(a)(1) lists twelve items, including the number of shares sought, the type and amount of consideration, the scheduled expiration date, whether a subsequent offering period will be offered, the procedure for tendering and withdrawing securities. The price is material. The form of payment is material. Jones Apparel's mere characterization of the price as "attractive" is not material. *See Golub v. PPD Corp.*, 576 F.2d 759, 765 (8th Cir. 1978) ("[Plaintiffs'] complaint is that those who prepared the statement did not 'disclose' what the plaintiffs say was the true motivation of Old PPD's management in selling the assets of the company, and did not characterize the bonus aspect of the transaction as plaintiffs would have it characterized. Under the Act and regulations plaintiffs were not entitled to have such a 'disclosure' or such a characterization.").[6]

---

[6] Nor, as a matter of law, is Jones Apparel required to disclose in its Tender Offer the price of Maxwell's stock on whatever dates that Maxwell deems significant. Although the Tender Offer provides the price of Maxwell's stock as of a number of dates, including the last

Nothing in the requested discovery will reveal anything about whether Jones

Apparel's offer is "attractive" or "lowball." That is for shareholders to decide

themselves. Indeed,

> corporations are not required to address their stockholders
> as if they were children in kindergarten. In short, federal
> law is satisfied as long as the [disclosure] materials fully
> and fairly set forth the relevant and material facts from
> which a reasonable shareholder may draw his own
> conclusions . . . .

*New England Anti-Vivisection Society, Inc. v. United States Surgical Corporation, Inc.*,

889 F.2d 1198, 1202 (1st Cir. 1989) (internal citations omitted).

>   2.    Maxwell's Allegations Concerning The Preliminary
>         Consent Solicitation Statement Are Baseless As A Matter
>         Of Law.

As noted earlier, Maxwell's allegations concerning Jones Apparel's *Preliminary*

Consent Solicitation Statement are baseless as a matter of law. Although Jones Apparel's

Preliminary Consent Solicitation Statement has been filed with the SEC, in order to

commence the standard review and comment process with the SEC, no clearance has yet

been obtained from the SEC to send it to Maxwell stockholders, and Jones Apparel has

not done so. Maxwell's complaint is itself deliberately misleading on this point—the

"Consent Solicitation" to which plaintiff refers has not yet commenced, as Maxwell itself

well knows. No consents have yet been solicited, or obtained, from any Maxwell

stockholders—nor could they be. Thus, as a matter of law, no-one has been misled, nor

could anyone be misled, by the mere filing of a Preliminary Consent Solicitation

---

sale price before the offer (see pg. 13 of Schedule TO), there is no requirement in
Regulation M-A for it to do so. *See Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180,
1187-88 (S.D.N.Y. 1996) ("The absence of a regulation requiring disclosure, in the face of the
detailed requirements of what information about selling shareholders must be disclosed, is some
evidence that the information the plaintiff seeks to require is not in fact material.").

Statement. Maxwell's allegations are little more than a smoke-screen, designed to waste the Court's time and improperly delay and hinder any possible future consent solicitation by Jones Apparel. Maxwell's attempt to involve the Court in that kind of a tactic is highly inappropriate.

To the extent that Maxwell believes that additional disclosure is required, the proper redress would be to make a request to the SEC for an amendment to Jones Apparel's Preliminary Consent Solicitation Statement, not through the filing of an action for securities fraud. Maxwell's real motivation here is to impugn the nominees by associating them with enterprises that failed and by challenging their bias through a tortured game of six degrees of separation, by which they seek to relate each nominee to Jones Apparel. Maxwell should not be permitted to achieve that goal through what is nothing more than a frivolous securities fraud claim.

