UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MAXWELL SHOE COMPANY INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 04 CV 10635 RGS |
| v. | ) | |
| | ) | |
| JONES APPAREL GROUP, INC.; and | ) | |
| MSC ACQUISITION CORP., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S AMENDED MOTION FOR A PRELIMINARY INJUNCTION

OF COUNSEL:

Adam H. Offenhartz
Jennifer H. Rearden
Robert E. Malchman (BBO# 555071)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, N.Y. 10166-0193
Telephone (212) 351-4000
Facsimile (212) 351-4035

TESTA, HURWITZ & THIBEAULT, LLP

Jordan D. Hershman (BBO #553709)
Roger A. Lane (BBO #551368)
Kenneth I. Weissman (BBO #653834)
TESTA, HURWITZ & THIBEAULT, LLP
125 High Street
Boston, Massachusetts 02110
Telephone (617) 248-7000
Facsimile (617) 248-7100

Attorneys for Plaintiff,
Maxwell Shoe Company, Inc.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................4

    A.    Defendants' Pursuit of Maxwell Shoe ..........................................4

    B.    Defendants' Material Omissions Regarding Defendants' Nominees ..........6

    C.    Defendants' Disparagement Of The Board...........................................6

    D.    The Harm to the Company And Its Stockholders ....................................7

ARGUMENT ....................................................................................................7

    A PRELIMINARY INJUNCTION IS NECESSARY TO PRESERVE THE
    STATUS QUO PENDING TRIAL ON THE MERITS ....................................7

    A.    Maxwell Shoe Will Suffer Irreparable Harm Without Injunctive
        Relief.........................................................................................9

    B.    Maxwell Shoe Can Demonstrate A Likelihood Of Success On The
        Merits .......................................................................................11

        1.    Defendants Still Have Not Disclosed Material Business
            Relationships Between Defendants' Nominees And Jones ..........12

        2.    Defendants Omit Material Information Regarding The
            Qualifications And Competence Of Defendants' Nominees .........13

        3.    Defendants Still Make Misleading Statements And
            Omissions About The Value Of The Proposed Transaction
            To Maxwell Shoe Stockholders ....................................................15

        4.    Defendants Continue To Disparage Maxwell Shoe's Board .........16

    C.    The Balance Of The Hardships Favors Maxwell Shoe.............................18

    D.    The Public Will Not Be Harmed By The Grant Of Preliminary
        Injunctive Relief..........................................................................19

CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## Cases

Am. Insured Mortgage Investors v. CRI, Inc.
   1990 WL 192561 (S.D.N.Y. Nov. 26, 1990) ...................................................12

Burlington Indus., Inc. v. Edelman
   666 F. Supp. 799 (M.D.N.C. 1987) ...........................................................19

Chambers v. Briggs & Stratton Corp.
   863 F. Supp. 900 (E.D. Wis. 1994) ..........................................................19

CNW Corp. v. Japonica Partners, L.P.
   874 F.2d 193 (3d Cir. 1989) ..............................................................8, 9

Consol. Gold Fields PLC v. Minorco, S.A.
   871 F.2d 252 (2d Cir. 1989) .................................................................9

Edudata Corp. v. Scientific Computers, Inc.
   599 F. Supp. 1084 (D. Minn. 1984) ......................................................8, 22

General Aircraft Corp. v. Lampert
   556 F.2d 90 (1st Cir. 1977) .........................................................8, 9, 11, 12

In re General Motors Corp. Litig.
   Civ. A. No. 20269 (Del. Ch. Oct. 2, 2003) ..................................................10

Gillette Co. v. RB Partners
   693 F. Supp. 1266 (D. Mass. 1988) .........................................................11

Howing Co. v. Nationwide Corp.
   927 F.2d 263 (6th Cir.), 502 U.S. 801 (1991) ..............................................15

J.I. Case Co. v. Borak,
   377, U.S. 426 (1964) .........................................................................3

Koppers Co. v. Am. Express Co.
   689 F. Supp. 1371 (W.D. Pa. 1988) ......................................................9, 19

Lebhar Friedman, Inc. v. Movielab, Inc.
   1987 WL 5793 (S.D.N.Y. Jan. 13, 1987) ...................................................8, 9

Lewis v. Gen. Employment Enters., Inc.
   1991 WL 11383 (N.D. Ill. Jan. 21, 1991) ..................................................19

## TABLE OF AUTHORITIES
### [Continued]

Page(s)

Lone Star Steakhouse & Saloon, Inc. v. Adams
        148 F. Supp. 2d 1141 (D. Kan. 2001) ................................................................... 8, 9

MAI Basic Four, Inc. v. Prime Computer, Inc.
        871 F.2d 212 (1st Cir. 1989) ............................................................... 8, 9, 11, 12, 18

Mendell v. Greenberg
        927 F.2d 667 (2d Cir. 1991) ................................................................................ 15

Monheit v. Carter
        376 F. Supp. 334 (S.D.N.Y. 1974) ................................................................... 12, 13

In re Omission of Shareholder Proposal of John Jennings Crapa,
        SEC No-Action Letter, 1999 WL 231196 (Apr. 20, 1999) ...................................... 17

Oracle Corp. Derivative Litig.
        824 A.2d 917 (Del. Ch. 2003) ............................................................................. 13

Phoenix Gold Int'l, Inc.
        SEC No-Action Letter, 2000 WL 1726981 (Nov. 21, 2000) ................................... 17

Polaroid Corp. v. Disney
        862 F.2d 987 (3d Cir. 1988) ................................................................................ 10

Rosario-Urdaz v. Rivera-Hernandez,
        350 F.3d 219 (1st Cir. 2003) .................................................................................. 2

San Francisco Real Estate Investors v. Real Estate Inv. Trust of Am.
        701 F.2d 1000 (1st Cir. 1983) ............................................................................ 4, 7

Sonesta Int'l Hotels Corp. v. Wellington Assocs.
        483 F.2d 247 (2d Cir. 1973) ................................................................................ 19

Spencer Cos. v. Agency Rent-A-Car, Inc.
        542 F. Supp 237 (D. Mass. 1982) ...................................................................... 9, 11

TSC Indus., Inc. v. Northway, Inc.
        426 U.S. 438 (1976) ........................................................................................... 12

United States v. Matthews
        787 F.2d 38 (2d Cir. 1986) ................................................................................. 17

UV Indus., Inc. v. Posner
        466 F. Supp. 1251 (D. Me. 1979) ....................................................................... 19

## TABLE OF AUTHORITIES
### [Continued]

Page(s)

**Statutes**

Del. Code Ann. tit. 8, § 228 ...................................................................................................10

Section 14(e) of the Exchange Act ............................................................................... passim

Section 14(a) of the Exchange Act ...........................................................................1, 2, 8

**Rules**

......................................................................................................................................................1

F.R.C.P. 65................................................................................................................................10

SEC Rule 14a-12....................................................................................................................10

SEC Rule 14a-3(a) .......................................................................................................... passim

SEC Rule 14a-9........................................................................................................................

