UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| MAXWELL SHOE COMPANY, INC., <br><br> Plaintiff <br><br> v. <br><br> JONES APPAREL GROUP, INC., AND MSC ACQUISITION CORP., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Case No. 04 CV 10635-RGS |

F I L E D
Clerk's Office
USDC, Mass.
Date 5-17-04
By _____
Deputy Clerk

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S *THIRD* MOTION FOR EXPEDITED DISCOVERY AND IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT**

John D. Donovan, Jr. (130950)
Christopher Dillon (640896)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110
617-951-7000

Paul C. Saunders
Timothy G. Cameron
Andrew B. Kratensteinj
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eight Avenue
New York, New York 10019
212-474-1000

*Counsel for Jones Apparel Group, Inc., and MSC Acquisition Corp.*

Dated: May 17, 2004

Defendants Jones Apparel Group, Inc. and MSC Acquisition Corp. (collectively "Jones Apparel") submit this consolidated memorandum in opposition to Maxwell Shoe Company, Inc.'s ("Maxwell") motion for expedited discovery and in further support of Jones Apparel's combined motion to dismiss and for partial summary judgment. With one exception (regarding Mr. Harold Leppo's alleged affiliations with Financo and Jones Apparel), all of the disclosure claims asserted in the plaintiff's Amended Complaint are facially invalid and should be dismissed as a matter of law. The remaining issue – on which the Court authorized limited accelerated discovery, which was provided to plaintiff contemporaneously with the filing of Jones Apparel's motion for partial summary judgment – is predicated upon a factual error in the plaintiff's pleading that the discovery record now corrects. No further discovery is necessary and summary judgment on that solitary matter is therefore warranted.

I.  **MAXWELL'S TENDER OFFER AND CONSENT SOLICITATION CLAIMS ARE UNTENABLE BECAUSE JONES APPAREL HAS DISCLOSED ALL REQUIRED INFORMATION AND ITS DISCLOSURES ARE NOT MISLEADING AS A MATTER OF LAW.**

Maxwell claims (a) that Jones Apparel's Tender Offer statement should disclose the duration, nature and extent of Jones's interest in Maxwell so shareholders can assess the "truth" of Jones's characterization of its offer as "attractive"; and (b) that Jones Apparel's Consent Solicitation should disclose certain ancient relationships or business histories so that shareholders can decide whether Jones's nominees are "independent" and "qualified." Neither claim is legally viable because Maxwell cannot demonstrate that Jones had a *duty* to disclose the information, *Royal Bus. Group, Inc. v. Realist, Inc.*, 933 F.2d 1056, 1064 (1st Cir. 1991); *Shaw v. Digital Equip. Corp.* 82 F.3d 1194, 1202 (1st Cir. 1996), *or* that the disclosures that Jones Apparel has made are in any way misleading. Absent a duty to disclose, omissions that do not

mislead are not actionable under the federal securities laws, and Maxwell's Complaint is subject to dismissal.

### *The Disclosure Requirements*

Far from being "boilerplate" (Pl. Mem. at 14), the SEC's rules define what is required to be disclosed in a Tender Offer statement or a Consent Solicitation. Maxwell does *not* contend – nor could it – that Jones Apparel has failed to disclose all information that is required by the SEC's regulations. Rather, Maxwell argues – with no supporting authority – that Jones Apparel is somehow required by Sections 14(a) and 14(e) to make further disclosures beyond those contemplated by the SEC rules. But, as discussed below, Jones Apparel is not required to make disclosures beyond the SEC's prescriptions based solely on Maxwell's unsupported assertions of materiality. That is completely contrary to the law of the First Circuit.

In *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1202 (1st 1996), the First Circuit confirmed that the uniform disclosure regime *starts* with the SEC's rules, and *ends* there unless further information is needed to avoid misleading investors. The First Circuit noted, in connection with a prospectus that allegedly omitted "material" information, that the securities laws impose liability only for omitting "to state a material fact *required to be stated*" in a registration statement. *Id.* at 1204, *quoting* Section 11 of the 1933 Securities Act, 15 U.S.C. § 77k(a) (emphasis added). The Court stressed:

> [Section 11] is intended to ensure that issuers, under the pain of civil liability, not cut corners in preparing registration statements and that they disclose all material information *required by the applicable statutes and regulations.*"

*Id.* at 1204 (emphasis added). Crucially, *Shaw* does *not* state that Section 11 requires the disclosure in offering documents of *all* potentially material information, but rather only the material information that the regulations prescribe.