      3.     Jones Apparel's Motive For Acquiring Maxwell Is Obvious
            And Irrelevant.

Maxwell's attempts to discover why Jones Apparel seeks to purchase Maxwell, or what it is willing to pay, or when it decided to do so, will not reveal a "secret ulterior motive" other than the one plain from the face of the offer: Jones Apparel seeks to acquire the value inherent in Maxwell's sales and profits, a value available to anyone who owns Maxwell. Maxwell avers that Jones Apparel has a concealed motive to secure for itself the "lucrative" benefits of Maxwell's license *from* Jones Apparel on Anne Klein footwear. But in fact, the Tender Offer discloses the existence of the license, its terms, Jones Apparel's interest in acquiring all assets of the company, and the specific revenue that the license now affords to Maxwell. That license is even an exhibit to Jones Apparel's Schedule TO. Having disclosed the material facts about the transaction,

namely its intent to acquire the entire company Maxwell and, thereby, acquire the "lucrative" benefits of *all* of Maxwell's assets—including the Anne Klein License—Jones Apparel's motive for doing so is utterly irrelevant:

> (I)t is bemusing, and ultimately pointless, to charge that directors perpetrated a "material omission" when they failed to (a) discover and adjudged faithless motives for their actions and (b) announce such a discovery in reporting the products of their managerial efforts and judgment. The securities laws, while their central insistence is upon disclosure, were never intended to attempt any such measures of psychoanalysis or reported self-analysis. The unclean heart of a director is not actionable, whether or not it is "disclosed," unless the impurities are translated into actionable deeds or omissions both objective and external.

*Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir. 1978) (internal quotations and citations omitted); *see also Mendell v. Greenberg*, 927 F.2d 667, 674 (2d Cir. 1990), *modified on other grounds* 938 F.2d 1528 (1991) ("A proxy statement need not disclose the underlying motivations of a director or major shareholder so long as all the objective material facts relating to the transaction are disclosed."); *Golub v. PPD Corp.*, 576 F.2d 759, 765 (8th Cir. 1978). In deciding whether to accept the cash offer, Maxwell's shareholders will pay scant attention to Jones Apparel's secret ulterior motive: if the price is right, they will sell; if not, then they will hold.

C.    *The Automatic Discovery Stay Bars Maxwell From Fishing For Facts By Which It Might Assert Additional Claims.*

The material facts regarding this third-party tender offer are already disclosed in the Tender Offer and public filings. This is aptly proved by Maxwell's voluminous preliminary injunction package and its 31 exhibits, which it was able to file despite having taken no discovery. Maxwell does not need additional fact discovery. To the contrary, if Maxwell is to get discovery into such matters the inference is obvious that

-14-

they are not trying to *prove* claims but to *find* them. *In re Lernout & Hauspie Securities Litigation*, 214 F.Supp.2d 100, 107 (D. Mass. 2002) (Saris, J.) ("[A] plaintiff's inability to muster facts sufficient to survive a motion to dismiss is not grounds for lifting the stay.") (internal citation omitted).

Maxwell cannot lift the discovery stay to search for additional claims to bolster its complaint: "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed. *Medhekar v. United States District Court,* 99 F.3d 325, 328 (9th Cir. 1996) (reversing district court's lifting of discovery stay); *In re Lernout & Hauspie Securities Litigation*, 214 F.Supp.2d 100, 106 (D. Mass. 2002) (Saris, J.) (invoking Congress' intent to deter "fishing expeditions" by mandating an automatic stay of discovery under the PSLRA) (quoting S.Rep. No. 104-98, at 14 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 693); *Cape Ann Investors LLC v. Lepone*, 296 F. Supp. 2d 4, 10 (D. Mass. 2003) (quoting *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 293 F.3d 1334, 1340-41 (11th Cir. 2002) ("These reforms [in the PSLRA] were designed to enable securities defendants to obtain early dismissal of frivolous class actions, and thereby avoid the high expense of discovery."). In short, there is nothing in the plaintiff's preliminary injunction brief that indicates discovery is necessary.

D.  ***To The Extent Maxwell Seeks Information That Is Privileged, And Therefore Non-Discoverable, It Is Not "Unduly Prejudiced" By The Automatic Stay.***

The actual goal of Maxwell's discovery request is to determine Jones Apparel's plans, motivations, pricing limits, and strategies in the takeover effort, information that

-15-

Jones is entitled to withhold under the "strategic" privilege doctrine. Maxwell's motive in seeking discovery is apparent from its requests, which include

- All documents related to the Tender Offer or Consent Solicitation (Request for Production ("RFP") No. 1);

- All documents from Jones Apparel's board of directors meetings relating to its proposed acquisition of Maxwell (RFP No. 2);

- All documents related to the Anne Klein license (RFP No. 3);

- Any legal opinions, financial opinions (including drafts) related to the acquisition (RFP No. 5);

- Identifying all communications with shareholders (Interrogatory Nos. 9, 11); and

- Depositions of Jones Apparel's CEO and CFO.