## PRELIMINARY STATEMENT

Immediately after Plaintiff Maxwell Shoe Company Inc. ("Maxwell Shoe," or the "Company") filed its original Motion for a Preliminary Injunction on April 7, 2004, Jones Apparel Group, Inc. ("Jones "), and MSC Acquisition Corp. ("MSCAC") -- tacitly admitting to the disclosure violations identified by the Company in this lawsuit -- began amending their defective SEC filings.  But Defendants' disclosures still fall short.  Among other things, in an effort to camouflage their disregard for the federal securities laws, Defendants have selectively amended their SEC filings to include discrete "factoids" that not only do not cure, but in some instances compound, the inadequacy of Defendants' solicitation of Plaintiff's shareholders.  Plaintiff's Amended Motion for a Preliminary Injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and this memorandum are respectfully submitted to address Defendants' ongoing pattern of deceptive disclosure and to preserve the status quo while the Court considers the merits of Maxwell Shoe's claims that Defendants have violated Sections 14(a) and (e) of the Securities and Exchange Act of 1934 (the "Exchange Act") and SEC Rule 14a-9 in connection with their attempted hostile takeover of the Company.[1]

Change-of-control transactions are the prototypical example of a bell that cannot be unrung.  Preliminary injunctive relief is necessary in this case to prevent Defendants from usurping the Company's board of directors (the "Board") and completing a hostile acquisition of Maxwell Shoe by means of materially misleading statements and omissions.  Defendants have been conducting a tender offer (the "Tender Offer") for all of the Company's stock and have been publicizing their proposed consent solicitation (the "Consent Solicitation") of the Company's stockholders to replace the Board with Defendants' hand-picked nominees.  On March 23, 2004, Defendants filed a Schedule TO (the "Tender Offer Statement") and a preliminary Schedule 14A (the "Consent

---

[1] Plaintiff is also serving today an Amended Complaint to address Defendants' continuing violations of Sections 14(a) and (e) of the Exchange Act and SEC Rule 14a-9 in connection with their hostile bid for the Company.

Statement")[2] with the SEC.  On April 9, 2004, Defendants filed a revised preliminary Schedule 14A (the "Revised Consent Statement").[3]  The Tender Offer Statement already has been mailed to Maxwell Shoe's shareholders, and the Consent Statement and Revised Consent Statement are publicly available through the Jones website.  (Lane Decl. ¶¶ 4, 5; Offenhartz Decl. ¶ 3.) Defendants have made numerous other SEC filings and public statements regarding the Tender Offer and the Consent Solicitation.  (See, e.g., Offenhartz Decl. Exs. 2-4.)

The Tender Offer Statement and the Revised Consent Statement contain materially false and misleading statements and omissions.[4]  Specifically, they violate Sections 14(a) and (e) of the Exchange Act and SEC Rule 14a-9, in the following respects, among others: [5]

- Defendants still have not disclosed their significant business relationships with certain of their Board nominees ("Defendants' Nominees").  These relationships call into question Defendants' claim that Defendants' Nominees are "independent" of Defendants.  This information is material to Maxwell Shoe stockholders because if the Consent Solicitation succeeds, Defendants' Nominees will be able to approve the Tender Offer.

- Defendants still have not disclosed that certain of Defendants' Nominees were directors and/or managers of companies that went bankrupt or were delisted during Defendants' Nominees' affiliations with those companies, and that Defendants' Nominees Harold Leppo is ineligible to serve on Maxwell Shoe's Board of Directors under the Company's Bylaws. These facts call into question Defendants' claim that Defendants' Nominees are "highly

---

2  The Tender Offer Statement and the Consent Statement are attached, respectively, as Exhibits 2 and 3 to the Declaration of Roger A. Lane in Support of Plaintiff's Motions for a Preliminary Injunction and Expedited Discovery, executed April 7, 2004 ("Lane Decl.").

3  The Revised Consent Statement is attached as Exhibit 1 to the Declaration of Adam H. Offenhartz in Support of Plaintiff's Amended Motions for a Preliminary Injunction and for Expedited Discovery, executed April 15, 2004 ("Offenhartz Decl.").

4  The amendments to the Tender Offer Statement do not correct the material misrepresentations and omissions in the Tender Offer Statement.

5  Because the parties will sharply dispute the facts – including those relating to "falsity," "materiality," and "scienter" (for the Section 14(e) claims) – and because the Court will have to make credibility determinations, discovery followed by an evidentiary hearing with live witnesses are necessary.  See Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 224 (1st Cir. 2003).  See also Plaintiff's Reply Memorandum of Law In Support of Plaintiff's Motion for Expedited Scheduling and Discovery, filed April 12, 2004 ("Plaintiff's Reply Brief"), at 7 (providing additional authority).

qualified." This information is material to Maxwell Shoe stockholders because if the Consent Solicitation succeeds, Defendants' Nominees, with their histories of business failures, will nevertheless be left in charge of Maxwell Shoe.

- Defendants still have not fully disclosed the facts relating to Jones's acquisition of the licensor's rights under a license for the AK Anne Klein brand name (the "License"),[6] pursuant to which Maxwell Shoe is the licensee. This continuing omission is material to Maxwell Shoe stockholders because understanding the extent of Jones's desire to stand on both sides of the License would affect their valuation of the Tender Offer and consideration of whether to respond to the Consent Solicitation.

- Defendants continue to falsely and illegally disparage the Board by implying its members have violated their fiduciary duty to Maxwell Shoe's shareholders by rejecting Defendants' financially inadequate offer of $20 per share, notwithstanding that the Company's stock has traded at or above $22 per share every day since Jones publicly announced its offer more than a month ago. Apparently according to Defendants, it is a breach of the Board's fiduciary duty to recommend stockholders not tender their shares for $20 each when they can sell them on the open market for $22 each.

Defendants say they will begin soliciting consents as soon as the SEC gives final clearance for them to proceed with the Consent Solicitation. Because SEC rules permit acquirers to communicate with a target's shareholders before their consent statements are cleared, Defendants could take over the Board immediately upon SEC clearance by lining up consents now from Maxwell Shoe stockholders holding a majority of the shares.[7] If Defendants are permitted to replace the Board with their hand-picked nominees based on the materially misleading Tender Offer Materials and Revised Consent Statement, Maxwell Shoe and its stockholders will be irreparably harmed by the loss of control of their Company.