The First Circuit reiterated *Shaw's* holding in *Cooperman v. Individual, Inc.*, 171 F.3d 43 (1st Cir. 1999), ruling, once again, that the "materiality" of information can only be assessed in relation to the legal requirements for disclosure. "[T]he question remains whether Defendants had a duty to disclose this 'material fact' in the Company's registration statement." *Id.* at 49. That duty – and thus the question of whether certain information was required to be disclosed – sprung solely from the SEC's disclosure regulations. Indeed, to hold otherwise, as the First Circuit has also said in the Section 11 context, "is simply to wholly ignore and render superfluous that Section's qualifying language 'required to be stated therein or necessary to make the statements therein not misleading.'" *Oxford Asset Mgmt., Ltd v. Jaharis*, 297 F.3d 1182, 1190 (1st Cir. 2002). *See also N2K Inc. Sec. Litigation*, 82 F. Supp.2d 204, 207 (S.D.N.Y. 2000) ("the relevant SEC regulations answer the question as to what material facts are required to be stated . . .").

The principles established in *Shaw* extend beyond registration statements to other disclosure requirements under the federal securities laws, specifically including Sections 14(a) and 14(e). The basis for liability under those rules matches the basis for liability under Section 11. Regulation 14A and Regulation 14D compel the disclosure of certain items, and Rules 14a-9 and 14(e) respectively make it unlawful "for any person to . . . omit to state any material fact necessary *in order to make the statements made . . . not misleading.*" Thus an actionable *duty* to disclose will only arise where (1) the SEC's rules specifically prescribe what must be said, or (2) material information is needed so that existing statements do not mislead. *See Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26 (1st Cir. 1987). Neither is the case here.

Finally, Maxwell is flat wrong in asserting that the "materiality" of information is a question of fact that cannot be resolved on a motion to dismiss. (Pl. Mem. at 11-12.) As the First Circuit again has held:

> [I]f the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality it is appropriate for the district court to rule that the allegations are inactionable as a matter of law.

*Cooperman*, 171 F.3d at 49. The case law is rife with cases that have failed to meet this standard.

As a result, Jones Apparel is only obliged to make further disclosures in its Tender Offer statement and Consent Solicitation *if* such disclosures are necessary to correct *mis*impressions created by what it has already said. *Here, Maxwell has failed to identify any statements by Jones Apparel that are, in fact, misleading without further disclosure.* Maxwell's bald claims that certain general statements by Jones Apparel that its offer is "attractive" and that its nominees are "independent" and "highly qualified" are misleading are insufficient. No reasonable shareholder could possibly be mislead by those characterizations. As a matter of law, those characterizations do not create *mis*impressions requiring supplementation. The case is thus subject to dismissal.

**The Tender Offer Claim**

With respect to the Tender Offer, Maxwell has not identified any additional information that Jones Apparel is in fact required to disclose. Maxwell seeks to compel Jones Apparel to disclose the duration, nature and extent of its interest in acquiring Maxwell by telling shareholders that Jones Apparel has been interested in acquiring Maxwell since at least September of 2003. Maxwell appears to contend that if shareholders know that Jones Apparel has been interested in acquiring Maxwell for a longer period of time, then that might somehow

suggest that Jones Apparel might offer more than $20 under some undefined hypothetical scenario. But that is rank speculation.

The disclosure sought by Maxwell is not required under the SEC's disclosure regime or any case law. The applicable regulations require a bidder to disclose the material terms of his offer: how much is offered, the form of the consideration, and when payment will be made. But they do not require bidders to invite stockholders speculation to speculate whether that offer will ever change. Consequently, the omission of facts to support such speculation cannot possibly mislead. Whether or not stockholders know Jones Apparel has been interested in acquiring Maxwell since last September or December is simply irrelevant to how much Jones Apparel might or might not pay for their shares. The omitted information does not *mis*lead stockholders in the *wrong* direction, because it does not lead them in *any* direction.

A simple analogy proves the point. If the owner of Blackacre offers to buy adjacent Whiteacre for $100, Whiteacre's owner cannot discern whether $100 is the top price the bidder will pay. To be sure, the offeree may speculate that Blackacre's owner is inspired to bid because the lots are adjacent, and may attribute some value to joining the lots. But that fact alone does not give the target a window into the bidder's psyche, or permit a prediction of his pricing behavior. And, certainly, no principle of law would oblige the bidder to reveal to Whiteacre's owner how much he was willing to pay.