Those requests target information that goes to the heart of Jones Apparel's strategy with respect to the proposed acquisition—information that Jones Apparel is entitled to protect pursuant to the business strategy privilege. *See* Note, *The White Knight Privilege in Litigated Takeovers: Leveling the Playing Field in Discovery*, 43 STAN. L. REV. 445, 459 (1991). *Atlantic Research Corp. v. Clabir Corp.*, 1987 WL 758584, at *2 (Del. Ch. Feb. 10, 1987) (the business strategy privilege is available to bidders as well as targets); *Parsons v. Jefferson-Pilot Corp.*, 408, 420 (M. D. N. Car. 1992) (temporarily denying certain discovery by target from bidder); *BNS, Inc. v. Koppers Co., Inc.*, 683 F. Supp. 454, 457 (D. Del. 1988) (protecting target's documents after balancing its injury against plaintiffs' interest in those documents); *Nisource Capital Markets, Inc., v. Columbia Energy Group*, 1999 WL 959183, at *1 (Del. Ch. Sept. 24, 1999) (same); *Pfizer, Inc v. Warner-Lambert Co.*, 1999 WL 33236240, at *2 (Del. Ch. Dec. 8, 1999) (same).    Maxwell is not unduly prejudiced by not obtaining expedited discovery of information to which it is not entitled.

### III.    THE COURT SHOULD UPHOLD THE AUTOMATIC STAY BECAUSE MAXWELL'S REQUESTS ARE NOT "PARTICULARIZED."

Even if Maxwell were able to justify lifting the automatic stay, it would be entitled only to *particularized* discovery that is *necessary* to prevent the specific *undue prejudice* identified by the Court.    Maxwell's discovery requests contain no such limitation, however.  Maxwell requests—within four days—that Jones Apparel produce, among other things, "all documents" relating to its proposed acquisition of Maxwell, the Tender Offer, the Consent Solicitation, the nominees, the Anne Klein license, and the AK Anne Klein brand name.   Maxwell also requests that Jones Apparel respond to ten interrogatories and eleven requests for admissions dealing with broad topics such as identifying all persons working for Jones Apparel who have worked on the proposed acquisition, identifying all shareholders with whom Maxwell has communicated, and identifying all facts supporting certain assertions in the Tender Offer or Consent Solicitation.   Furthermore, Maxwell proposes that by April 23, 2004, Jones Apparel produce for deposition six witnesses (while reserving their rights to take additional depositions) with no limitations on the subject matter about which they would be required to testify.  Maxwell's schedule contains no provisions of reciprocal discovery.

In addition, Maxwell requests this aggressive schedule after waiting over two weeks to bring this motion.  Maxwell's papers are silent with respect to the reasons for its delay.   The Tender Offer was initiated on March 23, 2004, and is set to expire on April 19, 2004.  Despite the alleged urgency of its need for discovery, Maxwell waited over a week to bring its complaint, and over two weeks to bring this motion for expedited discovery.  Maxwell does not explain, much less justify, its delay, or explain why Jones Apparel should now be required to respond within days.   Maxwell cites no cases

requiring a party to respond to such broad discovery within two weeks, when the proponent of such discovery wasted over two weeks in bringing its motion.

The requested discovery is hardly particularized, is extremely burdensome, tardily served, and is not permitted under the automatic stay of the PSLRA.

## CONCLUSION

For all the foregoing reasons, the Court should deny plaintiff's motion for expedited discovery.

Respectfully submitted,

John D. Donovan, Jr. (130950)
Christopher Dillon (640896)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110
617-951-7000

*Counsel for Jones Apparel Group, Inc., and MSC Acquisition Corp.*

Paul C. Saunders
Timothy G. Cameron
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eight Avenue
New York, New York 10019
212-474-1000

April 9, 2004

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (and) on 4/9/04

-18-