---

6  A redacted copy of the License, executed November 1, 1999 and with effect from July 1999, and an amendment, dated March 19, 2002, as filed with the SEC, are attached, respectively, as Exhibits 1 and 2 to the Declaration of James J. Tinagero in Support of Plaintiff's Motions for a Preliminary Injunction and for Expedited Discovery, executed April 6, 2004 ("Tinagero Decl.").

7  Significantly, SEC clearance does not negate the private right of action of a target under the securities laws. SEC clearance is not the equivalent of a judicial finding with respect to whether material misrepresentations and omissions have been made. See J.I. Case Co. v. Borak, 377 U.S. 426, 432 (1964) ("Private enforcement of the proxy rules provides a necessary supplement to Commission action . . . [T]he possibility of civil damages or injunctive relief serves as a most effective weapon in the enforcement of the proxy requirements."); see also Plaintiff's Reply Brief at 2 n.3 (providing additional authority).

Plaintiff thus meets the First Circuit's criteria for granting preliminary injunctive relief. See San Francisco Real Estate Investors v. Real Estate Inv. Trust of Am., 701 F.2d 1000, 1002 (1st Cir. 1983). First, preliminary injunctive relief is necessary here to prevent the irreparable harm Maxwell Shoe and its shareholders will suffer if Defendants are allowed to take over the Company based on materially misleading public filings and public statements. Second, Maxwell Shoe is likely to prevail on the merits because of the materially false and misleading statements and omissions Defendants continue to disseminate to the public. Defendants most recent filings do little to cure, and in most instances compound, the materially misleading statements and omissions in Defendants' initial Tender Offer Statement and Consent Statement. Third, the harm to Maxwell Shoe and its shareholders if this Court denies preliminary injunctive relief -- the loss of control of their Company -- far outweighs the harm to Defendants if this Court grants that relief: a short delay in their desired acquisition until the Court can hold a trial on the merits. Fourth, not only will the public not be harmed by entry of a preliminary injunction, but those persons who are investors or employees of the Company will be protected from losing their investments and jobs at least until this Court makes a determination on the merits.

## STATEMENT OF FACTS

### A.    Defendants' Pursuit Of Maxwell Shoe

Jones has been pursuing the acquisition of Maxwell Shoe for nearly eight months now, all for the purpose of acquiring the benefits that Maxwell Shoe currently enjoys under a License with a subsidiary of Jones named Jones Investment Co., Inc. ("JIC"). (See Tinagero Decl. ¶¶ 6-7. ) Defendants have never adequately disclosed all of the facts relating to their interest in the License, and the unique benefit of the License to Jones. Specifically, Defendants continue to fail to disclose that Jones won the bankruptcy auction in August 2003 for the assets of Kasper A.S.L., Ltd. ("Kasper"), including Kasper's rights as licensor of the AK Anne Klein brand name pursuant to the

4

License. (Id. ¶ 4.)[8] Defendants also fail to disclose that Jones first approached Maxwell Shoe to discuss a potential merger in September 2003, just one month after Jones acquired Kasper's rights as licensor under the License. (Id. ¶¶ 6, 7.)

Maxwell Shoe has operated in Massachusetts for 55 years and currently employs over 135 people here. It is in the business of designing, developing, and marketing casual footwear for women and children. (Id. ¶ 2.) For the last five years, Maxwell Shoe has marketed products under the AK Anne Klein brand name pursuant to the License. (Id. ¶ 3.) Anne Klein brand name products provided Maxwell Shoe with approximately $74.3 million in net sales in fiscal 2003, or approximately one third of the Company's approximately $225 million in net sales during that period. (Id. ¶¶ 3, 5.) However, JIC, as licensor, sees only a fraction of the amounts that Maxwell Shoe earns pursuant to the License. (Id. ¶ 5.) If Defendants acquire Maxwell Shoe, they will stand on both sides of the License and either relicense the AK Anne Klein brand name for substantially greater royalties, or keep the lucrative income stream for themselves. (Id. ¶ 6.)

These initial discussions between Jones and Maxwell Shoes culminated on February 25, 2004, when Jones publicly announced its unsolicited proposal to buy Maxwell Shoe for $20 per share. (Id. ¶ 9.) The Company rejected that proposal as inadequate. (Id. ¶ 11.) Shortly thereafter, Defendants launched their hostile Tender Offer, at a price of $20 per share, and Consent Solicitation. (Id. ¶¶ 11-13; Lane Decl. Exs. 2, 3.) In connection with the launching of their Tender Offer and Consent Solicitation on March 23, 2004, Defendants filed a Tender Offer Statement on Schedule TO and a Consent Statement on Schedule 14A. (Lane Decl. Exs. 2, 3.) The Tender Offer price was then, and has been since, more than $2 per share below the Maxwell Shoe stock's market price. (Offenhartz Decl. Ex. 8.) On March 29, 2004, after having carefully considered Defendants' Tender Offer, including Defendants' SEC filings, with the assistance of its financial advisor,

---

8 In December 2003, Jones Investment Co., Inc. ("JIC"), a subsidiary of Jones, acquired all right, title and interest in and to the AK Anne Klein brand name and became, and remains, the licensor under the License. (Id.)

Lehman Brothers, and its legal advisors, Maxwell Shoe announced that its Board had decided to reject the Tender Offer.  (Tinagero Decl. ¶ 15 & Ex. 4.)

**B.    Defendants' Material Omissions Regarding Defendants' Nominees**

Both the initial Consent Statement and the Revised Consent Statement describe Defendants' Nominees as "independent" of Defendants and Maxwell Shoe, and "highly qualified" to serve as directors of Maxwell Shoe.  (Lane Decl. Ex. 3 at 3; Offenhartz Decl. Ex. 1 at 4.)  Defendants still have not disclosed significant business relationships between Jones and certain of the Defendants' Nominees, including a relationship that, pursuant to the Company's Bylaws, disqualifies Defendants' Nominee Harold Leppo from serving on the Board.  Likewise, Defendants still have not disclosed certain Defendants' Nominees' histories as directors and/or officers of companies that filed for bankruptcy or were delisted from a stock exchange.  (See Lane Decl. Exs. 6-11, 13-26; Offenhartz Decl. Ex. 1.)