So too here. Whether Jones Apparel has sought to acquire Maxwell since September, or only recently decided the acquisition was strategically interesting, tells Maxwell shareholders nothing about whether Jones Apparel might offer a nickel more than $20, or whether that number is its last and final offer. It is well-established that Jones Apparel is only required to disclose the material terms of its offer, and has no obligation to disclose its "motive" or level of interest.

*Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir. 1978). A corollary to that rule is that Jones Apparel's characterizations of its offer as "attractive" are irrelevant as a matter of law. *Lessler v. Little*, 857 F.2d 866, 869, 875-76 (1st Cir. 1988).

### The Consent Solicitation Claim

With respect to the Consent Solicitation, Maxwell has not identified any rule or regulation requiring Jones Apparel to disclose certain ancient and distant business relationships between the nominee directors and Jones Apparel that Maxwell alleges were wrongfully omitted from Jones Apparel's solicitation materials. Once again, Maxwell's claim depends solely upon conclusions that are illogical. It simply does not follow that just because businessmen have had contacts with each other in business contexts – an everyday occurrence, after all – one is "beholden" to the other. Since a "conflict of interest" is not a logical conclusion from past business contacts, the failure to disclose the contacts themselves cannot mislead stockholders who are deciding whether to elect Jones Apparel's nominees.

It is precisely because conclusions about "independence" or "qualification" for service on a board of directors cannot reliably be drawn from mere business relationships that the SEC's regulations prescribe the biographical and historical information that must be disclosed about board nominees. The SEC's regulations are the agency's definition of what is material and important to a shareholder's understanding about proposed board nominees. Those rules require disclosure of a nominee's "business experience" within "the past five years," including his "occupations and employment," "directorships," and involvement in certain legal proceedings. Regulation S-K, Item 401(e)-(f), 17 C.F.R. 229.401(e)-(f). But they do *not* require disclosure of past contacts, performance of contracts, business relationships with others, or affiliations other than "family relationships." Similarly, the rules do *not* compel disclosure of how, when, why

and where nominees might have come in contact with each other or their nominators. The regulations do not presume that any affiliations of that nature pose potential "conflicts." Likewise, the regulations do not oblige disclosure of the performance histories of all enterprises with which any nominee has been associated; and the disclosure requirements concerning legal proceedings do not compel disclosure about bankruptcies unless the nominee was an "executive officer" of the bankrupt firm within two years before the filing. Regulation S-K, Item 401(f)(1), 17 C.F.R. 229.401(f)(1).[1]

Indeed, insofar as the SEC's rules do require disclosure of transactions and business relationships between a registrant and a nominee director of that registrant, they do not compel anything like the information that Maxwell claims Jones Apparel should have disclosed about its nominees to Maxwell's board. Applying those rules by analogy here, they illustrate how farfetched Maxwell's claim is. Item 404 of Regulation S-K requires disclosure of "transactions" between a registrant and a nominee that have occurred "since the beginning of the . . . last fiscal year," that "exceed[] $60,000," and in which the nominee has an "interest," other than by ownership of less than 10 percent of the securities of the party to the "transaction." Item 404(a), 17 C.F.R. 229.404(a). Likewise, the rules require disclosure of "business relationships," that existed "during . . . the last fiscal year," involving "in excess of five percent" of either party's "consolidated gross revenue." Those rules define the nature, degree and temporal proximity of affiliations that arguably might be significant to shareholders deciding to elect a nominee to a

---

[1] Indeed, Maxwell's proxy statement for its 2004 annual meeting and its consent revocation statement do not disclose that one of its directors, Malcolm L. Sherman, was associated with enterprises that went bankrupt while he was a director, including One Price Clothing Stores, Inc. and K. T. Scott Ltd., or that Ekco Group Inc., a company where Mr. Sherman served as Chairman of the Board and Chief Executive Officer from 1994 until 1999, announced on June 24, 1999 that the New York Stock Exchange would suspend trading of Ekco common stock on July 26, 1999. See Third Dillon Decl. Ex. 18 (One Price announces Chapter 11); Ex. 19 (Ekco comments on delisting); Ex. 20 (Maxwell prior disclosure re K.T. Scott Bankruptcy). Maxwell's failure to disclose such information itself concedes that such information is not required to be disclosed.

registrant's board. But those rules certainly do *not* include ten-year old transactions, past acquaintances, incidental contacts, or transactional associations in which the players do not have material personal financial interests – all of which form the basis of Maxwell's claim.[2]