**C.    Defendants' Disparagement Of The Board**

The Revised Consent Statement states in two separate parts that Defendants "believe that the current directors of Maxwell [Shoe] are not acting, and will not act, in your best interests," and that Defendants "believe that the current members of [the Company's] Board of Directors are not acting in your best interests with respect to the offer."  (Offenhartz Decl. Ex. 1 at Proposed Letter to Maxwell Stockholders, 2.)

In a teleconference with analysts on March 31, 2004, which Defendants filed with the SEC pursuant to SEC Rule 14a-12, Boneparth, referring to Maxwell Shoe's Board, stated:  "[I]n . . . the age we are living in today with corporate governance and board accountability, it seems to us that there's been a series of fairly irresponsible acts."  (Lane Decl. ¶ 7 & Ex. 5 at 3.)

Moreover, a March 31, 2004 Press Release, which Jones filed with the SEC, stated in part, "The Maxwell [Shoe] Board's conduct [in setting the Record Date] also constitutes a breach of the directors' fiduciary duties owed to Maxwell [Shoe] stockholders under Delaware law."  (Offenhartz Decl. ¶ 4 & Ex. 2.)  Additionally, Amendment No. 1 to the Tender Offer Statement ("TO Amendment No. 1") states in part, "Maxwell [Shoe]'s setting of a purported record date for a

solicitation that has not been commenced constitutes . . . a breach of Maxwell[ Shoe]'s directors' fiduciary duties to the Company and its stockholders under Delaware law." (Id. Ex. 4 at Item 11.) The Revised Consent Statement, filed April 9, 2004, twice states that Defendants "will promptly inform you when the Court of Chancery has resolved this issue" related to the Board's setting of the Record Date. (Id. Ex. 1 at i.)

On April 7, 2004, just two days before Defendants made that promise in the Revised Consent Statement, counsel for Jones and MSCAC had represented to the Delaware Court of Chancery that Jones and MSCAC would withdraw their claims alleging the Company and the Board breached their fiduciary duty to Maxwell Shoe stockholders. (Id. ¶¶ 12-13.)

**D.    The Harm To The Company And Its Stockholders**

If Defendants succeed in their Tender Offer based on materially misleading statements and omissions, Maxwell Shoe's stockholders will be harmed by not receiving fair value for their shares and by losing control of their Company.  If Defendants succeed in their Consent Solicitation based on materially misleading statements and omissions, either the Tender Offer will succeed, with the harms previously described, or it will fail, leaving the Company's and its stockholders' fate in the hands of Defendants' Nominees, who will have been installed by the stockholders' mistaken reliance on the completeness and veracity of Defendants' disclosures.

## ARGUMENT

### A PRELIMINARY INJUNCTION IS NECESSARY
### TO PRESERVE THE STATUS QUO PENDING TRIAL ON THE MERITS

Maxwell Shoe is entitled to a preliminary injunction to prevent Defendants, during the pendency of this action, from conducting their Tender Offer and Consent Solicitation based on materially false and misleading public statements and omissions.  If Defendants are not enjoined to preserve the status quo, there is a substantial risk of irreparable harm to Maxwell Shoe and its stockholders if Defendants are able to trick the stockholders into surrendering their shares or turning over control of the Company to Defendants and their hand-picked nominees to the Company's Board.

7

Preliminary injunctive relief is appropriate in cases such as this one to prevent irreparable harm based on violations of Section 14(a) and (e) of the Exchange Act, and SEC Rule 14a-9. See MAI Basic Four, Inc. v. Prime Computer, Inc., 871 F.2d 212, 218 (1st Cir. 1989) (affirming preliminary injunction for target company and noting that "to the extent target shareholders may be deprived of material information required to be disclosed under the Williams Act before irrevocably tendering their shares, they will be irreparably harmed"); Spencer Cos. v. Agency Rent-A-Car, Inc., 542 F. Supp 237, 238 (D. Mass. 1982) (granting preliminary injunction against tenders made prior to issuance of corrective disclosure because companies and their stockholders "are likely to suffer irreparable damage if the [acquirer] is permitted to complete the tender offer and achieve control of the" target based on materially misleading disclosures); cf. Gen. Aircraft Corp. v. Lampert, 556 F.2d 90, 96-98 (1st Cir. 1977) (affirming preliminary injunction barring defendant from acquiring stock, or soliciting proxies or consents obtained pursuant to materially misleading Schedule 13D).[9]

Courts within the First Circuit evaluate requests for preliminary injunctive relief according to four criteria: (1) the irreparability of the harm to the plaintiff if relief is not granted, (2) the plaintiff's likelihood of success on the merits, (3) balancing of the harm to the plaintiff against the harm to the defendants if relief is granted, and (4) consideration of any adverse effect on the public interest if relief is granted. See San Francisco, 701 F.2d at 1002. All four factors counsel strongly in favor of granting preliminary injunctive relief in this action.

---

[9] See also CNW Corp. v. Japonica Partners, L.P., 874 F.2d 193, 200-01 (3d Cir. 1989) (granting injunction because defendant was actively acquiring stock in, or attempting to take over, the target corporation at the time the injunction issued); Lone Star Steakhouse & Saloon, Inc. v. Adams, 148 F. Supp. 2d 1141, 1150 (D. Kan. 2001) (holding that to allow an election to proceed notwithstanding material misstatements and omissions would be to "forfeit" the "free and intelligent voting rights of [the issuer's] shareholders"); Lebhar Friedman, Inc. v. Movielab, Inc., 1987 WL 5793, at *5 (S.D.N.Y. Jan. 13, 1987) (granting preliminary injunction because of the irreparable harm that shareholders would suffer if they elected a board of directors based on materially misleading proxy statement); Edudata Corp. v. Scientific Computers, Inc., 599 F. Supp. 1084, 1088 (D. Minn. 1984) (granting TRO in order to prevent target shareholders from being irreparably harmed by false and misleading disclosures).

**A.    Maxwell Shoe Will Suffer Irreparable Harm Without Injunctive Relief**

Maxwell Shoe and its stockholders will suffer irreparable harm if this Court declines to grant a preliminary injunction. Preliminary injunctive relief is particularly appropriate in cases such as this where "it becomes difficult, and sometimes virtually impossible, to 'unscramble the eggs'" if a transaction is consummated based on misleading information. See MAI, 871 F.2d at 218 (internal quotation omitted); accord CNW Corp., 874 F.2d at 200-01; Consol. Gold Fields PLC v. Minorco, S.A., 871 F.2d 252, 261 (2d Cir. 1989); Koppers Co. v. Am. Express Co., 689 F. Supp. 1371, 1382 (W.D. Pa. 1988) (cited by MAI). Companies and their stockholders "are likely to suffer irreparable damage if the [acquirer] is permitted to complete the tender offer and achieve control of the [target]" based on materially misleading disclosures. Spencer, 542 F. Supp. at 238 (granting preliminary injunction against tenders made prior to issuance of corrective disclosure). As the First Circuit noted in the context of a Section 13(d) violation:

> [W]e discover no error in the decision that irreparable injury would occur to shareholders and the investing public if [defendants] were allowed to continue their activities without correcting and amplifying their Schedule 13D. We therefore affirm the order granting the preliminary injunction insofar as it enjoined [defendants] from further violations of Section 13(d), from failing to amend their inaccurate Schedule 13D, and from acquiring further shares of [plaintiff's] common stock or soliciting proxies or consents from [plaintiff's] stockholders until the Schedule 13D is amended to reflect accurately their intentions.