Maxwell fills its brief with dozens of citations of uncontested general propositions of law, numerous unpublished opinions,[3] and cases that address facts inapposite to the claims before this court.[4] But Maxwell does not – and cannot – point to any authority requiring Jones Apparel to disclose any of those distant relationships.[5] Instead, Maxwell makes a general claim that the

---

[2] In asserting that its nominees are independent, Jones Apparel has relied on the NASD definition of that term, the same definition that Maxwell uses in its own proxy materials. A copy of the definition can be found at section 4200 definition number 15 of the NASD website (http://cchwallstreet.com/nasd/nasdviewer.asp?SelectedNode=4&FileName=/nasd/nasd_rules/Rulesofthe Association_mg.xml#chp_1_4). NASD regulations define the types of relationships that would disqualify a director from being considered independent, and Maxwell does not identify any part of that definition that the nominees fail to meet.

[3] Far from a stray reference, plaintiff builds its arguments on a foundation of unpublished cases with no precedential authority. *See, e.g.,* Pl. Mem. at 21, 24, 31, 33 (citing *Blatt v. Muse Techs., Inc.*, 2002 WL 31107537 (D. Mass. Aug. 27, 2002) (unpublished opinion)); *id.* at 10 (citing *Am. Insured Mortgage Investors v. CRI, Inc.*, 1990 192561 (S.D.N.Y. Nov. 26, 1990) (unpublished opinion)); *id* at 30-31, (citing *Fulco v. Am. Cable Sys. Of Fla.*, 1989 WL 205356 (D. Mass. Oct. 4, 1989) (unpublished opinion)); *id.* at 23 (citing *Nanopierce Techs., Inc. v. Southridge Capital Mgmnt. LLC*, 2003 WL 21507294 (S.D.N.Y. June 30, 2003) (unpublished opinion)); *id.* at 10 (citing *Pridgen v. Anderson*, 1995 U.S. Dist. LEXIS 2198 (D. Conn. Mar. 13, 1996) (unpublished opinion)).

[4] For example, in alleging that Jones Apparel was required to disclose a series of irrelevant business relationships, plaintiff cites *In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917 (Del. Ch. 2003) (addressing whether university professors on a special litigation committee were sufficiently independent from another university affiliate such that they could determine whether to sue for alleged insider trading); *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) overruled on other grounds by the Delaware Supreme Court, see *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (addressing an allegation that a controlling shareholder selected members of a board of directors who failed to contest an inflated employment contract with the controlling shareholder); *Wilson v. Great Am. Indus. Inc.*, 855 F.2d 987 (2d Cir. 1998) (director and general counsel of a target company failed to disclose that on numerous occasions he had represented companies belonging to officials of the acquirer, and that his firm had represented those companies for decades). No remotely comparable facts are present in this suit.

[5] Plaintiff similarly misses the mark when it attempts to discredit *Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000), *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225 (S.D.N.Y. 2000), and *Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*, 295 F. Supp. 2d 75 (D.D.C. 2003). Those cases were cited by Jones Apparel for their statement of the legal standard – that no reasonable shareholder would view such information as material – and not for their factual similarity to this case. Plaintiff asserts that none of those cases "involved a failure to disclosure information reflecting on a nominee's lack of independence or conflict or interest" or else involve scenarios where shareholders have

information is somehow material and advances a disingenuous plea: "Maxwell Shoe asks only that this material information be disclosed to its shareholders, who then can decide for themselves what weight it should be accorded in their decision-making process."[6] (Pl. Mem at 3.) But Maxwell's shareholders *have* heard all about the alleged omissions because Maxwell has trumpeted the very information to shareholders in its *own* proxy materials. (Supp. Dillon Decl. at Ex. 13.) Nothing further is required.

In short, this lawsuit is not about the shareholders' right to know, as Maxwell asserts, but about Jones Apparel's right to control the contents of its own disclosure documents. Maxwell is free to accurately and fairly make its own pitch to the shareholders. But the Williams Act does not allow either takeover bidders or targets to exercise editorial control over their opponents' disclosures.

## II.     MAXWELL'S *THIRD* REQUEST FOR EXPEDITED DISCOVERY IS UNWARRANTED.

In response to Jones Apparel's motion for partial summary judgment concerning Maxwell's allegations about Mr. Howard Leppo's alleged "disqualification" to serve as a director because he acted as a "consultant" to Jones Apparel through a company named Financo, Maxwell seeks further discovery pursuant to Rule 56(f). Stripped to its essence, Maxwell's latest attempt to obtain additional disclosures is based upon nothing more than the fact that Maxwell

---

been given notice of "alleged loyalty issues." (Pl. Mem. at 20.) The same is true in this case: plaintiff has utterly failed to point to a failure by Jones Apparel to disclose information that, beyond plaintiff's mere assertions, actually reflect on a nominee lack of independence, conflict of interest or loyalty. Thus, its allegations should be dismissed for failure to state a claim.