Gen. Aircraft, 556 F.2d at 97.

Absent such an injunction, Maxwell Shoe's "shareholders could elect a Board of Directors based on misleading information which has been presented to them in violation of the securities laws." Lebhar Friedman, Inc., 1987 WL 5793, at *5 (granting preliminary injunction preventing defendant's solicitation of shareholders by means of an allegedly misleading proxy statement). The potential termination of Maxwell Shoe's management could create chaos for the Company and devastate its plans for the future. Courts have recognized that "the wrongful positioning of corporate heads wreaks irreparable harm on a corporation and its shareholders." Id.; see also Lone Star, 148 F. Supp. 2d at 1150.

SEC rules permit Defendants to communicate with the Company's stockholders even <u>before</u> the SEC clears the Revised Consent Statement. <u>See</u> SEC Rules 14a-3(a), 14a-12. Indeed, Defendants are already doing so pursuant to Rule 14a-12, noting that they "may be deemed to be participants in the solicitation of Maxwell[ Shoe']'s stockholders." (Offenhartz Decl. Exs. 2, 3; Lane Decl. Ex. 5 at 5.) The Revised Consent Statement is available to the public through the Jones website, and the Tender Offer Statement has already been mailed to the Company's stockholders. (Lane Decl. ¶¶ 4, 5; Offenhartz Decl. ¶ 3.) A party may not wait until the issuance of a definitive consent statement to move for an injunction or expedited discovery because the process at that point is too far along, as the requested shareholder action could occur any day. <u>See</u>, <u>e.g.</u>, <u>In re Gen. Motors Shareholders Litig.</u>, Civil Action No. 20269-NC (Del. Ch. Oct. 2, 2003) (denying motion for expedited discovery because plaintiff moved only after issuance of definitive consent statement).[10] Under Delaware law, written consents become effective immediately. <u>See</u> Del. Code Ann. tit. 8, § 228. Thus, Defendants could replace Maxwell Shoe's Board -- assuming they obtain the consents of a majority of the Company's shares -- as soon as they receive those consents. If Defendants' scheme succeeds based on their material misstatements and omissions, Maxwell Shoe and its stockholders will be irreparably harmed through the loss of control of their Company.

Monetary damages will not remedy the inability of Maxwell Shoe's shareholders to effectively exercise their corporate suffrage rights, nor could it compensate Maxwell Shoe for being forced into a merger with Jones. <u>See</u> <u>Polaroid Corp. v. Disney</u>, 862 F.2d 987, 1006 (3d Cir. 1988) (in a Section 14(e) action, irreparable harm arises in part because of the difficulty in proving money damages in a suit based upon material misrepresentation by a tender offeror).

Moreover, even if the Consent Solicitation were allowed to proceed and Jones lost the consent battle, Maxwell Shoe would be irreparably harmed because its shareholders would be left with negative impressions of the Board based upon Jones's disparaging statements.[11] <u>See</u> <u>Lone</u>

---

10  A copy of <u>General Motors</u> is attached for the Court's convenience as Lane Decl. Ex. 31.

11  The Company is being irreparably harmed <u>now</u> by Defendants' materially false and misleading statements, which are affecting the total mix of information available to the stockholders. Just
[Footnote continued on next page]

Star, 148 F. Supp. 2d at 1150. This type of damage "to the Board's reputation and concomitant decrease in the level of shareholder trust cannot be quantified and cannot be compensated in a post-vote exercise of the court's equitable power." Id.

Accordingly, absent preliminary injunctive relief, Maxwell Shoe and its stockholders will sustain irreparable harm from the uncorrected, materially false and misleading public statements by Defendants. See MAI, 871 F.2d at 218; Spencer, 542 F. Supp. at 238; cf. General Aircraft, 556 F.2d at 97 (affirming injunction for Section 13(d) violation).

## B.    Maxwell Shoe Can Demonstrate A Likelihood Of Success On The Merits

Maxwell Shoe is also likely to prevail on both its SEC Rule 14a-9 claim and on its Exchange Act Section 14(e) claim because Defendants so clearly have made, and are continuing to make, materially false and misleading statements and omissions in connection with the Consent Solicitation and Tender Offer.

To prevail on a Rule 14a-9 claim, a plaintiff must show: (i) that the proxy or consent statement contains a false or misleading statement of material fact or omits to state a material fact necessary to make the statement not false or misleading; and (ii) that the misstatement or omission was the result of knowing, reckless or negligent conduct. See, e.g., Gillette Co. v. RB Partners, 693 F. Supp. 1266, 1269 (D. Mass. 1988).

To establish a Section 14(e) violation, a plaintiff likewise must show: (1) The defendant made an untrue statement of material fact or omitted to state a material fact necessary to make statements not misleading in connection with a tender offer; (2) that the misstatement or omission

---

[Footnote continued from previous page]
as political campaigns do not begin on Election Day, neither do contests for corporate control begin when the SEC clears a consent statement. The campaigning for Maxwell Shoe's stockholders' "votes" has already begun. Defendants are permitted to solicit stockholders even before SEC clearance. See 17 C.F.R. § 240.14a-3, § 240.14a-12. Defendants have said they will seek to obtain written consents immediately upon SEC clearance. (Lane Decl. Ex. 27, ¶ 5.) Written consents are immediately effective under Delaware law. See Del. Code Ann. tit. 8, § 228. The Consent Solicitation may take place and succeed independent of the price of the stock or of the Tender Offer. Therefore, a preliminary injunction is appropriate to prevent a violation of Section 14(a).

was material; and (3) that the defendant acted with either knowledge of falsity or reckless disregard for the truth. See, e.g., Am. Insured Mortgage Investors v. CRI, Inc., 1990 WL 192561, at *6 (S.D.N.Y. Nov. 26, 1990).