[6] Maxwell's claim that information bearing on Jones Apparel's nominees "conflict of interest" is material because these nominees will have to negotiate with Jones Apparel to obtain the highest offer possible are also disingenuous. If elected, the issue confronting Maxwell's new board will be whether to detoxify Maxwell's "poison pill" Shareholder Rights Plan. In other words, the nominees will have to decide whether it is in Maxwell's best interest for the company's stockholders to decide *for themselves* whether to accept Jones Apparel's offer. The spectre of self-dealing that Maxwell claims to raise is simply not realistic. The only issue is whether Maxwell stockholders should have the right to self-determination.

does not believe Jones Apparel's discovery responses – made under oath – denying any relationship between Jones Apparel and Financo, or between Financo and Mr. Leppo.[7] But Maxwell's professed disbelief is not a basis for further discovery.

Discovery is warranted under Rule 56(f) only when a party opposing summary judgment presents affidavits attesting why it cannot "present by affidavit facts essential to justify [its] opposition." Fed. R. Civ. P. 56(f). That means that the party must "articulate a plausible basis for the belief that discoverable materials exist which would raise a trial worthy issue." *Carrero v. Rhodes Gill and Co., Ltd.*, 68 F.3d 1443, 1449 (1st Cir. 1995), quoting *Price v. General Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991). Newspaper articles wrongly suggesting the opposite of sworn testimony simply do not meet the standard for further inquiry. They are no more than "speculat[ion] that the defendants . . . testimony . . . is unbelievable, and might be exposed as such" if further discovery is taken. "This is a plainly insufficient reason for subjecting defendants to the time, expense, and aggravation" of additional inquiry. *CNF First Associates II, L.P. v. Dickerman*, 2001 U.S. Dist. LEXIS 24476, *3 (March 8, 2001) (Stearns, J.).

Regrettably, Maxwell's supposed need to test the credibility of Jones Apparel's verified assertions is based on nothing more than a series of incorrect misrepresentations created by stringing together selective, errant newspaper tidbit and internet references. Most troubling is Maxwell's assertion that Financo's own website "describes Jones as a past or present client." (Pl. S.J. Mem. at 2.) That assertion is demonstrably incorrect. Financo's website does precisely the *opposite*. Fully consistent with the discovery that Jones Apparel supplied to Maxwell, and

---

[7] In order to defeat Maxwell's claim, Jones Apparel needs to show only that there is no relationship between Jones Apparel and Financo – which it has done through the Dansky Declaration. In such circumstances, permitting further discovery on the relationship between Financo and Mr. Leppo is unnecessary and unhelpful to Maxwell's claim – simply because the link between Jones Apparel and Mr. Leppo has already been broken.

corroborating the Dansky Declaration submitted by Jones Apparel in opposition to the plaintiff's motion for a preliminary injunction, the Financo website specifically and expressly discloses that Financo actually represented the company on *the other side* of a transaction with Jones Apparel and did not represent Jones Apparel at all. The following chart reproduced from Financo's website, which discloses Financo's clients in boldface, confirms that Financo advised Gloria Vanderbilt Apparel Corp. when it was acquired by Jones Apparel in 2002. By its own admission, Financo did not advise Jones Apparel.