A "material" fact is one that a reasonable shareholder would consider important to know in deciding how to vote. TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976) (construing "materiality" under Rule 14a-9); MAI, 871 F.2d at 221-22 & n.10 (quoting TSC and applying it to "materiality" under Section 14(d)). "The purpose of the Williams Act is to insure that public shareholders who are confronted with a cash tender offer for their stock will not be required to respond without adequate information regarding the qualifications and intentions of the offering party." General Aircraft, 556 F.2d at 94-95 (internal quotation omitted). As discussed below, Maxwell Shoe can demonstrate that the Revised Consent Statement and Tender Offer violate the Exchange Act, the Williams Act and SEC rules by making material misstatements and omissions.

### 1.   Defendants Still Have Not Disclosed Material Business Relationships Between Defendants' Nominees And Jones

Defendants' continuing failure to disclose problematic business relationships between Defendants' Nominees and Jones violates Rule 14a-9. See Monheit v. Carter, 376 F. Supp. 334, 340 (S.D.N.Y. 1974); SEC Rule 14a-101. Both the Consent Statement and the Revised Consent Statement falsely assert that all of Defendants' Nominees are "independent" of Defendants. The Revised Consent Statement fails to disclose that:

- Jones is a client of Financo, for whom Defendants' Nominee Harold Leppo performs consulting work. (See Lane Decl. Exs. 6, 7.)

- Current Jones director Howard Gittes was a director and chairman of Sunbeam Corporation's compensation committee during the same time period that Defendants' Nominee Robert D. Martin served as Senior Vice President and Chief Financial Officer, International, at Sunbeam. (Lane Decl. Exs. 3 at 7;11 at 3, 13.)

- Merrill Lynch underwrote two public offerings of Jones Apparel stock -- one offering of 3.1 million shares in 1994 (offered in part by Jones director Sidney Kimmel) and another offering of 4.5 million shares in 1997. At these times, Defendants' Nominee Michael Koeneke served as co-head of Merrill Lynch's Global Mergers and Acquisitions department. (Id. Exs. 3 at 6; 13; 14; 15.)

12

- The Revised Consent Statement likewise fails to disclose that this is at least the third instance in which Koeneke has been nominated by a hostile acquirer to serve on the board of a target company. (Id. Exs. 16, 17.) Another of the hostile acquirers with which Koeneke is associated, Simon Property Group ("Simon"), does significant business with Jones and/or its subsidiaries in connection with retail stores operated by Jones and its subsidiaries (such as Easy Spirit and Nine West) in malls owned by Simon. (Id. Ex. 18.)

These business relationships raise potentially serious questions regarding the purported "independence" of Jones's nominees to the Maxwell Shoe Board.[12] Independence issues arise if a director is beholden financially or compromised as a result of "personal or other relationships" with an interested party. See In re Oracle Corp. Derivative Litig., 824 A.2d 917, 938-39 (Del. Ch. 2003). At a bare minimum, Leppo, Martin and Koeneke all have relationships with Jones that raise doubt as to their ability to exercise independent judgment as directors of Maxwell Shoe. Maxwell Shoe's shareholders deserve to receive full disclosure regarding the Defendants' Nominees' past and present business relationships with Jones and its affiliates, and Defendants' culpable failure to provide these disclosures violates Rule 14a-9 and Section 14(e). See Monheit, 376 F. Supp. at 340; SEC Rule 14a-101.

### 2. Defendants Omit Material Information Regarding The Qualifications And Competence Of Defendants' Nominees

Both the Revised Consent Statement and the Tender Offer Materials misleadingly tout Defendants' Nominees as "highly qualified." Instead, the evidence already available suggests otherwise. Several of Defendants' Nominees have left a string of failed companies in their wake. Defendants disclose virtually none of this information. For example:

- The Revised Consent Statement states that Defendants' Nominee Allan H. Corn has been a director of Michael Anthony Jewelers, Inc. since 1989. (Offenhartz Decl. Ex. 3 at 6.) The Revised Consent Statement also notes that Corn served as Michael Anthony's Chief Financial Officer for a period of time until December 2003. (Id.) Defendants fail to reveal, however, that Michael Anthony reported losses for six consecutive quarters (from the quarter ended May 4, 2002 through the quarter ended November 1, 2003) and saw an

---

[12] This is not a case where Jones has disclosed conflicts of interest but failed to characterize those conflicts of interest in a negative light. Jones has not disclosed any information regarding the conflicts listed above.

operating profit of $4.2 million in fiscal 2002 turn into an operating loss of $4.5 million for fiscal 2003. (Lane Decl. Exs. 19 at 10; 20 at 11; 21 at 12; 22 at 15; 23 at 16; 24 at 15; 25.) Defendants' further fail to reveal that Michael Anthony was delisted from the American Stock Exchange on February 20, 2004. (Id.)

- Defendants fail to disclose that Defendants' Nominee Harold Leppo served as a director of at least three companies that filed for bankruptcy between 1999 and 2001. (Id. Exs. 8 at Item 5; 9 at 2; 10 at 7.)

Defendants' Nominees' histories as directors and/or managers of failed businesses are material to Maxwell Shoe stockholders, and Defendants' failure to disclose them violates Rule 14a-9 and Section 14(e). It is possible that the Consent Solicitation will succeed, but the Tender Offer will fail -- especially as the Tender Offer price has been approximately $2 per share lower than the stock's trading price every day since Defendants filed the Tender Offer Statement. Thus, Maxwell Shoe's stockholders could find themselves with a new board of directors who, unbeknown to the stockholders, have questionable abilities given their responsibilities for companies that declared bankruptcy or were delisted. Before tendering their shares or providing consents, Maxwell Shoe's shareholders are entitled to receive adequate information to allow them to assess whether Defendants' Nominees have the necessary qualifications to serve as directors of the Company.

Moreover, the Revised Consent Statement fails to disclose that, as a result of Leppo's work for Financo, which has Jones as a client, Leppo is ineligible to serve as a Maxwell Shoe director pursuant to section 3.2 of Maxwell Shoe's Bylaws.[13] (Offenhartz Decl. Exs. 1, 7 at § 3.2.) The Tender Offer and Consent Solicitation are each an "Attempted Transaction" within the meaning of

---

[13] Bylaws section 3.2 provides:

No person shall be qualified or eligible to serve as a director of the [Company] if, at the time of such person's nomination, election or appointment as a director (whether by a vote at a meeting of the stockholders, by action by written consent or by appointment by the board of directors of the [Company]): (a) an Attempted Transaction is pending, and (b) such person (or person having any business, financial, or familial relationship with such person that would reasonably be expected to affect such person's judgment in a manner adverse to the [Company]) (i) is, or was within the two years preceding such nomination, election or appointment, a director, officer, employee, consultant, advisor, agent, representative or Affiliate of an Interested Party . . . .