| Acquiring Company or Advisory Client | Acquired, Selling or Target Company | Assignment /Form of Transaction | Approximate Transaction Value ($ Millions) |
|---|---|---|---|
| **2002** | | | |
| **Horizon Natural Resources** | | Restructuring advisory in Company's Chapter 11 case | NM |
| **Uniroyal Technology Corp.** | | Restructuring advisory in Company's Chapter 11 case | NM |
| Oaktree Capital Management | **Tumi Inc.** | Recapitalization | Undisclosed |
| Liz Claiborne Inc. | **Ellen Tracy Inc.** | Sale of Ellen Tracy Inc. | $180 |
| **Special Metals** | | Restructuring advisory services for largest shareholder in Company's Chapter 11 case | NM |
| **Mercantile Capital Partners** | Chicken Out Rotisserie | Minority Investment | Undisclosed |
| **Provell, Inc.** | | Restructuring advisory in Company's Chapter 11 case | NM |
| **Dutyfree Holdings, Inc.** | | Restructuring advisory in connection with a recapitalization | Undisclosed |
| Weyco Group, Inc. | **Florsheim Group Inc.** | Restructuring advisory and sale of assets in Company's Chapter 11 case | $46 |
| Jones Apparel Group, Inc. | **Gloria Vanderbilt Apparel Corp. & Gloria Vanderbilt Trademark B.V.** | Sale of Gloria Vanderbilt | $144 |
| **Jacobson Stores, Inc.** | | Consulting and restructuring advisory services in Company's Chapter 11 case | NM |
| **Mercantile Capital Partners** | Partex | Control Investment | Undisclosed |
| **Mercantile Capital Partners** | Le Gourmet Chef | Minority Investment | Undisclosed |
| **Mercantile Capital Partners** | FreshDirect | Minority Investment | Undisclosed |
| Kier Group (San Francisco Music Box) | **The Museum Company** | Restructuring advisory, including reorganization plan and sale of assets, in Company's Chapter 11 case | $14 |
| **AAI Foster Grant Bondholders' Committee** | | Restructuring advisory services to Ad Hoc Bondholders' Committee in Company's out-of-court workout | $54 |
| **Steele Heddle Bondholders' Committee** | | Restructuring advisory services to Bondholders' Committee in Chapter 11 case | Undisclosed |

(Third Dillon Decl. at Ex. 15) (http://www.financo.com/transactions0212021.html). Financo's website thus confirms precisely the *opposite* of what Maxwell asserts and corroborates completely the Dansky Declaration: Jones Apparel is not a client of Financo.

For the sake of completeness, the website does mention Jones Apparel in one other context, when it describes certain consulting services Financo offers "working with" former Bloomingdale's Chairman Marvin S. Traub. The site includes Jones Apparel on a list of "Selected Past and Present FGC and Marvin Traub Associates Consulting Clients" – FGC being Financo Global Consulting. *See* Third Dillon Decl. at Ex. 16 (Financo's list of Marvin Traub Associates' clients, including Jones Apparel). What that statement is referring to, however, is the fact that Jones Apparel was at one time a client of Marvin Traub Associates. *See* Third Dillon Decl. at Ex.14 (Consulting Agreement between Jones Apparel and Marvin Traub Associates). Jones Apparel is not a client of Financo. Maxwell has simply plucked the name off the list, taken it out of context, and ignored the complete contradiction of its argument set forth elsewhere on the website.

Quite apart from Maxwell's misleading "suggestions" that Jones Apparel was a Financo client, its "suggestions" that Mr. Leppo worked for Financo are equally disingenuous. For starters, one would search the Financo website in vain for any reference to Mr. Leppo. His name is conspicuously absent from Financo's list of "principals," "mercantile capital partners," or "global consultants." *See* Third Dillon Decl. Ex. 17 (http://www.financo.com/people.html.) The only other source that Maxwell points to is a WWD article dated December 19, 2002 about Financo that wrongly asserts that, among "a kind of all-star team of experts in different areas of retailing and merchandising" that Financo has assembled, "[n]ewcomers include . . . Hal Leppo, former Lord & Taylor president and Casual Male chief executive officer." Since both Financo and Jones Apparel deny the truth of that tidbit, and since in all events Financo conclusively did *not* work for Jones Apparel, there is no basis for further inquiry, especially since there is no

factual support for the other half of Maxwell's allegation, that Financo worked for Jones Apparel.[8] Accordingly, Maxwell's claim must fail as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should grant Jones Apparel's motion to dismiss and motion for partial summary judgment and deny Maxwell's Motion for Expedited Discovery.

Respectfully submitted,

*[signature]*

John D. Donovan, Jr. (130950)
Christopher Dillon (640896)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110
617-951-7000

*Counsel for Jones Apparel Group, Inc., and MSC Acquisition Corp.*

Paul C. Saunders
Timothy G. Cameron
Andrew B. Kratenstein
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eight Avenue
New York, New York 10019
212-474-1000

May 17, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2004, I caused a true copy of the above document to be served by hand upon counsel of record for the plaintiff.

*[signature]*
Christopher Dillon

---

[8] Maxwell's assertion that the Dansky Declaration is "carefully worded" to limit itself to a three year period, is baseless. Mr. Dansky's statement only looks back three years because Maxwell's allegations (and its cited news articles) only concern the last two years.