Bylaws section 3.2. (Id.) Jones is an "Interested Party" within the meaning of Bylaws section 3.2. (Id.) Jones is also a client of Financo, for whom Leppo performs consulting work. (Lane Decl. Exs. 6, 7.) Leppo's "business [and/or] financial" relationship with Financo "would reasonably be expected to affect such person's judgment in a manner adverse to" Maxwell Shoe, within the meaning of Bylaws section 3.2. (Offenhartz Decl. Ex. 7 at § 3.2.) Therefore, Leppo is ineligible to serve as a director of Maxwell Shoe pursuant to section 3.2 of the Bylaws. Reasonable stockholders of Maxwell Shoe would consider Defendants' nomination of a person ineligible to serve on the Board material to their decisions whether to consent to Defendants' proposals.

### 3.    Defendants Still Make Misleading Statements And Omissions About The Value Of The Proposed Transaction To Maxwell Shoe Stockholders

Defendants' failure to disclose material facts relating to its acquisition of Kasper also renders the Tender Offer Statement and the Revised Consent Statement materially misleading. Defendants do not disclose that in August 2003, Jones won the bankruptcy auction for Kasper and made its first overture to Maxwell Shoe the next month, in September 2003. (Tinagero Decl. ¶¶ 4, 7.) Instead, the Revised Consent Statement only states that Jones acquired Kasper on December 1, 2003. (Offenhartz Decl. Ex. 1 at 16.) Defendants' misleading disclosures as to when Jones won the bankruptcy auction for Kasper and when Jones began its pursuit to acquire Maxwell Shoe are material to Maxwell Shoe stockholders. Without this information showing the relationship between the timing of the Kasper acquisition and Jones's first approach to Maxwell Shoe, the stockholders cannot properly evaluate the Tender Offer or the Consent Solicitation because they will not understand how long and by what varied means Jones has been working to stand on both sides of the License and inferentially, what great value it has to Jones.

Unedifying disclosures of this sort are patently inadequate, particularly in cases such as this one where the acquirer has an undisclosed agenda for pursuing a transaction. See Mendell v. Greenberg, 927 F.2d 667, 670 (2d Cir. 1991) ("A proxy statement should honestly, openly and candidly state all the material facts, making no concealment of the purposes for the proposals it advocates. Unlike poker where a player must conceal his unexposed cards, the object of a [consent] statement is to put all one's cards up on the table face-up"). Disclosure of facts that show

motivation is required in situations such as this one where the acquirers' true agenda is hidden and disclosure would have a "significant bearing on a reasonable shareholder's assessment of the recommended course of action." Id. at 675.

This disclosure is also necessary in light of Defendants' false and misleading assertion that the Tender Offer price of $20 per share is "an attractive premium" for Maxwell Shoe's stockholders. Defendants provide no explanation as to why this claim is true. Very simply, Maxwell's Shoe's stock closed at $22.09 on March 22, 2003 -- the day before Defendants filed the Tender Offer Statement and began the Tender Offer at $20 per share. (Offenhartz Decl. Ex. 8.) The stock has remained over $22 per share every day since, as it did for nearly a month previously, since the day after Jones announced its proposal to buy the Company. (Id.) Defendants fail to explain why Maxwell Shoe's shareholders should tender their shares for more than $2 per share less than what they could receive immediately on the open market, or why Defendants' Nominees would "consider" the Tender Offer under such circumstances, as the Revised Consent Statement promises they will do.[14] These omissions are material to the stockholders' understanding of whether the "premium" is attractive, unattractive, or simply nonexistent.

### 4.    Defendants Continue To Disparage Maxwell Shoe's Board

The Revised Consent Statement and Defendants' other SEC filings and public statements continue to disparage Maxwell Shoe's Board in violation of SEC Rule 14a-9 by stating, explicitly and implicitly, that the Board is breaching its fiduciary duties to the Company's stockholders. Note (b) to Rule 14a-9 declares a statement is misleading if it "directly or indirectly impugns character, integrity or personal reputation, or directly or indirectly makes charges concerning improper, illegal or immoral conduct or associations, without factual foundation."

---

[14] Significantly, even before Defendants announced their Tender Offer, the Tender Offer represented only a minimal premium over the price of the Company's stock. Specifically, on February 24, 2004, the day before Jones publicly announced its proposal to Maxwell Shoe, the last reported sale price of the Company's stock was $18.40. (Id.) The Tender Offer of $20 per share represents a premium of only 8.7% over the price of Maxwell Shoe's stock that day. (Id.)

The Consent Statement states that Defendants "believe that the current directors of Maxwell [Shoe] are not acting, and will not act, in your best interests." (Lane Decl. Ex. 3 at Proposed Letter to Maxwell Stockholders, 2.) The Revised Consent Statement states that Defendants "believe that the current members of [the Company's] Board of Directors are not acting in your best interests with respect to the [Tender O]ffer." (Offenhartz Decl. Ex. 1 at Proposed Letter to Maxwell Stockholders.) These statements imply that the Board is breaching its fiduciary duty to the Company's stockholders. Boneparth further implied in a March 31, 2004 teleconference that Maxwell Shoe's Board was violating its fiduciary duties: "[I]n . . . the age we are living in today with corporate governance and board accountability, it seems to us that there's been a series of fairly irresponsible acts." (Lane Decl. Ex. 5 at 3.) That transcript was filed with the SEC pursuant to SEC Rule 14a-12.

A March 31, 2004 Jones Press Release announcing that Jones and MSCAC had sued Maxwell Shoe and the members of its Board in the Delaware Court of Chancery stated in part, "The Maxwell [Shoe] Board's conduct [in setting the Record Date] also constitutes a breach of the directors' fiduciary duties owed to Maxwell [Shoe] stockholders under Delaware law." (Offenhartz Decl. Ex. 2.) Jones filed that press release three times with the SEC. (Id. ¶ 4.) Jones's TO Amendment No. 1 states in part, "Maxwell[ Shoe]'s setting of a purported record date for a solicitation that has not been commenced constitutes . . . a breach of Maxwell[ Shoe]'s directors' fiduciary duties to the Company and its stockholders under Delaware law." (Id. Ex. 4 at Item 11.) The SEC regularly finds that statements such as these, suggesting directors are breaching their fiduciary duties, violate Rule 14a-9.[15] Defendants fail to provide any factual support for these allegations.

---

[15] See, e.g., Phoenix Gold Int'l, Inc., SEC No-Action Letter, 2000 WL 1726981, at *9 (Nov. 21, 2000) (statement referring to an "opportunity to elect a truly independent director" violates Rule 14a-9; Omission of Shareholder Proposal of John Jennings Crapo (CCBT Bancorp, Inc.), SEC No-Action Letter, 1999 WL 231196, at *2 (Apr. 20, 1999) (statement that "Board . . . [was] not serving our interests but . . . put the interests of the Board and its members individually ahead of ours and ahead of their fiduciary duty to us" violates Rule 14a-9)); cf. United States v. Matthews, 787 F.2d 38, 46 (2d Cir. 1986) ("The SEC disapproves of attacks on character [Footnote continued on next page]

Moreover, during a telephonic hearing before the Delaware Court of Chancery on April 7, 2004, counsel for MSCAC and Jones told the Court that they would dismiss all of their breach of fiduciary duty claims against the Maxwell Board. (Id. ¶¶ 12-13.) Notwithstanding that representation, the Revised Consent Statement, filed two days later, states twice that Defendants "will promptly inform you when the Court of Chancery has resolved this issue" related Defendants' Delaware suit. (Id. Ex. 1 at i, 4.) But Defendants have yet to make a corrective disclosure to the public.

Defendants' false statements that the Board breached its fiduciary duty in setting the Record Date, their touting of the Section 213 Action they filed in Delaware Chancery Court, and their representation that they would advise the public "promptly" about Delaware Court developments -- two days after they agreed to withdraw their fiduciary duty claims -- constitute material, false, misleading and disparaging statements about the Board in violation of SEC Rule 14a-9. [16] Reasonable stockholders of Maxwell Shoe would find Defendants' lies about, and frivolous lawsuits against, the Board material to their decision whether to consent to Defendants' proposals.

**C.    The Balance Of The Hardships Favors Maxwell Shoe**

The balance of harms weighs strongly in favor of Maxwell Shoe. As described above, Maxwell Shoe will suffer irreparable harm if the Consent Solicitation and Tender Offer are allowed to proceed predicated on Defendants' material misstatements and omissions. Conversely, the First Circuit has found that the potential harm to the acquirer does not outweigh the harm to shareholders if they are deprived of material information. See MAI, 871 F.2d at 218 (affirming preliminary injunction for target company). Courts enjoin tender offers where the harm to the target outweighs

---

[Footnote continued from previous page]
   without complete and adequate supporting data, the Commission's position being that such attacks are contrary to the standards of fair disclosure unless they are in fact true.").

[16] Far from breaching its fiduciary duties, the Board has retained financial and legal advisors, each of whom has assisted the Board in its careful evaluation of Defendants' proposal. With their assistance, the Board determined the Tender Offer is financially inadequate. The market agrees: The Company's stock has traded at more that $2 per share above the Tender Offer price.

the harm to the offeror. E.g., Koppers, 689 F. Supp. at 1407 (injury to offeror resulting from delay is "certainly less" than the injury to shareholders from a tender offer that likely violates Section 14(e)) (cited by MAI, 871 F.2d at 218-19).

The specter of any harm to Defendants -- let alone greater harm than what Maxwell Shoe and its shareholders would suffer -- is particularly remote in this case because Jones has been pursuing an acquisition of Maxwell Shoe since September 2003; requiring Defendants to wait a little longer to correct their misleading disclosures or conduct an expedited trial will cause them no undue prejudice. Defendants may renew their Tender Offer and Consent Solicitation in the event that they prevail at trial. See Sonesta Int'l Hotels Corp. v. Wellington Assocs., 483 F.2d 247, 250 (2d Cir. 1973); Burlington Indus., Inc. v. Edelman, 666 F. Supp. 799, 819 (M.D.N.C. 1987) (granting injunction in part because relief would not prevent offeror from acquiring the target). Thus, the balance of harms tips strongly in favor of granting Maxwell Shoe preliminary injunctive relief.

**D.    The Public Will Not Be Harmed By The Grant Of A Preliminary Injunction**

A preliminary injunction here will have no adverse effect on the public interest. To the contrary, numerous courts have noted the overriding public interest of ensuring that stockholders receive full and accurate disclosures in connection with consent solicitations and tender offers.[17]

---

17    See Chambers v. Briggs & Stratton Corp., 863 F. Supp. 900, 906 (E.D. Wis. 1994) (granting preliminary injunction in part due to "overriding public interest in the full and accurate disclosure of information to shareholders of public corporations to ensure that a shareholder's vote is based upon accurate and complete information . . . [a]llowing a shareholder vote based on incomplete and inaccurate information undermines the purpose underlying Rule 14a-9"); Lewis v. Gen. Employment Enters., Inc., 1991 WL 11383, at *4 (N.D. Ill. Jan. 21, 1991) (granting TRO delaying shareholders' meeting because "[d]efendants cannot dispute that the public interest favors absolute and full disclosure to ensure that a shareholder vote be based upon complete, accurate, and comprehensible information"); UV Indus., Inc. v. Posner, 466 F. Supp. 1251, 1256-59 (D. Me. 1979) (granting preliminary injunction to prevent defendant from purchasing plaintiff's stock under Maine statute "designed to protect the public interest in full disclosure to stockholders . . .").

## CONCLUSION

For the reasons set forth above, Maxwell Shoe respectfully requests that the Court grant a preliminary injunction to preserve the status quo and to prevent Defendants from conducting the Consent Solicitation or the Tender Offer until trial on the merits, and grant Maxwell Shoe such other and further relief as this Court deems just and proper.

Dated: Boston, Massachusetts
     April 15, 2004

                          Respectfully submitted,
                          Maxwell Shoe Company Inc.,
                          By Its Attorneys

                          Jordan D. Hershman (BBO # 553709)
                          Roger A. Lane (BBO #551368)
                          Kenneth I. Weissman (BBO #653834)
                          TESTA, HURWITZ & THIBEAULT, LLP
                          125 High Street
                          Boston, Massachusetts 02110
                          Telephone (617) 248-7000
                          Facsimile (617) 248-7100

Of counsel:
Adam H. Offenhartz
Jennifer H. Rearden
Robert E. Malchman (BBO# 555071)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, N.Y. 10166-0193
Tel.:   (212) 351-4000
Fax.:   (212) 351-4035

## CERTIFICATE OF SERVICE PURSUANT TO L.R. 5.2(b)(2)

I hereby certify that on April 15, 2004, a true copy of the above document was served by hand upon counsel of record for all Defendants.

                          Dawn M. Perlman

3054254v1